**EXHIBIT 8**

Deposition Exh. 35 - Lease Packet dated 11/23/2018



## RESIDENTIAL LEASE AGREEMENT
for



| 11893 WEDGEBROOK ST | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|

(Property Address)

1. **This AGREEMENT** is entered into this _____ day of _____, 20__ between
OWNER'S Name: _____ **KYLE PUNTNEY** _____, OWNER'S Name: _____
(collectively hereinafter, "OWNER" and/or "LANDLORD") legal owner(s) of the property and
TENANT's Name: _____ **CANDY TORRES** _____ TENANT's Name: _____
TENANT's Name: _____ TENANT's Name: _____
(collectively, "TENANT"), which parties hereby agree to as follows:

2. **PREMISES:** LANDLORD hereby leases to TENANT and TENANT hereby leases from LANDLORD, subject to
the terms and conditions of the lease, the Premises known and designated as  11893 WEDGEBROOK ST
_____ LAS VEGAS _____ NV ____ 89183 ____ ("the Premises"). Premises Mail Box # ____,
Parking Space # _____, Storage Unit # _____, Other _____.

3. **TERM:** The term hereof shall commence on _____ and continue until _____, with
a total rent of $ ____ 17,700.00 ____, then on a month-to-month basis thereafter, until either party shall terminate
the same by giving the other party thirty (30) days written notice delivered by US mail or electronic mail. (All
calculation based on 30 day month), as governed by paragraph 23 herein

4. **RENT:** TENANT agrees to pay, without demand, to LANDLORD as rent for the Premises the total sum of
____ 1,475.00 ____ **per month** on the first day of each calendar month,
at _____ 755 SUNSET RD, HENDERSON, NV 89011 OR CHASE BANK _____ or at such other place as
LANDLORD may designate in writing.

5. **SUMMARY:** The initial rents, charges and deposits are as follows:

| | Total | Received | Balance Due |
|---|---|---|---|
| Rent: From _____, To _____ | $ 1475 | $ | $ 1475.00 |
| Security Deposit | $ 1550 /475 | $ 550 | $ 1000.00 |
| Key Deposit | $ 75 | $ | $ 75.00 |
| Admin/Credit App Fee (non-refundable) | $ 125 | $ | $ 125.00 |
| Pet Deposit | $ 0 | $ | $ |
| Cleaning Deposit | $ 0 | $ | $ |
| Cleaning Fee (non-refundable) | $ 275 | $ | $ 275.00 |
| Additional Security | $ | $ | $ |
| Utility Proration | $ | $ | $ |
| Sewer/Trash Proration | $ 22.50 | $ | $ 22.50 |
| Pre-Paid Rent | $ | $ | $ |
| Pro-Rated Rent for | $ | $ | $ |
| Other APPLICATION FEE (NON-REFUNDABLE) | $ 85 | $ 85 | $ |
| Other PROCESSING (NON-REFUNDABLE) | $ 125 | $ | $ 125.00 |
| Other BROKER FEE (NON-REFUNDABLE) | $ 350 | $ | $ 350.00 |
| **TOTAL** | $ 4082.50 | $ 635.00 | $ 3447.50 |

6. **ADDITIONAL MONIES DUE:** _____
_____
_____
_____

**EXHIBIT**

tabbies®

35

Puntney  1/14/20

| Property 11893 WEDGEBROOK ST | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | Owner's Name | | |
| Tenant | CANDY TORRES | Initials | Tenant | | Initials |
| Tenant | | Initials | Tenant | | Initials |

Residential Lease Agreement Rev. 10.16     © 2016 Greater Las Vegas Association of REALTORS®     Page 1 of 13

**ROTH00442**

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 |
allanindianoil8yahoo.com

InstanetFORMS

**7. ADDITIONAL FEES:**

    **A. LATE FEES:** In the event TENANT fails to pay rent when due, TENANT shall pay a late fee of $ __85__ plus $ __75__ per day for each day after __0__ days that the sum was due. Such amounts shall be considered to be rent.

    **B. DISHONORED CHECKS:** A charge of $ __97__ shall be imposed for each dishonored check made by TENANT to LANDLORD. TENANT agrees to pay all rents, all late fees, all notice fees and all costs to honor a returned check with certified funds. After TENANT has tendered a check which is dishonored, TENANT hereby agrees to pay all remaining payments including rent due under this Agreement by certified funds. Any payments tendered to LANDLORD thereafter, which are not in the form of certified funds, shall be treated as if TENANT failed to make said payment until certified funds are received. LANDLORD presumes that TENANT is aware of the criminal sanctions and penalties for issuance of a check which TENANT knows is drawn upon insufficient funds and which is tendered for the purpose of committing a fraud upon a creditor.

    **C. ADDITIONAL RENT:** All late fees and dishonored check charges shall be due when incurred and shall become additional rent. **Payments will be applied to charges which become rent in the order accumulated.** All unpaid charges or any fees owed by TENANT, including but not limited to notice fees, attorney's fees, repair bills, utility bills, landscape/pool repair and maintenance bills and CIC fines will become additional rent at the beginning of the month after TENANT is billed. TENANT'S failure to pay the full amount for a period may result in the initiation of eviction proceedings. LANDLORD'S acceptance of any late fee or dishonored check fee shall not act as a waiver of any default of TENANT, or as an extension of the date on which rent is due. LANDLORD reserves the right to exercise any other rights and remedies under this Agreement or as provided by law.

**8. SECURITY DEPOSITS:** Upon execution of this Agreement,

TENANT's Name:_____**CANDY TORRES**_____ TENANT's Name:_____
TENANT's Name:_____ TENANT's Name: :_____

shall deposit with LANDLORD as a Security Deposit the sum stated in paragraph 5. **TENANT shall not apply the Security Deposit to, or in lieu of, rent.** At any time during the term of this Agreement and upon termination of the tenancy by either party for any reason, the LANDLORD may claim, from the Security Deposit, such amounts due LANDLORD under this Agreement. Any termination prior to the initial term set forth in paragraph 3, or failure of TENANT to provide proper notice of termination, is a default in the payment of rent for the remainder of the lease term, which may be offset by the Security Deposit. Pursuant to NRS 118A.242, LANDLORD shall provide TENANT with a written, itemized accounting of the disposition of the Security Deposit within thirty (30) days of surrender of premises. TENANT agrees, upon termination of the tenancy, to provide LANDLORD with a forwarding address to prevent a delay in receiving the accounting and any refund. At the termination of this agreement, the TENANT identified in this paragraph will be refunded the remaining security deposit (if any). In the event of damage to the Premises caused by TENANT or TENANT's family, agents or visitors, LANDLORD may use funds from the deposit to repair, but is not limited to this fund and TENANT remains liable for any remaining costs. (In addition to the above, to be refundable, property must be professionally cleaned to include carpets and all hard surface flooring including tile and grout.) Upon request by Landlord, Tenant must furnish receipts for professional cleaning services.

**9. CONDITION OF PREMISES:** TENANT agrees that TENANT has examined the Premises, including the grounds and all buildings and improvements, and that they are, at the time of this Lease, in good order, good repair, safe, clean, and rentable condition.

Property **11893 WEDGEBROOK ST**          **LAS VEGAS**    **NV**    **89183**

| Owner's Name | **KYLE PUNTNEY** | | Owner's Name | | |
|---|---|---|---|---|---|
| Tenant | **CANDY TORRES** | Initials | Tenant | | Initials |
| Tenant | | Initials | Tenant | | Initials |

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 | allanindianoil@yahoo.com

**ROTH00443**

Instanet FORMS

1  **10. TRUST ACCOUNTS:** BROKER shall retain all interest earned, if any, on security deposits to offset administration
2  and bookkeeping fees.
3
4  **11. EVICTION COSTS:** TENANT shall be charged an administrative fee of $ 750 ↑ATTORNEY FEE per eviction attempt to
5  offset the costs of eviction notices and proceedings. TENANT shall be charged for service of legal notices and all
6  related fees according to actual costs incurred.
7
8  **12. CARDS AND KEYS:** Upon execution of the Agreement, TENANT shall receive the following:
9     __2__  Door key(s)              __1__  Garage Transmitter/Fob(s)      _____  Pool Key(s)
10    _____  Mailbox key(s)           __0__  Gate Card/Fob(s)              _____  Other(s)  TBD
11    _____  Laundry Room key(s)      __0__  Gate Transmitter/Fob(s)       _____  Other(s) _____
12    TENANT shall make a key deposit (if any) in the amount set forth in paragraph 2 upon execution of this Agreement.
13    The key deposit shall be refunded within 30 days of TENANT's return of all cards and/or keys to LANDLORD or
14    LANDLORD's BROKER/DESIGNATED PROPERTY MANAGER.
15
16 **13. CONVEYANCES AND USES:** TENANT shall not assign, sublet or transfer TENANT'S interest, nor any part
17    thereof, without prior written consent of LANDLORD. The Premises shall be used and occupied by TENANT
18    exclusively as a private single-family residence. Neither the Premises nor any part of the Premises or yard shall
19    be used at any time during the term of this Lease for any purpose of carrying on any business, profession, or
20    trade of any kind, or for any purpose other than as a private single-family residence. TENANT shall comply
21    with all the health and sanitary laws, ordinances, rules and orders of appropriate governmental authorities and
22    homeowners associations, if any, with respect to the Premises. TENANT understands and acknowledges that
23    they are not permitted to access the attic crawl space, roof or under the home or any other area of the property
24    that is not considered living space. TENANT shall not commit waste, cause excessive noise, create a nuisance
25    or disturb others.
26
27 **14. OCCUPANTS:** Occupants of the Premises shall be limited to ___6___ persons and shall be used solely for
28    housing accommodations and for no other purpose. TENANT represents that the following person(s) will live in the
29    Premises:
30    **CANDY TORRES,**
31
32
33 **15. GUESTS:** The TENANT agrees to pay the sum of $ ___45.00___ per day for each guest remaining on the
34    Premises more than ___1___ days. Notwithstanding the foregoing, in no event shall any guest remain on the
35    Premises for more than __45__ days.
36
37 **16. UTILITIES:** TENANT shall immediately connect all utilities and services of premises upon commencement of
38    lease. TENANT is to pay when due all utilities and other charges in connection with TENANT's individual rented
39    premises. Responsibility is described as (T) for TENANT and (O) for Owner:
40    Electricity __T__   Trash __T__   Trash Can Rental: _TT_   Phone __T__
41    Gas __T__           Sewer __T__   Cable __T__              Other _____ T
42    Water __T__         Septic _NA_   Association Fees __0__   Other _____
43
44
45    a.  TENANT is responsible to connect the following utilities in TENANT'S name: __ALL EXCEPT__
46    __SEWER AND TRASH.__
47

| Property  11893  WEDGEBROOK ST | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | Owner's Name | | |
| Tenant | CANDY TORRES | Initials | Tenant | Initials | |
| Tenant | | Initials | Tenant | Initials | |

Residential Lease Agreement Rev. 10.16          © 2016 Greater Las Vegas Association of REALTORS®                    Page 3 of 13

ROTH00444
Instanet FORMS

1     b.  LANDLORD will maintain the connection of the following utilities in LANDLORD's name and bill
2     TENANT for connection fees and use accordingly for the entire term of the lease: **SEWER & TRASH**
3
4
5     c.  No additional phone or cable lines or outlets or satellite dishes shall be obtained for the Premises
6     without the LANDLORD's written consent. In the event of LANDLORD's consent, TENANT shall be
7     responsible for all costs associated with the additional lines, outlets or dishes. TENANT shall also remove
8     any satellite dishes and restore the subject property to its original condition at the termination of this
9     Agreement.
10
11    d.  If an alarm system exists on the Premises, TENANT may obtain the services of an alarm services
12    company and shall pay all costs associated therewith.
13
14    e.  TENANT shall not default on any obligation to a utility provider for utility services at the Property.
15    Owner does not pay for any utilities, excluding any such UTILITIES THAT ARE INCLUDED IN HOME
16    OWNER'S ASSOCIATION DUES. TENANT must show all utilities giving service to said property have a
17    zero balance upon move out.
18
19    f.  Other: **IF TENANT DOES NOT COMPLETE LEASE CONTRACT THEN TENANT MUST REFUND THEIR REALTORS**
20    **COMMISSION ($500) TO PROPERTY MANAGER.**
21
22  **17. PEST NOTICE:** TENANT understands that various pest, rodent and insect species (collectively, "pests") exist in
23  Southern Nevada. Pests may include, but are not limited to, scorpions (approximately 23 species, including bark
24  scorpions), spiders (including black widow and brown recluse), bees, snakes, ants, termites, rats, mice and pigeons.
25  The existence of pests may vary by season and location. Within thirty (30) days of occupancy, if the Premises has
26  pests, LANDLORD, at TENANT's written request, will arrange for and pay for the initial pest control spraying.
27  TENANT agrees to pay for the monthly pest control spraying fees. For more information on pests and pest control
28  providers, TENANT should contact the State of Nevada Division of Agriculture.
29
30  **18.  PETS:**  No pet shall be on or about the Premises at any time without written permission of LANDLORD. In the
31  event TENANT wishes to have a pet, TENANT will complete an Application for Pet Approval. Should written
32  permission be granted for occupancy of the designated pet, an additional security deposit in the amount of
33  $___475___ will be required and paid by TENANT in advance subject to deposit terms and conditions
34  aforementioned. In the event written permission shall be granted, TENANT shall be required to procure and provide
35  to LANDLORD written evidence that TENANT has obtained such insurance as may be available against property
36  damage to the Premises and liability to third party injury. Said policy shall name LANDLORD and LANDLORD'S
37  AGENT as additional insureds.  A copy of said policy shall be provided to LANDLORD or LANDLORD's
38  BROKER/DESIGNATED PROPERTY MANAGER prior to any pets being allowed within the Premises.  If
39  TENANT obtains a pet without written permission of LANDLORD, such will be an event of default under
40  paragraph 21.  TENANT further agrees to pay an immediate fine of $___500___ . TENANT agrees to indemnify
41  LANDLORD for any and all liability, loss and damages which LANDLORD may suffer as a result of any animal in
42  the Premises, whether or not written permission was granted.
43
44
45
46                        *(This Space Intentionally Left Blank)*
47
48
49

| Property | 11893 WEDGEBROOK ST | | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | | Owner's Name | | | |
| Tenant | CANDY TORRES | Initials | | Tenant | | Initials | |
| Tenant | | Initials | | Tenant | | Initials | |

Residential Lease Agreement Rev. 10.16      © 2016 Greater Las Vegas Association of REALTORS®      Page 4 of 13

**ROTH00445**
InstanetFORMS

19. **RESTRICTIONS:** TENANT shall not keep or permit to be kept in, on, or about the Premises: waterbeds, boats, campers, trailers, mobile homes, recreational or commercial vehicles or any non-operative vehicles except as follows:
**NONE WITHOUT WRITTEN PERMISSION FROM PROPERTY MANAGER AND HOA**

**TENANT shall not conduct nor permit any work on vehicles on the premises without the express written consent of the Owner.**

20. **ALTERATIONS:** TENANT shall make no alterations to the Premises without LANDLORD's written consent. Unless otherwise agreed in writing between TENANT and LANDLORD, all alterations or improvements to the Premises become the property of LANDLORD, shall remain upon the Premises, and shall constitute a fixture permanently affixed to the Premises. Unless otherwise agreed in writing between TENANT and LANDLORD, TENANT shall be responsible for restoring the Premises to its original condition and removing any alterations or improvements if requested by LANDLORD or LANDLORD's BROKER/DESIGNATED PROPERTY MANAGER.

21. **DEFAULT:** Failure by TENANT to pay rent, perform any obligation under this Agreement, or comply with any Association Governing Documents (if any), or TENANT's engagement in activity prohibited by this Agreement, or TENANT's failure to comply with any and all applicable laws, shall be considered a default hereunder. Upon default, LANDLORD may, at its option, terminate this tenancy upon giving proper notice. Upon default, LANDLORD shall issue a proper itemized statement to TENANT noting the amount owed by TENANT, including any and all fees related to eviction and reletting of the subject property. LANDLORD may pursue any and all legal and equitable remedies available.

 a. FORFEITURE OF SECURITY DEPOSIT - DEFAULT. It is understood and agreed that TENANT shall not attempt to apply or deduct any portion of any security deposit from the last or any month's rent or use or apply any such security deposit at any time in lieu of payment of rent. If TENANT fails to comply, such security deposit shall be forfeited and LANDLORD may recover the rent due as if any such deposit had not been applied or deducted from the rent due. For the purpose of this paragraph, it shall be conclusively presumed that a TENANT leaving the premises while owing rent is making an attempted deduction of deposits. Furthermore, any deposit shall be held as a guarantee that TENANT shall perform the obligations of the Lease and shall be forfeited by the TENANT should TENANT breach any of the terms and conditions of this Lease. In the event of default, by TENANT, of any obligation in this Lease which is not cured by TENANT within five (5) days' notice from LANDLORD, then in addition to forfeiture of the Security Deposit, LANDLORD may pursue any other remedy available by law, equity or otherwise.

 b. TENANT PERSONAL INFORMATION UPON DEFAULT. TENANT understands and acknowledges that if TENANT defaults on lease, LANDLORD or Owner may engage the services of an Attorney or a Collection Agency. TENANT understands and acknowledges that LANDLORD/Owner may give an Attorney or a Collection Agency, TENANT's personal information, including but not limited to, TENANT's social security number or any other information to aid in collection efforts and holds LANDLORD, Broker, and Owner harmless from any liability in relation to the release of any personal information to these entities.

22. **ENFORCEMENT:** Any failure by LANDLORD to enforce the terms of this Agreement shall not constitute a waiver of said terms by LANDLORD. Acceptance of rent due by LANDLORD after any default shall not be construed to waive any right of LANDLORD or affect any notice of termination or eviction.

Property  11893  WEDGEBROOK ST                                          LAS VEGAS        NV      89183

| Owner's Name | KYLE PUNTNEY | | Owner's Name | | |
|---|---|---|---|---|---|
| Tenant | CANDY TORRES | Initials | Tenant | | Initials |
| Tenant | | Initials | Tenant | | Initials |

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 |
allanindianoil@yahoo.com                                                                ROTH00446
                                                                                       InstanetFORMS

a. ABANDONMENT. LANDLORD is entitled to presume per NRS 118A.450 that TENANT has abandoned the Premises if the TENANT is absent from the premises for a period of time equal to one-half the time for periodic rental payments, unless the rent is current or the TENANT has in writing notified the landlord of an intended absence.

b. If at any time during the term of this Lease, TENANT abandons the Premises, LANDLORD shall have the following rights: LANDLORD may, at LANDLORD's option, enter the Premises by any means without liability to TENANT for damages and may relet the Premises, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting. At LANDLORD's option, LANDLORD may hold TENANT liable for any difference between the rent that would have been payable under this Lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by LANDLORD by means of such reletting.
LANDLORD also may dispose of any of TENANTs abandoned personal property, pursuant to Nevada law as LANDLORD deems appropriate, without liability to TENANT.

**23. NOTICE OF INTENT TO VACATE:** TENANT shall provide notice of TENANT's intention to vacate the Premises. **Such notice shall be in writing and shall be provided to LANDLORD prior to the first day of the last month of the lease term set forth in Section 3 of this Agreement. In no event shall notice be less than 30 days prior to the expiration of the term of this Agreement.** In the event TENANT fails to provide such notice, TENANT shall be deemed to be holding-over on a month-to-month basis until 30 days after such notice. During a holdover not authorized by LANDLORD, rent shall increase by _____15_____ %.

**24. TERMINATION:** Upon termination of the tenancy, TENANT shall surrender and vacate the Premises and shall remove any and all of TENANT'S property. TENANT shall return keys, personal property and Premises to the LANDLORD in good, clean and sanitary condition, normal wear excepted.

**25. EMERGENCIES:** The name, address and phone number of the party who will handle maintenance or essential services emergencies on behalf of the LANDLORD is as follows:
ALLAN ROTHSTEIN 702-353-€        755 SUNSET RD.,HENDERSON, NV 89011

**26. MAINTENANCE:** TENANT shall keep the Premises in a clean and good condition. TENANT shall immediately report to the LANDLORD any defect or problem on the Premises. TENANT agrees to notify LANDLORD of any water leakage and/or damage within 24 hours of the occurrence. TENANT understands that TENANT may be held responsible for any water and/or mold damage, including the costs of remediation of such damage. TENANT shall be responsible for any MINOR repairs necessary to the Premises up to and including the cost of $ ___225___. TENANT agrees to pay for all repairs, replacements and maintenance required by TENANT's misconduct or negligence or that of TENANT's family, pets, licensees and guests, including but not limited to any damage done by wind or rain caused by leaving windows open and/or by overflow of water, or stoppage of waste pipes, or any other damage to appliances, carpeting or the Premises in general. At LANDLORD's option, such charges shall be paid immediately or be regarded as additional rent to be paid no later than the next monthly payment date following such repairs. TENANT acknowledges any minor repairs made to the Property must be done by an active, licensed and insured contractor.

a. TENANT shall change filters in the heating and air conditioning systems at least once every month, at TENANT's own expense. LANDLORD shall maintain the heating and air conditioning systems and provide for major repairs. However, any repairs to the heating or cooling system caused by dirty filters due to TENANT neglect will be the responsibility of TENANT.

| Property | 11893 WEDGEBROOK ST | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | Owner's Name | | |
| Tenant | CANDY TORRES | Initials C.T | Tenant | Initials | |
| Tenant | | Initials | Tenant | Initials | |

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 |
allanindianoil@yahoo.com

ROTH00447
InstanetFORMS

b.   TENANT shall replace all broken glass, regardless of cause of damage, at TENANT's expense.

c.   LANDLORD shall be responsible for all systems including heating, cooling, electrical, plumbing and sewer lines. LANDLORD shall be responsible for all major heating, cooling electrical, plumbing and sewer problems that are not caused by TENANT.

d.   There ___✓___ is –OR– _____ is not a landscape contractor whose name and phone number are as follows: **ALLAN ROTHSTEIN PROPERTY SERVICES 702-353-          $100 MONTH**

In the case of landscaping being maintained by a contractor, TENANT agrees to cooperate with the landscape contractor in a satisfactory manner. LANDLORD-provided landscaping is not to be construed as a waiver of any responsibility of the TENANT to keep and maintain landscaping and/or shrubs, trees and sprinkler system in good condition.

In the event the landscaping is not being maintained by a contractor, TENANT shall maintain lawns, shrubs and trees. TENANT shall water all lawns, shrubs and trees, mow the lawns on a regular basis, trim the trees and fertilize lawns, shrubs and trees. If TENANT fails to maintain the landscaping in a satisfactory manner, LANDLORD may have the landscaping maintained by a landscaping contractor and charge TENANT with the actual cost. Said costs shall immediately become additional rent.

e.   There _____ is –OR– __✗__ is not a pool contractor whose name and phone number are as follows:
_____

In the case of pool maintenance being maintained by a contractor, TENANT agrees to cooperate with the pool maintenance contractor in a satisfactory manner. LANDLORD-provided pool maintenance is not to be construed as a waiver of any responsibility of the TENANT to keep and maintain the pool in good condition.

In the event the pool is not being maintained by a Contractor, TENANT agrees to maintain the pool, if any. TENANT agrees to maintain the water level, sweep, clean and keep in good condition. If TENANT fails to maintain the pool in a satisfactory manner, LANDLORD may have the pool maintained by a licensed pool service and charge TENANT with the actual cost. Said costs shall become additional rent.

f.   Smoking _____ will or __✗__ will not be permitted in or about the Premises. TENANT will be charged any costs incurred for the abatement of any damages by unauthorized smoking in the Premises.

27. **ACCESS:** TENANT agrees to grant LANDLORD the right to enter the Premises at all reasonable times and for all reasonable purposes including showing to prospective lessees, buyers, appraisers, insurance agents, periodic maintenance reviews and business therein as requested by LANDLORD. If TENANT fails to keep scheduled appointments with vendors to make necessary/required repairs, TENANT shall pay for any additional charges incurred which will then become part of the next month's rent and be considered additional rent. TENANT shall not deny LANDLORD his/her rights of reasonable entry to the Premises. LANDLORD shall have the right to enter in case of emergency and other situations as specifically allowed by law. LANDLORD agrees to give TENANT twenty-four (24) hours notification for entry, except in case of emergency.

| Property **11893 WEDGEBROOK ST** | | | | **LAS VEGAS** | **NV** | **89183** |
|---|---|---|---|---|---|---|
| Owner's Name | **KYLE PUNTNEY** | | Owner's Name | | | |
| Tenant | **CANDY TORRES** | Initials | Tenant | | Initials | |
| Tenant | | Initials | Tenant | | Initials | |

Residential Lease Agreement Rev. 10.16            © 2016 Greater Las Vegas Association of REALTORS®            Page 7 of 13

ROTH00448
Instanet FORMS

1     **a.** **DISPLAY OF SIGNS.** During the last thirty (30) days of this Lease, LANDLORD or LANDLORD's agent
2     may display For Sale or For Rent or similar signs on or about the Premises and enter to show the Premises to
3     prospective purchasers or tenants. TENANT also authorizes Broker to use an electronic keybox to show the
4     Premises during the last 30 days of lease. TENANT further agrees to execute any and all documentation
5     necessary to facilitate the use of a lockbox.
6
7  **28. ASSOCIATIONS:** Should the Premises described herein be a part of a common interest community, homeowners
8  association planned unit development, condominium development ("the Association") or such, TENANT hereby
9  agrees to abide by the Governing Documents (INCLUDING Declarations, Bylaws, Articles, Rules and Regulations)
10  of such community and further agrees to be responsible for any fines or penalties levied as a result of failure to do so
11  by TENANT, TENANT's family, licensees or guests. Noncompliance with the Governing Documents shall
12  constitute a violation of this Agreement. Unless billed directly to TENANT by the Association, such fines shall be
13  considered as additional rent and shall be due along with the next monthly payment of rent. By initialing this
14  paragraph, TENANT acknowledges receipt of a copy of the applicable Governing Documents. LANDLORD, at
15  LANDLORD's expense, shall provide TENANT with any additions to such Governing Documents as they become
16  available. LANDLORD may, at its option, with 30 days' notice to TENANT, adopt additional reasonable rules and
17  regulations governing use of the Premises and of the common areas (if any). [    ] [    ] [    ]
18  [    ]
19
20  **29. INVENTORY:** It is agreed that the following inventory is now on said premises. (Check if present; cross out if
21  absent.)
22

| | | |
|---|---|---|
| **✗** Refrigerator | ___ Intercom System | ___ Spa Equipment |
| **✗** Stove | **✗** Alarm System | **✗** Auto Sprinklers |
| **✗** Microwave | ___ Trash Compactor | **✗** Auto Garage Openers |
| **✗** Disposal | **✗** Ceiling Fans | **✗** BBQ |
| **✗** Dishwasher | ___ Water Conditioner Equip. | ___ Solar Screens |
| **✗** Washer | **✗** Dryer | ___ Pool Equipment |
| **✗** Garage Opener | ___ Gate Remotes | **✗** Carpet |

**✗** Trash Can(s) (circle one) owner provided / trash service provided
___ Floor Coverings (specify type) CARPETS TILE
**✗** Window Coverings (specify type) BLINDS

| | | | | | |
|---|---|---|---|---|---|
| ✗ | ONE ADDITIONAL | ✗ | TRASH CAN | ✗ | |
| ✗ | TOTAL OF 2 | ___ | TRASH CANS WITH | ✗ | REPUBLIC SERVICES |

TENANT acknowledges that any appliances that are on the premises are for TENANTs use and convenience;
however, in the event of a breakdown of said appliance(s) TENANT acknowledges that property manager,
LANDLORD and or the owners are not responsible for any damages caused to TENANTs personal property, to
include spoilage of food, beverage or clothing etc. as a result of said appliance break down.

*(This Space Intentionally Left Blank)*

| Property 11893 WEDGEBROOK ST | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|
| Owner's Name **KYLE PUNTNEY** | | Owner's Name | | | |
| Tenant **CANDY TORRES** | Initials | Tenant | | Initials | |
| Tenant | Initials | Tenant | | Initials | |

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 |
allanindianoil@yahoo.com

**ROTH00449**
Instanet FORMS

1 **30. INSURANCE:** TENANT ___**x**___ is –OR– _____ is **not** required to purchase renter's insurance. LANDLORD
2 BROKERAGE, and DESIGNATED PROPERTY MANAGER shall be named as additional insureds on any such
3 policy. LANDLORD shall not be liable for any damage or injury to TENANT, or any other person, to any property
4 occurring on the Premises or any part thereof, or in common areas thereof. TENANT agrees to indemnify, defend
5 and hold LANDLORD harmless from any claims for damages. TENANT understands that LANDLORD's
6 insurance does not cover TENANT's personal property. If the Premises, or any part of the Premises, shall be
7 partially damaged by fire or other casualty not due to TENANTs negligence or willful act, or that of TENANT's
8 family, agent, or visitor, there shall be an abatement of rent corresponding with the time during which, and the
9 extent to which, the Premises is uninhabitable. If LANDLORD shall decide not to rebuild or repair, the term of this
10 Lease shall end and the rent shall be prorated up to the time of the damage.
11
12 TENANT hereby acknowledges that the OWNER of the subject property does ___**x**___ or does not ___ have
13 homeowner's insurance. TENANT agrees to cooperate with homeowner and homeowner's insurance company in all
14 relevant matters. TENANT further agrees, upon written notice, to cease any and all actions that may adversely
15 impact OWNER's insurance coverage under said policy.
16
17 **31. ILLEGAL ACTIVITIES PROHIBITED:** TENANT is aware of the following: It is a misdemeanor to commit or
18 maintain a public nuisance as defined in NRS 202.450 or to allow any building or boat to be used for a public
19 nuisance. Any person, who willfully refuses to remove such a nuisance when there is a legal duty to do so, is guilty
20 of a misdemeanor. A public nuisance may be reported to the local sheriff's department. A violation of building,
21 health or safety codes or regulations may be reported to the government entity in our local area such as the code
22 enforcement division of the county/city government or the local health or building departments. In addition
23 continuing violations of HOA rules and regulations will be considered a public nuisance and TENANT hereby
24 agrees that such continuing HOA violations shall be grounds for eviction.
25
26 **32. ADDITIONAL RESPONSIBILITIES:**
27
28 a. TENANT may install or replace screens at TENANT's own expense. Solar screen installation requires
29 written permission from LANDLORD. LANDLORD is not responsible for maintaining screens.
30
31 b. With the exception of electric cooking devices, outdoor cooking with portable barbecuing equipment is
32 prohibited within ten (10) feet of any overhang, balcony or opening, unless the Premises is a detached single
33 family home. The storage and/or use of any barbecuing equipment is prohibited indoors, above the first floor
34 and within five (5) feet of any exterior building wall. Adult supervision is required at all times the barbecue
35 equipment is generating heat.
36
37 c. The Premises _____ will –OR– __**x**__ will not be freshly painted before occupancy. If not freshly painted,
38 the Premises _____ will –OR– __**x**__ will not be touched up before occupancy. TENANT will be responsible
39 for the costs for any holes or excessive dirt or smudges that will require repainting.
40
41 d. TENANT agrees to coordinate transfer of utilities to LANDLORD or BROKER/DESIGNATED
42 PROPERTY MANAGER no less than ___1___ business days of vacating the Premises.
43
44 e. Locks may be replaced or re-keyed at the TENANT'S expense provided TENANT informs LANDLORD
45 and provides LANDLORD with a workable key for each new or changed lock. TENANT further agrees to be
46 responsible for any and all such rekey expenses should TENANT fail to notify LANDLORD in advance of any
47 such replacement.
48

| Property | 11893 WEDGEBROOK ST | | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | | Owner's Name | | | |
| Tenant | CANDY TORRES | | Initials | Tenant | | Initials | |
| Tenant | | | Initials | Tenant | | Initials | |

Residential Lease Agreement Rev. 10.16     © 2016 Greater Las Vegas Association of REALTORS®     Page 9 of 13

**ROTH00450**
Instanet FORMS

f. TENANT may conduct a risk assessment or inspection of the Premise for the presence of lead-based paint and/or lead-based paint hazards at the TENANT's expense for a period of ten days after execution of this agreement. Such assessment or inspection shall be conducted by a certified lead based paint professional. If TENANT for any reason fails to conduct such an assessment or inspection, then TENANT shall be deemed to have elected to lease the Premises "as is" and to have waived this contingency. If TENANT conducts such an assessment or inspection and determines that lead-based paint deficiencies and/or hazards exist, TENANT will notify LANDLORD in writing and provide a copy of the assessment/inspection report. LANDLORD will then have ten days to elect to correct such deficiencies and/or hazards or to terminate this agreement. In the event of termination under this paragraph, the security deposit will be refunded to TENANT. (If the property was constructed prior to 1978, refer to the attached Lead-Based Paint Disclosure.)

g. TENANT may display the flag of the United States, made of cloth, fabric or paper, from a pole, staff or in a window, and in accordance with 4 USC Chapter 1. LANDLORD may, at its option, with 30 days' notice to TENANT, adopt additional reasonable rules and regulations governing the display of the flag of the United States.

h. TENANT may display political signs subject to any applicable provisions of law governing the posting of political signs, and, if the Premises are located within a CIC, the provisions of NRS 116 and any governing documents related to the posting of political signs. All political signs exhibited must not be larger than 24 inches by 36 inches. LANDLORD may not exhibit any political sign on the Premises unless the TENANT consents, in writing, to the exhibition of the political sign. TENANT may exhibit as many political signs as desired, but may not exhibit more than one political sign for each candidate, political party or ballot question.

i. DANGEROUS MATERIALS. TENANT shall not keep or have on or around the Premises any article or thing of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire on or around the Premises or that might be considered hazardous.

33. **CHANGES MUST BE IN WRITING:** No changes, modifications or amendment of this Agreement shall be valid or binding unless such changes, modifications or amendment are in writing and signed by each party. Such changes shall take effect after thirty days' notice to TENANT. This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement.

34. **CONFLICTS BETWEEN LEASE AND ADDENDUM:** In case of conflict between the provisions of an addendum and any other provisions of this Agreement, the provisions of the addendum shall govern.

35. **ATTORNEY'S FEES:** In the event of any court action, the prevailing party shall be entitled to be awarded against the losing party all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs.

36. **NEVADA LAW GOVERNS:** This Agreement is executed and intended to be performed in the State of Nevada in the county where the Premises are located and the laws of the State of Nevada shall govern its interpretation and effect.

37. **WAIVER:** Nothing contained in this Agreement shall be construed as waiving any of the LANDLORD's or TENANT's rights under the laws of the State of Nevada.

| Property | 11893 WEDGEBROOK ST | | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|---|---|
| Owner's Name | KYLE PUNTNEY | | Owner's Name | | | |
| Tenant | CANDY TORRES | Initials | Tenant | | Initials | |
| Tenant | | Initials | Tenant | | Initials | |

Residential Lease Agreement Rev. 10.16         © 2016 Greater Las Vegas Association of REALTORS®                Page 10 of 13

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 | allanindianoil@yahoo.com

ROTH00451
Instanet FORMS

**38. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held invalid or unenforceable, such ruling shall not affect in any respect whatsoever the validity or enforceability of the remainder of this Agreement.

**39. VIOLATIONS OF PROVISIONS:** A single violation by TENANT of any of the provisions of this Agreement shall be deemed a material breach and shall be cause for termination of this Agreement. Unless otherwise provided by the law, proof of any violation of this Agreement shall not require criminal conviction but shall be by a preponderance of the evidence.

**40. SIGNATURES:** The Agreement is accepted and agreed to jointly and severally. The undersigned have read this Agreement and understand and agree to all provisions thereof and further acknowledge that they have received a copy of this Agreement. This Agreement may be executed in any number of counterparts, electronically pursuant to NRS Chapter 719, and by facsimile copies with the same effect as if all parties to this agreement had signed the same document and all counterparts and copies will be construed together and will constitute one and the same instrument.

**41. LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NAC 645.640, ALLAN ROTHSTEIN _____ is a licensed real estate agent in the State(s) of NEVADA _____, and has the following interest, direct or indirect, in this transaction: ☐ Principal (LANDLORD or TENANT) –OR– ☐ family relationship or business interest: PROPERTY MANAGER _____.

**42. CONFIRMATION OF REPRESENTATION:** The Agents in this transaction are:

TENANT's Brokerage: ___ ALLAN ROTHSTEIN REALTY ___ Broker's Name: ___ ALLAN ROTHSTEIN
DESIGNATED PROPERTY MANAGER ALLAN ROTHSTEIN
Agent's Name: _____ Allan Rothstein _____ Agent's License # _____
Address: 755 Sunset Rd _____ Henderson ___ NV ___ 89011
Phone: ___ 702-353-8 ___ Fax: ___ 702-243- ___ Email: a: _____

LANDLORD's Brokerage: ___ ALLAN ROTHSTEIN REALTY ___ Broker's Name: ___ ALLAN ROTHSTEIN
DESIGNATED PROPERTY MANAGER ALLAN ROTHSTEIN
Agent's Name: _____ Allan Rothstein _____ Agent's License # ___ B.1001142
Address: 755 Sunset Rd _____ Henderson ___ NV ___ 89011
Phone: ___ 702-353-8 ___ Fax: ___ 702-243-6 ___ Email: __

**43. NOTICES:** Unless otherwise required by law, any notice to be given or served upon any party hereto in connection with this Agreement must be in writing and mailed by certificate of mailing to the following addresses:

BROKERAGE: ___ ALLAN ROTHSTEIN REALTY ___ BROKER ___ ALLAN ROTHSTEIN
DESIGNATED PROPERTY MANAGER ALLAN ROTHSTEIN
Address: 755 SUNSET RD _____
Phone: ___ 702353 ___ Fax: ___ 702243 ___ Email: __

TENANT: CANDY TORRES
Address: 11893 WEDGEBROOK ST _____ LAS VEGAS ___ NV ___ 89183
Phone: ___ 702-350-0 ___ Fax: _____ Email: __

Property 11893 WEDGEBROOK ST _____ LAS VEGAS ___ NV ___ 89183

| Owner's Name | KYLE PUNTNEY | | Owner's Name | | |
|---|---|---|---|---|---|
| Tenant | CANDY TORRES | Initials | Tenant | | Initials |
| Tenant | | Initials | Tenant | | Initials |

Residential Lease Agreement Rev. 10.16     © 2016 Greater Las Vegas Association of REALTORS®     Page 11 of 13

ROTH00452
Instanet FORMS

**44. MILITARY PROVISION:** IN THE EVENT the TENANT is, or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the TENANT receives permanent change of station orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, or is ordered into military housing, then in any of these events, the TENANT may terminate this lease upon giving thirty (30) days written notice to the LANDLORD. The TENANT shall also provide to the LANDLORD a copy of the official orders or a letter signed by the TENANT's commanding officer, reflecting the change, which warrants termination under this clause. The TENANT will pay prorated rent for any days (he/she) occupy the premises past the first day of the month. The security deposit will be promptly returned to the TENANT, provided there are no damages to the premises, as described by law.

**45. ADDENDA ATTACHED:** Incorporated into this Agreement are the following addenda, exhibits and other information:

| | | |
|---|---|---|
| A. ☒ | Lease Addendum for Drug Free Housing | |
| B. ☒ | Lease Addendum for Illegal Activity | |
| C. ☒ | Smoke Detector Agreement | |
| D. ☒ | HOA Rules and Regulations | |
| E. ☒ | Other: | DUTIES OWED |
| F. ☒ | Other: | RESIDENTIAL DATA FORM |
| G. ☒ | Other: | CONSENT TO ACT |
| H. ☒ | Other: | WALK THROUGH INSPECTION AND RELEASE |

**46.   ADDITIONAL TERMS AND CONDITIONS:**

ALL PAYMENTS SHALL BE BY MONEY ORDER, CHASE OR WELLS FARGO BANK CERTIFIED CHECKS OR CASH. RENT IS DUE ON THE 1ST OF EACH MONTH AND SHALL NOT HAVE A GRACE PERIOD. NO OUT OF TOWN CHECKS. NO PAINTING, IMPROVEMENTS OR REMODELING WITHOUT LANDLORDS OR PM WRITTEN PERMISSION, NO SMOKING IN HOME. TENANTS ARE RESPONSIBLE FOR ALL FINES AND FEES AND ARE PAID TO THE PROPERTY MANAGER. OWNER/PROPERTY MANAGER MAY CO-MINGLE FUNDS. ILLEGAL DRUGS NOT PERMITTED TO BE SOLD ON PROPERTY. TENANTS ARE RESPONSIBLE FOR NOT CHANGING AIR FILTERS MONTHLY. VERY DIRTY AIR FILTERS REQUIRE CLEANING EVAPORATOR $250 CHARGE PER UNIT PAID BY TENANT. DO NOT PUT HOLES IN WALLS OR DOORS. DO NOT USE ANY CLEANERS THAT MAY SCRATCH OR DAMAGE FAUCETS, SINKS, FIXTURES, APPLIANCES, TILE OR MARBLE, ETC. EVICTION ATTEMPTS ARE $750 PLUS ALL  ATTORNEY FEES AND COURT COSTS. TENANTS ARE RESPONSIBLE FOR LANDSCAPING & UTILITIES. LATE FEES EVICTION FEES AND FINES SHALL BE CONSIDERED IMMEDIATE  ADDITIONAL  RENTS & ARE NOT A PENALTY.PLEASE EMAIL PROPERTY MANAGER WITH ANY CONCERNS OR PROBLEMS. RENTERS INSURANCE IS REQUIRED. IF PROPERTY IS SOLD THE OWNER MAY GIVE TENANTS 60 DAY NOTICE TO VACATE. PET FEE IS (NOT REFUNDABLE). THE INSURANCE SHALL NAME THE LANDLORD AND PROPERTY MANAGER AS ADDITIONAL INSURED'S. TENANTS WAIVE ALL RIGHTS, AND HOLD OWNER & PROPERTY MANAGER HARMLESS FOR ALL INJURIES OR ACCIDENTS OCCURRING ON OR NEAR PREMISES. TENANTS DEPOSITS MAY BE USED AS PAYMENT FOR ANY LATE FEES, EVICTION FEES OR FINES THAT ARE NOT PAID WITHIN 7 DAYS BY TENANT. I/WE HAVE READ AND UNDERSTAND AND FREELY AGREE TO ALL THE TERMS, CONTENTS & CONDITIONS OF THIS CONTRACT AND ALL FORMS THAT I/WE HAVE SIGNED.

| | | | | |
|---|---|---|---|---|
| Property  11893  WEDGEBROOK ST | | LAS VEGAS | NV | 89183 |
| Owner's Name         KYLE PUNTNEY | | Owner's Name | | |
| Tenant         CANDY TORRES | Initials | Tenant | Initials | |
| Tenant | Initials | Tenant | Initials | |

Residential Lease Agreement Rev. 10.16          © 2016 Greater Las Vegas Association of REALTORS®                    Page 12 of 13

ROTH00453
Instanet FORMS

1
2
3
4
5
6
7
8
9
10
11

12  **Landlord agrees to rent the Premises on the above terms and conditions.**

13
14
15                          *11-17-18*
16  LANDLORD/OWNER              DATE              LANDLORD/OWNER              DATE
17  OR Authorized Signatory                      OR Authorized Signatory
18  ALLAN ROTHSTEIN
19  PRINT NAME                                    PRINT NAME
20

21
22  **Tenant agrees to rent the Premises on the above terms and conditions.**

23                          11/23/18
24
25
26  TENANT'S SIGNATURE         DATE              TENANT'S SIGNATURE          DATE
27                  CANDY TORRES
28  PRINT NAME                                    PRINT NAME
29

30
31  TENANT'S SIGNATURE         DATE              TENANT'S SIGNATURE          DATE
32
33  PRINT NAME                                    PRINT NAME
34
35

36  **Real Estate Brokers and Designated Property Managers:**
37       A.  Real estate brokers, licensees, agents, and Designated Property Managers who are not also disclosed as
38           a party to the transaction under paragraph 41 are not parties to this Agreement between Landlord and
39           Tenant.
40       B.  Agency relationships are confirmed in paragraph 42.
41
42

Property  11893  WEDGEBROOK ST                                    LAS VEGAS        NV    89183
Owner's Name            KYLE PUNTNEY              Owner's Name
Tenant          CANDY TORRES          Initials             Tenant                       Initials
Tenant                                Initials             Tenant                       Initials

Residential Lease Agreement Rev. 10.16        © 2016 Greater Las Vegas Association of REALTORS®                 Page 13 of 13

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 |              **ROTH00454**
allanindianoil@yahoo.com                                                            instanetFORMS

## HOLD HARMLESS AGREEMENT
### (PROPERTY SIGHT UNSEEN)



11893 WEDGEBROOK ST
Property Address

I/We, _____ CANDY TORRES _____ as Buyer/Tenant
of the above-entitled property ("Property") hereby understand, acknowledge and agree as follows:

1.  Buyer/Tenant has never personally visited the Property.

2.  Despite never having visited the Property, Buyer/Tenant desires to purchase/lease the Property.

3.  Buyer/Tenant is represented in the transaction by _____ Allan Rothstein _____ ("Agent"),
an agent of _____ ALLAN ROTHSTEIN _____ ("Broker").

4.  Buyer/Tenant is not relying on any statements or representations made by Broker or Agent in making the decision to purchase/lease.

5.  Buyer/Tenant assumes full responsibility for and agrees to conduct such tests, walk-throughs, inspections and research as Buyer/Tenant deems necessary, or to arrange for such matters to be handled by a third party.

6.  Buyer/Tenant is advised to seek advice from professionals of Buyer/Tenant's choice, including but not limited to legal counsel and inspectors prior to purchasing/leasing the Property and signing this Agreement.

7.  Buyer/Tenant agrees to hold Broker, Agent, and any employee, officer or other agent of Broker who may be involved in the transaction ("Indemnitees"), harmless for any and all liability as to the location, physical and aesthetic condition, use, value and conditions affecting the property, and to release Indemnitees from liability for same. Buyer/Tenant further agrees to hold Indemnitees harmless for the cost of any defense which may result from the transaction.

8.  Buyer/Tenant understands the nature of this Agreement is a hold harmless agreement and release of liability.

_____    11/23/18
☐ Buyer ☒ Tenant CANDY TORRES    Date

_____    _____
☐ Buyer ☐ Tenant    Date

State of Nevada
County of _____ CLARK _____

This instrument was acknowledged before me on _____ by

_____.

Notary Public in and for said County and State

Hold Harmless Agreement 06/12     © 2012 Greater Las Vegas Association of REALTORS®

This form presented by Allan Rothstein | Allan Rothstein | 7023536878 | allanindianoil@yahoo.c ROTH00455

# DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE

*This form does not constitute a contract for services nor an agreement to pay compensation.*

In Nevada, a real estate licensee is required to provide a form setting forth the duties owed by the licensee to:
  a) Each party for whom the licensee is acting as an agent in the real estate transaction, and
  b) Each unrepresented party to the real estate transaction, if any.

---

**Licensee:** The licensee in the real estate transaction is _____ Allan Rothstein _____

whose license number is _____. The licensee is acting for [client's name(s)] ____ CANDY TORRES ____

_____ who is/are the ☐ Seller/Landlord; ☐ Buyer/Tenant.

**Broker:** The broker is ____ ALLAN ROTHSTEIN ____, whose company is ____ Allan Rothstein ____.

Are there additional licensees involved in this transaction? ☐ Yes ☒ No If yes, Supplemental form 525A is required.

---

## Licensee's Duties Owed to All Parties:
A Nevada real estate licensee shall:
1. Not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest.
2. Exercise reasonable skill and care with respect to all parties to the real estate transaction.
3. Disclose to each party to the real estate transaction as soon as practicable:
   a. Any material and relevant facts, data or information which licensee knows, or with reasonable care and diligence the licensee should know, about the property.
   b. Each source from which licensee will receive compensation.
4. Abide by all other duties, responsibilities and obligations required of the licensee in law or regulations.

## Licensee's Duties Owed to the Client:
A Nevada real estate licensee shall:
1. Exercise reasonable skill and care to carry out the terms of the brokerage agreement and the licensee's duties in the brokerage agreement;
2. Not disclose, except to the licensee's broker, confidential information relating to a client for 1 year after the revocation or termination of the brokerage agreement, unless licensee is required to do so by court order or the client gives written permission;
3. Seek a sale, purchase, option, rental or lease of real property at the price and terms stated in the brokerage agreement or at a price acceptable to the client;
4. Present all offers made to, or by the client as soon as practicable, unless the client chooses to waive the duty of the licensee to present all offers and signs a waiver of the duty on a form prescribed by the Division;
5. Disclose to the client material facts of which the licensee has knowledge concerning the real estate transaction;
6. Advise the client to obtain advice from an expert relating to matters which are beyond the expertise of the licensee; and
7. Account to the client for all money and property the licensee receives in which the client may have an interest.

**Duties Owed By a broker who assigns different licensees affiliated with the brokerage to separate parties.**
Each licensee shall not disclose, except to the real estate broker, confidential information relating to client.

## Licensee Acting for Both Parties:
The Licensee

MAY [ _____ / _____ ]     **OR**     MAY NOT [ _____ / _____ ]

in the future act for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest. Before a licensee may act for two or more parties, the licensee must give you a "Consent to Act" form to sign.

**I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure.**

| | | |
|---|---|---|
| Seller/Landlord: ____ ALLAN ROTHSTEIN | Date: 11/17/2018 | Time: 353 |
| Seller/Landlord: ____ | Date: ____ | Time: ____ |
| OR | | |
| Buyer/Tenant: ____ CANDY TORRES | Date: CT | Time: CT |
| Buyer/Tenant: ____ | Date: ____ | Time: ____ |

Approved Nevada Real Estate Division
Replaces all previous versions
525
Revised 11/7/16

ROTH00456

# DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE
*This form does not constitute a contract for services nor an agreement to pay compensation.*

In Nevada, a real estate licensee is required to provide a form setting forth the duties owed by the licensee to:
  a) Each party for whom the licensee is acting as an agent in the real estate transaction, and
  b) Each unrepresented party to the real estate transaction, if any.

Licensee: The licensee in the real estate transaction is _____ allan rothstein _____

whose license number is ____ 2 ____. The licensee is acting for [client's name(s)] _____
CANDY TORRES _____ who is/are the ☐ Seller/Landlord; ☑ Buyer/Tenant.
Broker: The broker is ALLAN ROTHEN, whose company is ALLAN ROTHSTEIN

Are there additional licensees involved in this transaction? ☐Yes ☑No  If yes, Supplemental form 525A is required. C.To ROTHSTEIN

## Licensee's Duties Owed to All Parties:
A Nevada real estate licensee shall:
1. Not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest.
2. Exercise reasonable skill and care with respect to all parties to the real estate transaction.
3. Disclose to each party to the real estate transaction as soon as practicable:
   a. Any material and relevant facts, data or information which licensee knows, or with reasonable care and diligence the licensee should know, about the property.
   b. Each source from which licensee will receive compensation.
4. Abide by all other duties, responsibilities and obligations required of the licensee in law or regulations.

## Licensee's Duties Owed to the Client:
A Nevada real estate licensee shall:
1. Exercise reasonable skill and care to carry out the terms of the brokerage agreement and the licensee's duties in the brokerage agreement;
2. Not disclose, except to the licensee's broker, confidential information relating to a client for 1 year after the revocation or termination of the brokerage agreement, unless licensee is required to do so by court order or the client gives written permission;
3. Seek a sale, purchase, option, rental or lease of real property at the price and terms stated in the brokerage agreement or at a price acceptable to the client;
4. Present all offers made to, or by the client as soon as practicable, unless the client chooses to waive the duty of the licensee to present all offers and signs a waiver of the duty on a form prescribed by the Division;
5. Disclose to the client material facts of which the licensee has knowledge concerning the real estate transaction;
6. Advise the client to obtain advice from an expert relating to matters which are beyond the expertise of the licensee; and
7. Account to the client for all money and property the licensee receives in which the client may have an interest.

**Duties Owed By a broker who assigns different licensees affiliated with the brokerage to separate parties.**
Each licensee shall not disclose, except to the real estate broker, confidential information relating to client.

## Licensee Acting for Both Parties:
The Licensee
MAY [signature  9/18/18]   **OR**   MAY NOT [ _____ ]
in the future act for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest. Before a licensee may act for two or more parties, the licensee must give you a "Consent to Act" form to sign.

I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure.

Seller/Landlord: _____ Date: 9-27-18 Time: 2:05 pm

Seller/Landlord: _____ Date: _____ Time: _____
OR
Buyer/Tenant: _____ Date: 9/27/18 Time: 2:00 pm

Buyer/Tenant: _____ Date: _____ Time: _____

Approved Nevada Real Estate Division
Replaces all previous versions
525
Revised 11/7/16

This form presented by Allan Rothstein | Allan Rothstein | 702-353-6878 | allanindianoil8yahoo.

ROTH0045

## CONSENT TO ACT

*This form does not constitute a contract for services nor an agreement to pay compensation.*

**DESCRIPTION OF TRANSACTION:** The real estate transaction is the ☐ sale and purchase; or ☒ lease; of

**Property Address:** 11893 WEDGEBROOK ST

<div align="center">LAS VEGAS      NV   89183</div>

In Nevada, a real estate licensee may act for more than one party in a real estate transaction however, before the licensee does so, he or she must obtain the written consent of each party. This form is that consent. Before you consent to having a licensee represent both yourself and the other party, you should read this form and understand it.

**Licensee:** The licensee in this real estate transaction is _____ Allan Rothstein _____ ("Licensee") whose

license number is __ _____ and who is affiliated with _____ Allan Rothstein _____ ("Brokerage").

Seller/Landlord _____ KYLE PUNTNEY _____
<div style="padding-left:2em">Print Name</div>

Buyer/Tenant _____ CANDY TORRES _____
<div style="padding-left:2em">Print Name</div>

**CONFLICT OF INTEREST:** A licensee in a real estate transaction may legally act for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest.

**DISCLOSURE OF CONFIDENTIAL INFORMATION:** Licensee will not disclose any confidential information for 1 year after the revocation or termination of any brokerage agreement entered into with a party to this transaction, unless Licensee is required to do so by a court of competent jurisdiction or is given written permission to do so by that party. Confidential information includes, but is not limited to, the client's motivation to purchase, trade or sell, which if disclosed, could harm one party's bargaining position or benefit the other.

**DUTIES OF LICENSEE:** Licensee shall provide you with a "Duties Owed by a Nevada Real Estate Licensee" disclosure form which lists the duties a licensee owes to all parties of a real estate transaction, and those owed to the licensee's client. When representing both parties, the licensee owes the same duties to both seller and buyer. Licensee shall disclose to both Seller and Buyer all known defects in the property, any matter that must be disclosed by law, and any information the licensee believes may be material or might affect Seller's/Landlord's or Buyer's/Tenant's decisions with respect to this transaction.

**NO REQUIREMENT TO CONSENT:** You are not required to consent to this licensee acting on your behalf. You may

- Reject this consent and obtain your own agent,
- Represent yourself,
- Request that the licensee's broker assign you your own licensee.

## CONFIRMATION OF DISCLOSURE AND INFORMATION CONSENT

**BY MY SIGNATURE BELOW, I UNDERSTAND AND CONSENT:** I am giving my consent to have the above identified licensee act for both the other party and me. By signing below, I acknowledge that I understand the ramifications of this consent, and that I acknowledge that I am giving this consent without coercion.

| I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure. | | | | | |
|---|---|---|---|---|---|
| Seller/Landlord | 11/17/2018 Date | Time | Buyer/Tenant | 11/23/18 Date | 8:57pm Time |
| Seller/Landlord | Date | Time | Buyer/Tenant | Date | Time |

This form presented by Allan Rothstein | Allan Rothstein | 7023536876 | allanindianoil8ya ROTH00458 FORMS



# LEASE ADDENDUM FOR ILLEGAL ACTIVITY FOR



11893  WEDGEBROOK ST                          LAS VEGAS      NV      89183

Property Address

In consideration of the execution or renewal of a lease of the Property, Landlord and Tenant hereby agree that the Residential Lease Agreement dated ___11/17/18___ be amended as follows:

1. Tenant and any member of Tenant's household or any guest shall not engage in any criminal or illegal activity, including but not limited to, illegal drug related activity, gang related activity or acts of violence on or near the subject Premises (as defined in the above-referenced Residential Lease Agreement). "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of controlled substance (as defined in Section 102 of the Controlled Substance Act, 21 U.S.C. §802). "Acts of violence" includes, but is not limited to, the unlawful discharge of firearms, on or near the Premises. Any and all firearms on the Premises must be stored properly pursuant to Nevada law.

2. Tenant, any member of the Tenant's household, or a guest or other person under Tenant's control, shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the subject Premises.

3. Tenant or members of the household will not permit the Premises to be used for or to facilitate criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL BREACH OF THE LEASE AGREEMENT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of the addendum shall be deemed a serious violation and a material noncompliance with the lease. It is understood and agreed that a single violation shall be cause for termination of the lease. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

5. In case of conflict between the provisions of this addendum and any other provisions of the Lease Agreement, the provisions of the addendum shall govern. This lease addendum is incorporated into the lease executed or renewed this day between Landlord and Tenant.

| | | | |
|---|---|---|---|
| _____ | 11/17/18 | _____ | _____ |
| LANDLORD/OWNER | DATE | LANDLORD/OWNER | DATE |
| OR Authorized Signatory | | OR Authorized Signatory | |
| ALLAN ROTHSTEIN | | | |
| PRINT NAME | | PRINT NAME | |
| _____ | _____ | _____ | _____ |
| TENANT'S SIGNATURE | DATE | TENANT'S SIGNATURE | DATE |
| CANDY TORRES | | | |
| PRINT NAME | | PRINT NAME | |
| _____ | _____ | _____ | _____ |
| TENANT'S SIGNATURE | DATE | TENANT'S SIGNATURE | DATE |
| PRINT NAME | | PRINT NAME | |



# SMOKE DETECTOR AGREEMENT
## FOR



| 11893 WEDGEBROOK ST | | LAS VEGAS | NV | 89183 |
|---|---|---|---|---|

Property Address

In reference to the Residential Lease Agreement ("Lease Agreement") executed by

OWNER'S Name: **KYLE PUNTNEY** , OWNER'S Name: _____ and

TENANT's Name: **CANDY TORRES** TENANT's Name: _____

TENANT's Name: _____ TENANT's Name: _____

dated **11/17/2018** covering the above-referenced real property, the parties hereby agree that the Lease Agreement be amended as follows:

Landlord and Tenant agree that the premises are equipped with smoke detection devise(s). Tenant shall agree as follows:

1.  It is agreed that Tenant will test the smoke detector(s) within twenty four (24) hours after occupancy and inform Landlord or his/her Agent immediately if detector(s) is not working properly.

2.  It is agreed that Tenant will be responsible for testing smoke detector(s) weekly by pushing the "push to test" button on the detector for about five (5) seconds. To be operating properly, the alarm will sound when the button is pushed.

3.  Tenant understands that said smoke detector(s) is a battery operated unit and it shall be Tenant's responsibility to insure that the battery is in operating condition at all times. If after replacing battery, any smoke detector(s) will not operate or has no sound, Tenant must inform Landlord or his/her Agent immediately in writing.

4.  Landlord and his/her Agent recommend that Tenant provide and maintain a fire extinguisher on the premises.

5.  The undersigned have read the above agreement and understand and agree to all provisions thereof and further acknowledge that they have received a copy of said agreement.

6.  Tenant shall not under any circumstances remove, disable or tamper with any smoke detection device(s).

| | |
|---|---|
| LANDLORD/OWNER                DATE | LANDLORD/OWNER                DATE |
| Print Name: **Allan Rothstein  Property Manager** | Print Name: _____ |
| TENANT'S SIGNATURE            DATE | TENANT'S SIGNATURE            DATE |
| Print Name: **CANDY TORRES** | Print Name: _____ |
| TENANT'S SIGNATURE            DATE | TENANT'S SIGNATURE            DATE |
| Print Name: _____ | Print Name: _____ |

**ALLAN ROTHSTEIN REAL ESTATE & PROPERTY MANAGEMENT SERVICES**

**755 WEST SUNSET ROAD**

**HENDERSON, NEVADA 89011**

**WWW.VEGAS RXREALTY.COM**

**702-      8 CELL**                                    **702-243      FAX**

## STANDARD SIGN PLACEMENT AGREEMENT

Date_____11/23/18_____

FOR ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION,INCLUDING A 1 DAY GRACE PERIOD I/WE, THE TENANTS HEREBY GRANT TO ALLAN ROTHSTEIN PROPERTY MANAGEMENT  AND THEIR AGENTS PERMISSION TO INSTALL A *FOR SALE* AND OR *FOR RENT* SIGN IN THE FRONT YARD OF THE PREMISES AT_____ . THIS PERMISSION AND SIGN PLACEMENT SHALL BE VALID AND REMAIN IN FORCE FOR THE LENGTH OF THE RENTAL LEASE AND ALL RENEWALS.

X_____

ROTH00461

# Rent Receipt Agreement

Date: _13_ 20 _18_ Rent due for the month of _November_ 20 _18_ Time _10:02 am_

Landlord and Tenant/s fully understand and therefore freely agree and intend that the payment of the late fees and charges are additional rent and NOT A PENALTY and would reasonably compensate the Landlord/s for actual damages and expenses. Tenant understands that if landlord allows tenant/s to make a partial payment, tenant agrees that the balance due without demand must be paid in full within five days. Landlord/s shall not be required to start a new eviction notice if landlords agree to accept partial payments.

Property address or APN _11893 WEDGEBROOK_

Payee X _____ Print Name _Candy Torres_

Payee X _____ Print Name _____

Tenant/s Phone number _102_ Last four SS Number _4158_

Tenant/s Phone Number _____ Last four SS Number _____

**ROTH00462**

# Direct Consent for Sexual Intercourse and or Fellatio or *Cunnilingus*

## *PLEASE READ THIS LEGAL CONTRACT CAREFULLY*

Concerning the matter of implied or direct consent to sexual intercourse, fellatio, and or cunnilingus the following persons, subsequently identified and referred to as the MALE hereto referred as the INITIATIOR/S and the FEMALE hereto referred as the RESPONDANT/S, expressly Accede, and freely and completely agree to the following requirements, and agreements under this legally binding contract, and require that the RESPONDENT/S acknowledge the following as factual and accurate:

1.

That the RESPONDENT/S and the INITIATOR do hereby freely and truthfully swear, and state that they are over the age of Eighteen, a legal adult under the laws of the State of Nevada, and not are mentally handicapped with an intelligence quotient rating under eighty five.

2.

The RESPONDENT/S are not currently under the influence of an incapacitating intoxicant, aphrodisiacs, or psychoactive substances, including but not limited to, alcohol, drugs, oysters, Bremelanotide, truffles, sea cucumber, strawberries, lobster, dark chocolate, Cocaine, LSD, cannabis or any other mind altering chemical or substance, nor have they been given the same by the INITIATOR/S..

3.

The RESPONDENT/S has not been coerced into sexual activities by the INITIATOR/S under the threat of force, injury, threatening to leave the RESPONDENT/S, any financial inducement of any type or kind, to disparage her socially, or by forcing her to engage in illegal activities, or by reporting illegal activities to the authorities.

4.

The RESPONDENT/S has not been forced into sexual activities under the threat of economic sanctions, in a manner that negatively affects the RESPONDENT/S, such as the refusal to provide financial support, provide employment only if RESPONDAN/S agree to the terms of this agreement, or pay for dinner and the movie, IE, ETC. unless she complies with INITIATOR/S requirement or request for sexual intercourse.

5.

The RESPONDENT/S has not been treated as a sexual object, servant, or chattel, subservient, or Submissive unless such behavior is expressly desired by the RESPONDENT/S.

6.

The RESPONDENT/s has not been intimidated into engaging in sexual activities by, Displaying weapons, force or creating an implied threat by looks, actions, or gestures.

PAGE ONE OF TWO          INITIALS X _____          INITIALS X _____

7.

The RESPONDENT/S has not been subject to emotional abuse by the INITIATOR/S by making her feel bad about herself, her emotional or physical status, playing mind games, or making her feel guilty for not agreeing to sexual intercourse, fellatio, and or cunnilingus.

8.

The RESPONDENT/S is not currently emotionally distressed from the breakup of a previous Relationship, nor clinically depressed, nor possessing anorexic tendencies which could lead to weakening of moral fortitude in an effort to seek a temporary emotional crutch.

9.

The RESPONDENT does not currently have a boyfriend/girlfriend/parent who is larger, meaner, and more physically aggressive, owns firearms and/or is more possessive than the INITIATOR/S. The hereby undersigned RESPONDENT/S agrees to the outlined aforementioned requirements and acknowledges that they are true and factual. The RESPONDENT/S hereby and freely gives their total consent to the INITIATOR/S to engage in sexual activities with the RESPONDENT/S with the understanding that sexual intercourse as defined by the State of Nevada will occur. This consent and agreement is valid for the period of FIVE years and does hereby freely give implied consent to consecutive or concurrent sexual encounters between the RESPONDENTS/S and the INITIATOR/S. By signing this agreement I/we state under the penalty of perjury that I/we have thoroughly read, understand, and agree to it terms and conditions both completely and freely. I/we approve the contents of this agreement. I /we will acquire the services of an attorney of my/our choosing, if I /we decide that I/we require legal representation. All parties agree that they have received a copy of this contract.

x _____   x _____

x _____   x _____

**Respondent/s**   **Date**

x _____   x 11/25/18 _____

x _____   x _____

*INITIATOR /s*   **Date**

PAGE TWO OF TWO

ROTH00464

# EXHIBIT 9

Deposition Exh. 36 - Release of Liability

## RELEASE OF LIABILITY AND ASSUMPTION OF RISK

### CAUTION: READ BEFORE SIGNING!
This document affects your legal rights and will bar your right to sue!

I, Candy Torres (Tenant), voluntarily sign this Release of Liability & Assumption of Risk Agreement in favor of Alan Rothytain (Landlord) in consideration to use the Landlord's facility located at 11893 Wedgebrook St.

In consideration of the Lease Agreement signed by both the Landlord and Tenant on 11/23/2018 (date), Tenant by signing below, hereby waives and releases Landlord, its owners, and agents and employees from any liability and/or claim for personal injury, property damage, or death that may arise from Tenant's use of the facility regardless of cause, even if such cause can be associated in any way by the acts or failures to act of the landlord, or any of its agents, or employee in the installation, adjustment, inspection, maintenance and/or rental of the facility, or from Tenant's use of this facility.

By signing below, Tenant accepts total responsibility for any and all injuries and damages of any kind which may result from any reason in the use of the facility, and it is the Tenant's intention to HOLD HARMLESS the Landlord for any injury sustained by Tenant or anyone else, regardless of cause, while using the above described facility.

I, understand, acknowledge that I have carefully read this release of liability / assumption of risk and understand its contents. I am aware that by signing this release, I am waiving certain legal rights including the right to sue the Landlord for any reason.

Signature of Tenant

Date  11/23/18

Candy Torres
Printed Name of Tenant

11893 Wedgebrook St.
Address of Tenant

Signature of Landlord

EXHIBIT
36
Partner 1/14/20

ROTH00477

RECEIVED  09/__/2013 21:24

DATE 11/23/2018

I, Candy Torrel, **APPLICANT FOR TENANCY FOR**

**THE PROPERTY LOCATED AT**
11893 Wedgebrook St.

**STATE THAT I UNDERSTAND THIS IS NOT A NEW BUILDING.**

**I UNDERSTAND PREVIOUS TENANTS MAY HAVE HAD DOGS,**

**CATS, OR OTHER ANIMALS ON THESE PREMISES. I ALSO**

**UNDERSTAND THAT VARIOUS MATERIALS USED IN THE**

**CONSTRUCTION OR REMODELLING OF THESE PREMISES**

**MAY HAVE  BEEN USED WHICH CAN CAUSE AN ALLERGIC**

**REACTION.  I ALSO UNDERSTAND THAT THE LANDLORD IS**

**NOT RESPONSIBLE FOR MY ALLERGIES.**

**SIGNED** _____

ROTH00478

# EXHIBIT 10

Certified Copy of Notice of Default



# DEBBIE CONWAY

## Clark County Recorder

**CONTACT**
**Office of the County Recorder**
**Clark County, Nevada**
(702) 455-4336
RecWeb@ClarkCountyNV.gov

INST: 201808140002639

## OFFICIAL CLARK COUNTY TITAN SEAL

**About this seal:**

https://clarkcountynv.gov/titanseal

**Verify digital version:**

https://titanseal.com/verify

Make sure there are 9 pages, including this one. At the top of every page it should say: Ethereum ID: 0xd4c727837641f57caa9f9f83a59f5768351badfa



I, Debbie Conway, hereby certify this document as a true and correct copy of the original on record with the Clark County Recorder's office.

*Debbie Conway*

Debbie Conway, Clark County Recorder

February 3, 2020

Date

Per Nevada Revised Statute 239 Section 6, personal information may be redacted, but in no way affects the legality of the document.

OFFICIAL USE ONLY:
https://etherscan.io/address/0xd4c727837641f57caa9f9f83a59f5768351badfa
https://etherchain.org/account/0xd4c727837641f57caa9f9f83a59f5768351badfa

Ethereum ID: 0xd4e727837641f57caa9f9f83a59f5768351bgdfa

Inst #: 20180814-0002639
Fees: $290.00
08/14/2018 01:16:47 PM
Receipt #: 3481427
Requestor:
SERVICELINK TITLE AGENCY IN
Recorded By: MIDO  Pgs: 8
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.  :  18-01145-CE-NV
Title Order No.  :  180311074-NV-VOI

APN: 191-04-314-009

---

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you
may have the legal right to bring your account in good standing by paying all of your past due
payments plus permitted costs and expenses within the time permitted by law for reinstatement of
your account, which is normally five (5) business days prior to the date set for the sale of your
property pursuant to NRS 107.080.  No sale date may be set until three months from the date this
notice of default may be recorded (which date of recordation appears on this notice).

**NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is
either the original Trustee or the duly appointed substituted Trustee under a Deed of Trust dated
04/29/2013, executed by Kyle L. Puntney, an unmarried man, as Trustor, to secure certain
obligations in favor of Mortgage Electronic Registration Systems Inc., as nominee for CMG
Mortgage, Inc. DBA CMG Financial, its successors and assigns as beneficiary recorded 05/08/2013
as Instrument No. 201305080004698 (or Book, Page)  of the Official Records of Clark County, NV.
Said obligations including ONE NOTE FOR THE ORIGINAL sum of $160,599.00.**

**That a breach of, and default in, the obligations for which such Deed of Trust is security has
occurred in that payment has not been made of :**

**The installments of principal and interest which became due on  12/01/2017 and all subsequent
installments of principal and interest through the date of this Notice, plus amounts that
are due for late charges, delinquent property taxes, insurance premiums, advances made
on senior liens, taxes and/or insurance, trustee fee's, and any attorney fees and court costs
arising from or associated with the beneficiaries efforts to protect and preserve its
security all of which must be paid as a condition of reinstatement, including all sums that
shall accrue through reinstatement or pay-off (and will increase until your account
becomes current) as summarized in the accompanying Affidavit of Authority to Exercise the
Power of Sale pursuant to NRS 107.080.**

Notice of Default and Election to Sell Under Deed of Trust
NDSC File No.:   18-01145-CE-NV
Page 2

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**Cenlar FSB**
**c/o National Default Servicing Corporation**
**7720 N. 16th Street, Suite 300**
**Phoenix, AZ 85020  Phone  602/264-6101  Sales Website: www.ndscorp.com/sales/**

**Contact the following number to discuss Loan Modification Options: 1-877-909-9416**

**Attached hereto and incorporated herein by reference is the Affidavit of Authority to Exercise the Power of Sale pursuant to NRS 107.080.**

**You may wish to consult a credit-counseling agency to assist you.  The Department of Housing and Urban Development (HUD) can provide you with the name and address of the local HUD approved counseling agency by calling their Approved Local Housing Counseling Agency toll free number: (800) 569-4287 or you can go to the HUD web site at: http://portal.hud.gov/portal/page/portal/HUD/localoffices.**

The Property Address: 11893 Wedgebrook Street , Las Vegas NV 89183

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Notice of Default and Election to Sell Under Deed of Trust
NDSC File No.:    18-01145-CE-NV
Page 3

**That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.**

Dated: _Aug 13_ , 2018

**National Default Servicing Corporation, an Arizona Corporation, As Trustee for CMG Mortgage, Inc.**

By: Angela Melton, Trustee Sales Representative

State of: Arizona
County of: Maricopa

On _8/13_ , 2018, before me, the undersigned, a Notary Public for said State, personally appeared Angela Melton, personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,



OFFICIAL SEAL
PAMELA CARDY
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires June 8, 2019

Signature _Pamela Cardy_

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**APN:** 191-04-314-009
**Foreclosure No.:** 18-01145-CE-NV

## AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE

Borrowers Identified in Deed of Trust:
Kyle L. Puntney, an unmarried man

Trustee Address:
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

Property Address:
11893 Wedgebrook Street
Las Vegas NV 89183

Deed of Trust Document Instrument
Number:
201305080004698

STATE OF _____ NJ _____ )
                           ) ss:
COUNTY OF _____ MERCER _____ )

This Affidavit is provided in support of the attached Notice of Default and Election to  Sale certain real Property secured by a Deed of Trust.  The following facts are, except where otherwise indicated, true of my own personal knowledge, and stated under penalty of perjury, as detailed herein.

My personal knowledge is based on my review of the business records of the beneficiary, the successor in interest of the beneficiary or the servicer of the obligation or debt secured by the deed of trust, which business records meet the standards set forth in NRS 51.135.

1. The full name and business address of the current trustee or the trustee's personal representative or assignee is:

| | |
|---|---|
| National Default Servicing Corporation | 7720 N. 16th Street, Suite 300<br>Phoenix AZ 85020 |
| Full Name | Street, City, State, Zip |

The full name and business address of the current holder of the note secured by the Deed of Trust is:

| | |
|---|---|
| **CMG Mortgage, Inc.** | 3160 Crow Canyon Rd, Ste 400<br>San Ramon, CA 94583 |
| Full Name | Street, City, County, State, Zip |

**APN:** 191-04-314-009
**Foreclosure No.:** 18-01145-CE-NV

The full name and business address of the current beneficiary of record of the Deed of Trust is:

**CMG Mortgage, Inc.**

3160 Crow Canyon Rd, Ste 400

San Ramon, CA 94583

Full Name

Street, City, County, State, Zip

The full name and business address of the current servicer(s) of the obligation or debt secured by the Deed of Trust is:

Cenlar FSB

425 Phillips Blvd., Ewing, NJ 08618

Full Name

Street, City, State, Zip

2. The Current Beneficiary, the successor in interest of the beneficiary or the trustee of the Deed of Trust is in either actual or constructive possession of the Note secured by the Deed of Trust.

3. That the beneficiary or its successor in interest, the servicer of the obligation or debt secured by the deed of trust or the trustee, or an attorney representing any of those persons, has sent to the obligor or borrower of the obligation or debt secured by the deed of trust a written statement of:

      i.   The amount of payment required to make good the deficiency in performance or payment, avoid the exercise of the power of sale and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the statement;

     ii.   The amount in default;

   iii.   The principal amount of the obligation or debt secured by the deed of trust;

   iv.   The amount of accrued interest and late charges;

    v.   A good faith estimate of all fees imposed , in connection with the exercise of the power of sale; and

   vi.   Contact information for obtaining the most current amounts due, including the local or toll-free number.

4. The obligor or borrower(s) of the obligation or debt may call to receive the most current amounts due and a recitation of the information contained in this affidavit at the toll free number 888-262-0450.

2



**APN:** 191-04-314-009
**Foreclosure No.:** 18-01145-CE-NV

5. Pursuant to my review of the relevant business records and/or the records of the county recorder where the subject real property is located and/or the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in the state of Nevada, the following is the (I) date, (II) recordation number (or other unique designation); and (III) assignor and (IV) assignee of each recorded assignment of the subject Deed of Trust, if any:

   Recorded Date:       03/28/2018

Recorded Number:     20180328-0001779
Name of Assignor:     Mortgage Electronic Registration Systems, Inc. as nominee for CMG Mortgage, Inc. DBA CMG Financial, its successors and assigns
Name of Assignee:     CMG Mortgage, Inc.

6. The following is the true and correct signature of the affiant:

Dated this _8_ day of _August_, 20 _18_.

Affiant Name:_ Patricia Bracey _

Title: __Vice President and Assistant Secretary_

CMG Mortgage, Inc.

Signed By:_____

STATE OF ____NJ_____ )
                   ) ss:
COUNTY OF _MERCER___)

Sworn to and subscribed before me on the _8_ day of _Aug_, 20 _8_, by
_Patricia Bracey_

(Notary Seal)

CARA A. STEARS
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50069468
My Commission Expires 10/5/2022

_Cara a Stears_
NOTARY PUBLIC IN AND FOR SAID
COUNTY AND STATE



G1

**A Division of CMG Mortgage, Inc. NMLS #1820**

May 02, 2018

Kyle L Puntney

San Jose CA 95128

RE: Property Address: 11893 Wedgebrook Street
Las Vegas NV 89183

DECLARATION

The undersigned beneficiary or their authorized agent for the beneficiary
hereby represents and declares as follows:

1. _____ On _____ the beneficiary or their authorized agent contacted
the borrower(s) to assess their financial situation and to
explore options to avoid foreclosure. During this contact
the borrower(s) was advised he or she has the right to schedule
a follow-up meeting to occur within 14 days. Further, the
borrower(s) was provided the toll-free telephone number
to find a HUD-certified housing counseling agency.

2. __X__ No contact was made with the borrower despite the due diligence
of beneficiary or their authorized agent pursuant to California
Civil Code 2923.5.(e), including (a) Mailing a first-class letter
to the borrower(s) which included a toll free number to contact a
HUD-certified housing counseling agency; (b) Attempting to contact
the borrower(s) by telephone at the primary telephone number on
file at least three times at different hours and on different
days, or determining that the primary and secondary phone numbers
on file were disconnected; and (c) Having received no response
from the borrower(s) for 14 days after the telephone contact
efforts were complete, an additional letter was sent to the
borrower(s) via certified mail, with return receipt requested.

3. _____ The borrower has surrendered the secured property as evidenced by a
letter confirming the surrender or by delivery of the keys to the
secured property to the beneficiary, their authorized agent or the
trustee.

XC179 050 EZM G1

Page 2

4. ____ The beneficiary or their authorized agent has evidence and
reasonably believes that the borrower has contracted with an
organization, person, or entity whose primary business is advising
people who have decided to leave their homes on how to extend the
foreclosure process and to avoid their contractual obligations to
beneficiaries.

5. ____ The beneficiary or their authorized agent has confirmed that the
borrower(s) filed for bankruptcy and the proceedings have
not been finalized to wit; there is no order on the court's docket
closing or dismissing the bankruptcy case.

6. ____ The provisions of California Civil Code 2923.5 do not apply
because .

The undersigned instructs the trustee to proceed with non-judicial
foreclosure proceedings and expressly authorizes the trustee or their
authorized agent to sign the notice of default containing the declaration
re: contact required pursuant to California Civil Code 2923.5. I certify
(or declare) under penalty or perjury under the laws of the State of
California that the foregoing is true and correct.

Dated: 5/11/2018

By: _____
          Cristina Giraldo
          Team Lead
          Default Compliance

XC179 050 EZM G1

# EXHIBIT 11

Certified Copy of Notice of Rescission



# DEBBIE CONWAY

## Clark County Recorder

**CONTACT**
**Office of the County Recorder**
**Clark County, Nevada**
(702) 455-4336
RecWeb@ClarkCountyNV.gov

INST: 201811020002547

## OFFICIAL CLARK COUNTY TITAN SEAL

**About this seal:**

https://clarkcountynv.gov/titanseal

**Verify digital version:**

https://titanseal.com/verify

Make sure there are 3 pages, including this one. At the top of every page it should say: Ethereum ID: 0xe25a630673b5dbebbc1c2abe8ee2a78779881711



I, Debbie Conway, hereby certify this document as a true and correct copy of the original on record with the Clark County Recorder's office.

*Debbie Conway*
Debbie Conway, Clark County Recorder

February 3, 2020
Date

Per Nevada Revised Statute 239 Section 6, personal information may be redacted, but in no way affects the legality of the document.

OFFICIAL USE ONLY:
https://etherscan.io/address/0xe25a630673b5dbebbc1c2abe8ee2a78779881711
https://etherchain.org/account/0xe25a630673b5dbebbc1c2abe8ee2a78779881711

**RECORDING REQUESTED BY:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.: 18-01145-CE-NV
Order No.: 180311074-NV-VOI
Property Address: 11893 Wedgebrook Street
Las Vegas, NV 89183
APN: 191-04-314-009

Inst #: 20181102-0002547
Fees: $40.00
11/02/2018 03:36:40 PM
Receipt #: 3555319
Requestor:
SERVICELINK TITLE AGENCY IN
Recorded By: SAO   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

## NOTICE OF RESCISSION OF NOTICE OF DEFAULT
## AND ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN:   That **National Default Servicing Corporation, an Arizona Corporation,** is either the original Trustee, the duly appointed substituted Trustee or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated **04/29/2013**, executed by **Kyle L. Puntney, an unmarried man,** as Trustor, to secure certain obligations in favor **Mortgage Electronic Registration Systems Inc., as nominee for CMG Mortgage, Inc. DBA CMG Financial, its successors and assigns,** as Beneficiary, recorded **05/08/2013** as Instrument No. **201305080004698** (or Book, Page) of the Official Records of **Clark** County, **NV** describing land therein as more fully described on the above referenced Deed of Trust.

Said obligations including one Note for the sum of **$160,599.00**.

Whereas, the present beneficiary under that certain Deed of trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice of Default was recorded on **08/14/2018** in the office of the recorder of **Clark** County, **NV,** Instrument No. **20180814-0002639** Book , Page , of Official Records.

Page Two
Notice of Rescission of Notice of Default and Election to Sell Under Deed of Trust
**NDSC File No.: 18-01145-CE-NV**

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that present beneficiary, does hereby rescind, cancel, withdraw and revoke without prejudice the acceleration of the Note, or Deed of Trust, or both, as referenced in the Notice of Default and Election to Sell Under Deed of Trust listed above, as well as any prior or concurrent acceleration of the Note or Deed of Trust whether stated by Beneficiary, Trustee, or any prior Beneficiary or Trustee in correspondence or otherwise. This rescission shall not in any manner be construed as waiving or affecting any breach of default – past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, to withdraw and revoke without prejudice the acceleration of the Note, or Deed of Trust, or both, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given. This rescission merely reinstates the obligations secured by the Deed of Trust as though no Notice of Default and Election to Sell Under Deed of Trust, or any prior or concurrent acceleration of the Note or Deed of Trust, whether stated by beneficiary, Trustee or any prior beneficiary or Trustee in correspondence or otherwise has previously been made, given or recorded.

**National Default Servicing Corporation, an Arizona Corporation, as Agent for the Beneficiary of Record**

By: _Angela Melton_

    Angela Melton, Authorized Signor

Dated: _11/1/18_

State of: Arizona
County of: Maricopa

On _November 1_, 2018, before me, the undersigned, a Notary Public for said State, personally appeared _Angela Melton_ personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by this persons signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Notary Public State of Arizona
Maricopa County
Billie Ranee Portz
My Commission Expires 10/26/2021

Signature _Billie Ranee Portz_

**EXHIBIT 12**

Rothstein's FRCP 26.1 Disclosure

**THE BARNABI LAW FIRM, PLLC**
CHARLES ("CJ") E. BARNABI JR., ESQ.
Nevada Bar No. 14477
375 East Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
Email: cj@barnabilaw.com
Telephone:     (702) 475-8903
Facsimile:     (702) 966-3718

*Attorneys for Defendant, Allan Rothstein*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| CANDY TORRES,<br><br>Plaintiff,<br><br>v.<br><br>ALLAN ROTHSTEIN and KYLE PUNTNEY,<br><br>Defendants. | Case No.:  2:19-cv-00594-APG-GWF |

### DEFENDANT'S FRCP 26.1(a)(1) DISCLOSURE STATEMENT

Defendant Allan Rothstein, by and through its counsel of record, CJ Barnabi, Esq. of The Barnabi Law Firm, PLLC, hereby make the following witness and document disclosures pursuant to FRCP 26(a)(1):

### I.

### POTENTIAL WITNESSES

1.      Allan Rothstein
c/o THE BARNABI LAW FIRM, PLLC
375 E. Warm Springs Road, Ste. 104
Las Vegas, NV 89119
Tel.: (702) 475-8903

Mr. Rothstein is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.

Page 1 of 5

THE BARNABI LAW FIRM, PLLC
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 475-8903 FAX: (702) 966-3718

2.    The Person Most Knowledgeable of Allan Rothstein Realty
      c/o THE BARNABI LAW FIRM, PLLC
      375 E. Warm Springs Road, Ste. 104
      Las Vegas, NV 89119
      Tel.: (702) 475-8903

The Person Most Knowledgeable of Allan Rothstein Realty is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.

3.    The Person Most Knowledgeable of Allan Rothstein Real Estate Services
      c/o THE BARNABI LAW FIRM, PLLC
      375 E. Warm Springs Road, Ste. 104
      Las Vegas, NV 89119
      Tel.: (702) 475-8903

The Person Most Knowledgeable of Allan Rothstein Real Estate Services is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.

4.    Kyle Puntney

      San Jose, CA 95128-2235
      Tel.

Mr. Puntney is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.

5.    Candy Torres
      c/o Nevada Legal Services, Attn: Ron Sung
      530 South 6th Street
      Las Vegas, NV 89101
      Tel. (702) 388-1641 ext. 148

Ms. Torres is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.

6.    John Michael Haydukovich

      North Las Vegas, NV 89106
      Tel.

THE BARNABI LAW FIRM, PLLC
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 475-8903 FAX: (702) 966-3718

THE BARNABI LAW FIRM, PLLC
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 475-8903 FAX: (702) 966-3718

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mr. Haydukovich is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation.  Mr. Haydukovich has inspected and repaired the subject property.

7.    Steven P. Winkler, M.D., F.A.C.P.
      Desert Preventative & Diagnostic Medicine
      10001 South Eastern Avenue, Ste. 402
      Henderson, NV 89052
      Tel. (702)

Dr. Winkler is the primary care physician for Allan Rothstein.  Dr. Rothstein is expected to testify that Mr. Rothstein has erectile dysfunction and is unable to have sexual relations.

8.    C. Rachel Douglas

      Las Vegas, NV 89135

Ms. Douglas is the prior former tenant and may testify regarding the condition of the subject property upon her departure and any other relevant facts.

9.    Francisca Hernandez Torres

      North Las Vegas, NV 89032
      Tel. (

Ms. Torres is the mother and former or current employer of Plaintiff and provides funds to Plaintiff from her father's estate.

10.   The Person Most Knowledgeable of Torres Cleaning Services

      North Las Vegas, NV 89032
      Tel. (702)

The Person Most Knowledgeable of Torres Cleaning Services is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation, which may include the employment history of the Plaintiff.

11.   The Person Most Knowledgeable of The Suites at Flamingo
      4855 Kemp Street
      Las Vegas, NV 89121

Page 3 of 5

Tel. (702) 433-3644

The Person Most Knowledgeable of The Suites at Flamingo is expected to testify as to the facts and circumstances surrounding the claims and allegations which are the subject of the instant litigation, which may include the residency history of the Plaintiff at the location.

12.     Without waving any evidentiary objections, each and every witness designated by any party to this action.

Defendant reserves the right to supplement these witness designations as further investigation and discovery may reveal, or as necessary for rebuttal.

## II.

## DOCUMENTS

1.      Documents identified as ROTH001 – 506, which constitutes the management file for the subject property shortly prior to and during the Plaintiff's residency (which includes agreements, notes, invoices, correspondence, etc., as kept in ordinary course);

2.      Correspondence dated September 12, 2019 from Dr. Winkler Re: Allen Rothstein's                      bates stamp ROTH00507;

3.      Correspondence dated August 14, 2019 from First Service Residential Re: Las Vegas Metropolitan Police Department SWAT Team reporting to subject property on August 6, 2019, bates stamp ROTH00508; and

4.      Without waving any evidentiary objections, each and every document designated by any party to this action.

Defendant reserves the right to supplement this document disclosure as further investigation and discovery may reveal.

## III.

## DAMAGES

Page 4 of 5

THE BARNABI LAW FIRM, PLLC
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 475-8903 FAX: (702) 966-3718

Defendant believes that he has been damaged by the false allegations of Plaintiff which damages include attorney's fees, cost and other damages associated with defending the spurious allegations.

## IV.

## INSURANCE AGREEMENTS

Defendant is unaware of any specific insurance agreements that would compensate Plaintiff for the alleged damages incurred.

Dated this 20th day of September 2019.

THE BARNABI LAW FIRM, PLLC

By:     /s/ CJ Barnabi                  
CHARLES ("CJ") E. BARNABI JR., ESQ.
Nevada Bar No. 14477
375 E. Warm Springs Road, Ste. 104
Las Vegas, NV 89119
*Attorneys for Sundance Media Group, LLC*

# EXHIBIT 13

Deposition Exh. 23 - Partial MLS Listing

Your Session has Expired. Please login again. Login

| | | | | | | Criteria | Map | Results |

Previous · Next - 1 of 1          Checked 0       All · None · Page      Agent Single Line display          Display Agent Full      ☑ at 1  ☑ per page

☐ ▣ ▣ ▣   ▣   △ ▣ Tax▣ ⬤ ⬤ ⬤ ⬤ ⬤ ⬤ 🔲 🖾 🖩 🏠 ▪   🖾

Recent: 09/21/2018 : New Listing

**GLVAR**                   **Residential Rental**              09/24/2018  2:27 PM

| | | | | | | |
|---|---|---|---|---|---|---|
| ML# | 2033916  Offc | ALRR | PubID | 224431 | Status | A-ER | Area  303 | Rent/Mo $1,550 |

Address    11893 /WEDGEBROOK /Street Unit       StatusUpdate                Zoning  SINGLE
County    CLARK              Building #          Parcel#    191-04-314-009         Zip    89183
Community  Rhodes Ranch            City/Town  Las Vegas       Twnshp  2Range  61 Sect  4    YrBuilt  2007
Tower Name          Subdiv     TERRACINA 3 SOUTH UNIT 3           Res MLS#             State    NE
Assoc/Comm Feat Desc  CC&RS, COMMUNITY Wall, Guest Parking       Pets  Y  Add Pet Rent  Y      Gated    N
Elem K-2 SCHO  Elem 3-5 SCHO  YrRound  N  Junior DELW  Highsch LIBR  MetroMap  94-E2         Age Restr Comm  N

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **GENERAL INFORMATION** | | | | | #Baths | FB | 3/4 | HB | Tot |

Style    SINGLE             Bldg Desc  2STORY     Studio N  #Beds  3      3       1       0      4
Roof    TILE               Unit Desc  1LEV2FL                        #Den/Oth            #Loft  1
Type    ATTACHD             Prop Desc                                Carport  0
Garage    1/ATTACHD, AUTODR,
        ENTRYHS, FINISHD       Converted Garage  N  Conv     N      Prkng Desc
AppxLivArea  1,650  ApprxAddLivArea               Lot Sqft    2,178     Lot Desc    Under 1/4 Acre
AppxTotLivArea  1,650      PvSpa    No              PvPool    No                  #Acres   0.05
Dir              SOUTH ON LAS VEGAS BLVD PAST SILVERADO RANCH TO BARBARA, RT ON GILES, RT ON SUMMERWALK, RT ON
             WEDGEBROOK, HOME IS ON LEFT. NORTH OF THE M-CASINO, EXPRESSWAYS 15 AND 215

Public       GR8 HIGHLY DESIRED LOCATION LOCATION VIEWS OF CITY. XTRA CLEAN.ALL UPGRADES,SIDE BY SIDE REFRIG,
Remarks     WATER N ICE THRU DOOR.SUPER SIZE GAS OVEN,MICROWAVE,UPGRADED CABINETS,GRANITE COUNTERS,DIAMOND
            LAID CERAMIC TILE,ENCLOSED REAR PATIO/W LOTS OF CEMENT, PET FRIENDLY CEILING FANS.MONITORED
            SECURITY SYSTEM. HUGE CHEFS KITCHEN GREAT VIEWS. PRE-FORECLOSURE BALANCE WILL BE PAID OCT 1ST WHEN
            OWNER IS RELEASED FROM MEDICAL FACILITY

Ag/Ag        WOW!GREAT AREA!LOOK AT THIS COMMISSION!FAST PAY.!! REAL EZ FAST APPROVAL.BAD CREDIT, BK, SHORT
Remarks     SALE,MEDICAL BILLS, FORECLOSURE OK!.PETS WELCOME .APPLICATION FEE $85 PER PERSON 16 AND OVER.
            HOLDING DEPOSIT $750. MAX HOLD IS 5 DAYS.USE GLVAR FORMS.COPY I.O,PROOF OF FUNDS.TENANT & AGENT TO
            VERIFY ALL MEASUREMENTS,FACTS,STATEMENTS. PRE-FORECLOSURE BALANCE WILL BE PAID OCT 1ST WHEN
            OWNER IS RELEASED FROM MEDICAL FACILITY

Master Bedroom  22X6       CEILFN, LOFT, SEPRAT, UPSTRS,  Master Bath             DBLSNK, MAKEUP, SEPSHW,
                       WICLOS                                           SEPTUB
2nd Bedroom      12X11     CEILFN, CEILIT, TELEJK       3rd Bedroom       13X12    CEILFN, CEILIT, TELEJK
Dining Room      16X7       FAMDIN                     Family Room     18X18    DNSTRS, SEPFAM
Kitchen                        NOOK, GRNCTP, RECESS,     Loft             12x8
                            PANTRY

Bed Dn   Y     Ba Dn    N
Landscp     DESERT, BUBDRIP, FRNSPR, FRUIT           Furnished  No
Fence    Y   BLOCK                             Constrctn  FRMSTUC
Refrg  Y  Dispos  Y  Dishw  Y  Washer/Dryer Incl  Both         DryerUtil   G        Location
OthApplnces  ENSTAPL, MICROWV, WTRCOND               Washer / Dryer Location  2nd Floor
Furniture Included?  No
Interior      ALARMO, BLINDS, CEILFN, DRYWALL, WNDWPRT      Oven Desc  STOVEG
Flooring     CARPET, CERAMIC                       Firepl      0
House Faces  E      Views      CITYVW
Exterior     PATIO, PRIVYRD
Util Info                                      Cable/Sat Avail  Y
Heat Sys   CENTRAL, PRGTHER                         HtFuel      GAS
Cool Sys   CENTRAL, PRGTHER                         CLFuel     ELEC           Sol Elec
WaterHtr   GAS

| | |
|---|---|
| **FINANCIAL/DEPOSIT/REFUND INFORMATION** | |

Deposit     CLEAN, KEY, PETDEP, SECURITY      Lease      1YEAR, 4TO6MOS, 1YEARPLUS      Date Avail  09/21/2018
Ten Pays   ALARM, CABLE, DISPOSL, GAS, KEYDEPO, LANDSCP, POWER, SEWER,      App Fee     Y/$65/PADULT
          WATER
AdmnDep  Y/$150                                               Refundble  N
Secur      $1550/P     Key    $75/P         Pet  $350/P     PerPet  Y          Clean $375/Y        Oth $125/N
Restrict+  CONPETS                    Landl/OwnPays  ASSNFEE
HOA       Y/TERRACINA                 HOA Phone  702-737-8580         Rent Range
AssocName  TERRACINA                Assoc Ph   702-737-8580      FIRPTA  N  Sec8Cons  Y       LsOpt Cons  Y
**VOW/LISTING OFFICE INFORMATION**             Internet  Y  Public Address  Y  AVM  Y     Commentary  Y
ReferralCommDesc  FLTFE     Amt      $500     Comm%   0.00       MinComm 500.0         MaxComm 500.0
Lockbox    E  LockboxLocation  GATE             Foreclo  Y  NOD  08/14/2018
R/Agent    Allan Rothstein             L/APh 702-353-6878         REALTOR  Y           AgtOwnshpInt  N  Must Show  Y
Office      Allan Rothstein            OffcPh  702-               Bonus $O  No  CoOp          Flat Fee
Off Add     755 Sunset Rd, Henderson 89011           BrokerName    Allan Rothstein       Vr  N    Ex  N
Agt Fax #  702-1      Email                                     T Status Dt       VTour  Y  OwnLic  N
Contact    Allan Rothstein/ M/ 702-      Occup  TEN      Power  ON       PhotExcl  Yes       ListDt      09/21/2018
Contact Email
Showing    CALLLA                     GateCode        Act DOM  3       Owner Managed  N    ExpDt      09/21/2019
ContDesc           ComboLB                          Lttg U          Permitted Prop Mgr  Y  WD
🖾 Schedule a Showing

Energy-Efficient/GREEN Information:
Green Building Certification  N
Presented by: Office Name          Allan Rothstein                 Agent  Allan Rothstein
**Report Data Error Anonymously**

This search was narrowed to a specific set of Listings.
Property Type is 'Residential Rental'
Found 1 result in 0.03 seconds.

EXHIBIT ⟨SW⟩
tabbies®
23
Puntney 1/14/20

ROTH00233

# EXHIBIT 14

Deposition Exh. 24 - Email re Foreclosure



**From: Kyle Puntney**
**Subject:** Re: forclosure
**Date:** September 6, 2018 at 15:59
**To:** ALLAN

Allan,

Please scan a copy of the notice for me and email it to me. I am working with the lender to resolve this.

I apologize for this headache for you and the tenant.

-Kyle

Sent from my iPhone

On Sep 4, 2018, at 09:18, ALLAN <                    > wrote:

THE FORCLOSURE NOTICE WAS FILED ON 8-14 18 @  1:16 PM

CALL allAN ..........LETS DISCUSS THIS

# *Risk Reduction Graduate Society Member*

**ALLan is a RRG Member and also  a Green Builder. As a member I am  provided with a higher level of expertise through educational courses taught only by Attorney's who are legal experts that specialize in Real Estate.  Legal education is necessary and required to understand and interpret laws, contracts and the Nevada Revised Statues that govern them.**

*ALLAN ROTHSTEIN'S COMPLETE REAL ESTATE and PROPERTY MANAGEMENT SERVICES.*
     *Call  ALLan  702 -*

On  Tuesday September 04, 2018 07:13:43 AM  PDT, ALLAN                    |              > wrote:

Good morning Kyle. your property is in forclosure. call ALLan ...I would like to help you save the property.

P L E A S E !!!!!  702

# *Risk Reduction Graduate Society Member*

EXHIBIT

24

Puntney 1/14/20

ALLan is a RRG Member and also a Green Builder. As a member I am provided with a higher level of expertise through educational courses taught only by Attorney's who are legal experts that specialize in Real Estate. Legal education is necessary and required to understand and interpret laws, contracts and the Nevada Revised Statues that govern them.

*ALLAN ROTHSTEIN'S COMPLETE REAL ESTATE and PROPERTY MANAGEMENT SERVICES.*
   *Call ALLan 702 -*

PUNT00244

# EXHIBIT 15

Deposition Exh. 24 - Email re Foreclosure

From: **ALLAN**
Subject: foreclosure Wedge
Date: September 19, 2018 at 22:14
To: Kyle Puntney          , Kyle Puntney          , allan rothstein

Good afternoon Kyle. I found the info you needed. the company is National Default servicing in Phoenix
phone 602 264 6101
fax 602-264 7720. PARCEL# 191-04-314-009   record date 8_14-18 The clock is running. Please dont wait.
Hope this helps.
The  tenant had the Lvvwd shut off water. Could you please have it turned on in your name . phone 702 870 2011.
 I had the leaks in the upstairs bath room repaired, remediated the mold and repaired the ceiling in the garage caused by the leaks. I will have to check again after the water has been turned on.
I placed the for rent sign in front. did a complete walk thru inspection of the inside and outside of home.
I will send You a copy of the report. I am in the process of relisting the property.

# *Risk Reduction Graduate Society Member*

**ALLan is a RRG Member and also  a Green Builder. As a member I am  provided with a higher level of expertise through educational courses taught only by Attorney's who are legal experts that specialize in Real Estate.  Legal education is necessary and required to understand and interpret laws,  contracts and the Nevada Revised Statues that govern them.**


*ALLAN ROTHSTEIN'S COMPLETE REAL ESTATE and PROPERTY MANAGEMENT SERVICES.*
   *Call  ALLan  702 -*



# EXHIBIT 16

Deposition Exh. 93 - Correspondence dated 10/24/18

On Wednesday, October 24, 2018 09:18:47 AM PDT, Waynesha Thomas <wthomas@snvrha.org> wrote:


I wanted to inform you that client CANDY TORRES does not qualify for the rent amount of 1550.00 due to the unit being over 40% of the participant's adjusted gross income.  The rental amount is $ 200.00 over the participants 40% adjusted income, making the highest rental amount the participant would qualify for to be $1350.00 per month. If you agree to negotiate the rental amount to $1350.00 PER MONTH, attached is the form Reduction of Rent acknowledgement that must be signed and dated by you and sent back by email, fax or mail.

If you choose to not negotiate the rental amount to $1350.00, than just simply reply back No to this email.

Thank You


**Waynesha Thomas** | Occupancy Specialist

**Southern Nevada Regional Housing Authority** | 380 N Maryland PKWY , Las Vegas, NV 89101

Office: 702.477.3443 | Fax : 702.922.6929 | Website : www.snvrha.org

Email : wthomas@snvrha.org


EXHIBIT
93
1/16/20

From: ALLAN [mailto:                    ]
Sent: Thursday, October 25, 2018 11:29 AM
To: Wayneisha Thomas; allan rothstein; Candy Torres
Subject: Re: Candy Torres Rent Reduction

OCTOBER 25, 2018 @ 11:11 AM.

<div align="center">DEMAND NOTICE</div>

Good morning Wayneisha. I talked to the owner. We can reduce the rent to 1512.00. the voucher stated that she was approved for 1550. Your email said she did not qualify because of the 40% rule. That decision should be stated that on the voucher. It was not!. That is not what the voucher and your email stated that I received from you. . Now Candy Torres stated that she is out of time on her voucher. We have taken the home off the market for one month based on the voucher and your statements.. I have recommend that she call HUD directly to get this action corrected. You are in violation of HUD guidelines. Also we will send you an invoice for one months rent of $1550.

 Please send check for $1550 to:

Allan Rothstein Real Estate services. 755 sunset rd . Henderson, Nv. 89011 . The Housing Authority will be responsible for Court costs and Attorney Fees.

If you will allow her to pay the balance of the rent directly to Allan Rothstein realty please advise me in writing. Hud pays 1350 and Candy Torres pays 200 directly to property manager.

THANK YOU, ALLAN ROTHSTEIN.

<div align="right">CT 3</div>

On Thursday, October 25, 2018 12:01:09 PM PDT, Wayneisha Thomas <wthomas@snvrha.org> wrote:

That amount unfortunately does not meet the participants 40 percent income. The How to Determine is an estimate only and there is no monetary value to the voucher. I will go ahead and inform Ms. Torres of the decision.

**Wayneisha Thomas |** Occupancy Specialist

**Southern Nevada Regional Housing Authority |** 380 N Maryland PKWY , Las Vegas, NV 89101

Office: 702.477.3443 | Fax : 702.922.6929 | Website : www.snvrha.org

Email : wthomas@snvrha.org

From: ALLAN <         m>
Date: Thu, Oct 25, 2018, 2:30 PM
Subject: Re: Candy Torres Rent Reduction
To: Waynelsha Thomas <wthomas@snvrha.org>, Candy Torres <candytorres27@gmail.com>

good afternoon and greeting.
You had or should have known the facts. At the time that you wrote the voucher  You
knew   how much the voucher should be based on the info that you had and that
Candy Torres stated to you.  The voucher is considered a contract. You stated that the
voucher terms were approved and that you where just waiting for inspection.
I need to speak to the  HUD manager  and I need the phone number and email to the
federal hud authority supervisors. I also need contact info for the main HUd phone
number and email.
Please call me to discuss this matter.

sincerely
Allan Rothstein.

From: ALLAN ◁                              ▷
Date: Thu, Oct 25, 2018, 3:02 PM
Subject: hud rules and facts
To: TSEYMOUR@SNVRHA.ORG <tseymour@snvrha.org>, allan rothstein ◁      ▯                    Candy Torres
                              ▷

**Greetings and Good
Afternoon:**

**Please see attached**

---

📄 CCF_000116.pdf
   118K

CT 4

From: ALLAN <                     ▷
Date: Tue, Oct 30, 2018, 10:05 AM
Subject: Candy Torres
To: Wayneisha Thomas <wthomas@snvrha.org>, allan rothstein          ▷, Candy Torres
                                  ▷

October 30, 2018 @ 10 am
                    **URGENT NOTICE**


Good morning Wayneisha. I have all the required forms completed and ready to turn
into your office for completion.
 of the Section 8 requirements. My client Candy Torres stated that she believes that
her appointment is scheduled for  about  Nov 8th. And then there still has to be a
inspection of the premises. I may not be able to hold the property for Candy for that
long of a period of time with out receiving rent.
Candy Torres is a single mom with four children to care for.
Her children will not have a home to live in and Candy Torres is
running out of money. So she and her four children will probably be living either
under the expressway or on the sidewalk.
She is also your client and as such your responsibility as well. Please ask the Section
eight manager to make an exception to see her and complete her voucher. In the
alternative please furnish me with your supervisors name and phone number . I need
to discuss this travesty with the manager. Time is oif the essence.
Sincerely,

Allan Rothstein
Real Estate Services and Property Management.

From: candy Torres <                              >
Date: Sun, Oct 28, 2018, 11:56 AM
Subject: Re: Letter: Identification of Property Manager
To: ALLAN <                              n>

On Sun, Oct 28, 2018, 11:56 AM candy Torres <                              > wrote:

On Oct 15, 2018 4:49 PM, "ALLAN" <                              > wrote:
Hi candy..........attached is the property management for 11893 Wedgebrook
please print out. for section 8. call allan

# EXHIBIT 17

Note "To Whom it May Concern"

TO WHOM IT MAY CONCERN |

    THIS LETTER IS NOTIFY YOU THAT I , CANDY TORRES ,FOUND THIS
PROPERTY .:11893 WEDGEBROOK ST. THROUGH AN INTERNET WEBSITE .I DID NOT
GO THROUGH A REALTOR
I CHOSE TO USE .ALLAN ROTHSTEIN ,A FRIEND RECOMMENDED HIM TO ME ,DUE
TO HE HAS A LOT OF EXPERIENCE WITH SOUTHERN NEVADA HOUSING AUTHORITY
CLIENTS

2/27/18

CANDY TORRES

ROTH00232

# EXHIBIT 18

Rent Receipt Agreement

WESTERN UNION V/# 17-835732917 APP FEE Not
REFUNDABLE $7.35.00
WESTERN UNION V#17-835732918 #1 835 73 2919
FAQUEST MONEY RETINDABLE.

## Rent Receipt Agreement

Date: 10-1-18 20___ Rent due for the month of FARMERS DR. 20___ Time: 12 ⁰⁴ pm

Landlord and Tenant/s fully understand and therefore freely agree and intend that the payment of the late fees and charges are additional rent and are not a Penalty and would reasonably compensate the Landlord/s for actual damages and expenses. Tenant understands that if landlord allows tenant/s to make a partial payment, tenant agrees that the balance due without demand must be paid in full within five days. Landlord/s shall not be required to start a new eviction notice if landlords agree to accept partial payments.

Property address or APN 11803 WESE B PECK

Payee X _____

Payee X _____ Print Name: Xiandy Torres

Tenant/s Phone number 702 _____ Four SS Number _____

Tenant/s Phone Number _____ Last four SS Number _____

ROTH0085

**EXHIBIT 19**

Deposition of Francisca Torres (excerpts)

1        DISTRICT COURT

2        CLARK COUNTY, NEVADA

3

4    CANDY TORRES, an individual,  )
                                   )
5         Plaintiff,               )
                                   )
6         vs.                      ) 2:19-cv-00594-APG-EJY
                                   )
7    ALLAN ROTHSTEIN and KYLE      )
     PUNTNEY, DOES I through X,    )
8    individuals, and ROES XI      )
     through XX Corporations and   )
9    Partnerships,                 )
                                   )
10        Defendants.              )
     ─────────────────────────────)
11                                 )
     KYLE PUNTNEY, an individual,  )
12                                 )
          Cross-Complainant,       )
13                                 )
          vs.                      )
14                                 )
     ALLAN ROTHSTEIN, an           )
15   individual; DOES I through X,)
     individuals, and ROES XI      )
16   through XX Corporations and   )
     Partnerships.                 )
17                                 )
          Cross-Defendants.        )
18   ─────────────────────────────)

19        INTERPRETED DEPOSITION OF FRANCISCA TORRES

20                    (Mother)

21           Taken at Foley & Oakes, P.C.
           on Thursday, February 20, 2020
22                  at 10:00 a.m.
     at 1210 South Valley View Boulevard, Suite 208
23              Las Vegas, Nevada 89102

24

25   Reported by:  Trina K. Sanchez, CCR No. 933, RPR

Case 2:19-cv-00594-APG-EJY  Document 68-5  Filed 04/17/20  Page 69 of 74

Francisca Torres (Mother)                    Candy Torres vs. Allen Rothstein and Kyle Puntney

```
 1    APPEARANCES:

 2    For the Plaintiffs:

 3
              GREGORY PAUL, ESQ.
 4            NEVADA LEGAL SERVICES
              530 South Sixth Street
 5            Las Vegas, Nevada 89101
              (702) 386-0404
 6

 7
      For Kyle Puntney:
 8

 9            DANIEL T. FOLEY, ESQ.
              FOLEY & OAKES, P.C.
10            1210 South Valley View Boulevard
              Suite 208
11            Las Vegas, Nevada 89102
              (702) 384-2070
12            dan@foleyoakes.com

13

14    For Allan Rothstein:

15

16            CJ BARNABI, ESQ.
              THE BARNABI LAW FIRM
17            375 East Warm Springs Road
              Suite 104
18            Las Vegas, Nevada 89119
              (702) 475-8903
19            CJ@Barnabilaw.com

20

21    Also present:  Kyle Puntney

22                    Candy Torres

23    Interpreter:  Marlene Monteolivo-Brewer

24

25
```

Francisca Torres (Mother)                    Candy Torres vs. Allen Rothstein and Kyle Puntney

```
 1                    I N D E X

 2   WITNESS:                              PAGE

 3   FRANCISCA TORRES

 4        Examination by Mr. Daniel Foley      4

 5        Examination by Mr. CJ Barnabi       63

 6

 7

 8

 9                  E X H I B I T S

10   EXHIBITS          DESCRIPTION          PAGE

11

12                  (None offered.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Francisca Torres (Mother)                     Candy Torres vs. Allen Rothstein and Kyle Puntney

1   LAS VEGAS, NEVADA, THURSDAY, FEBRUARY 20, 2020;
2                10:00 A.M.
3                  -O0o-
4
5   (In an off-the-record discussion held prior to the
6   commencement of the deposition proceedings, counsel
7   agreed to waive the court reporter requirements
8   under Rule 30(b)(4) of the Nevada Rules of Civil
9   Procedure.)
10
11  Whereupon,
12        MARLENE MONTEOLIVO-BREWER,
13  being called as an interpreter, was first duly sworn
14  to translate English to Spanish and Spanish to
15  English the testimony of the following witness:
16
17  Whereupon,
18        FRANCISCA TORRES,
19  having been first duly sworn to testify to the
20  truth, the whole truth and nothing but the truth,
21  was examined and testified as follows:
22
23          EXAMINATION
24  BY MR. FOLEY:
25     Q.   Please state and spell your full name for

Page 4

1     Q.   3203?
2     A.   A house.
3     Q.   Whose house?
4     A.   I don't know.
5     Q.   What -- has she lived in that house?  What
6   does she know about that house?
7     A.   Her?  Who -- who is "she"?
8     Q.   The deponent.
9     A.   Can you repeat the number, please?
10    Q.   3203.
11    A.   Used to be my house.
12    Q.   Did she own the house or rent?
13    A.   Owner.
14    Q.   Do you still own the house?
15    A.   No.
16    Q.   When did you sell the house?
17    A.   I don't remember.
18    Q.   Was it within the last two years?
19         OFFICE CLERK:  CJ Barnabi.
20         (Mr. Barnabi entered the room.)
21         MR. BARNABI:  Sorry.
22         THE WITNESS:  Before.
23  BY MR. FOLEY:
24    Q.   More than two years ago?
25    A.   Yes.

Page 6

1   the record.
2     A.   May I turn my cell phone off?
3     Q.   Please.
4     A.   Thank you.
5          Francisca Torres.
6     Q.   And how do you spell Francisca?
7     A.   F-R-A-N-C-I-C-A [sic], Francisca Torres,
8   T-O-R-R-E-S.
9     Q.   Okay.  You missed an "S" in there, but
10  it's okay.
11         What is your date of birth?
12    A.   11/28/58.
13    Q.   And what is your current residential
14  address?
15    A.   I don't know it by heart.  I live with my
16  sister.
17    Q.   Is it 3203 Kemp Street?
18    A.   No, no, no, no.
19    Q.   Do you recognize that 3203 Kemp Street
20  address?
21    A.   Which one?
22    Q.   Kemp Street.
23    A.   Yeah.  The street name, yes.
24    Q.   And what -- what is at that address?
25    A.   What is the number?

Page 5

1         MR. FOLEY:  Off the record for a second.
2         (A discussion was held off the record.)
3         THE WITNESS:  Should I look for the
4   address where I'm living now?
5   BY MR. FOLEY:
6     Q.   Yes.
7         MR. PAUL:  Are we back on the record?
8         MR. FOLEY:  Yes.  Let's go back.
9         THE WITNESS:  Okay.  Let me see.
10        THE INTERPRETER:  Counsel, may I remind
11  the deponent to respond only in Spanish?
12        MR. FOLEY:  Yes.
13        THE WITNESS:  Okay.  4917 Safari Light
14  Street, North Las Vegas, Nevada 89081.
15  BY MR. FOLEY:
16    Q.   Thank you.
17    A.   You're welcome.
18    Q.   Your sister, does she own that house?
19    A.   Her son-in-law.  Son-in-law's.
20    Q.   What is your -- your sister's son-in-law
21  owns the house?
22        THE INTERPRETER:  I'm sorry?
23  BY MR. FOLEY:
24    Q.   Is it your -- not your son-in-law, but
25  your sister's son-in-law that owns the house?

Page 7

Francisca Torres (Mother)                    Candy Torres vs. Allen Rothstein and Kyle Puntney

1  parts -- is that this happened, that Rothstein asked
2  Candy for sex prior to the time that she did any
3  work on the property?
4         MR. PAUL: Same objection.
5         THE WITNESS: I don't know that.
6  BY MR. FOLEY:
7     Q. Okay. Well, let me ask you this: From
8  your memory, was that the case, that prior to Candy
9  even doing any cleaning or painting, that it was
10 prior to that, that Mr. Rothstein asked her to have
11 sex?
12    A. What is it that you want to know
13 specifically? That if I know -- I don't understand
14 the question.
15    Q. Yes.
16       I understand that it's been a year and a
17 few months since then and that you didn't write
18 things down and memory can be difficult, but in
19 terms of the order of things, you have a very
20 specific recollection of all of the cleaning and the
21 carpeting work that was being done by Candy; right?
22    A. Yes. I realized that afterwards.
23    Q. And so my question is: Was it -- is it
24 your recollection as well that the request that was
25 made by Mr. Rothstein to Candy for sex was actually

Page 48

1  made before she actually did any work on the
2  property?
3         MR. PAUL: Objection. Asked and answered.
4  Foundation.
5         THE WITNESS: I don't know that.
6  BY MR. FOLEY:
7     Q. So I'm just going to take one more run at
8  this. You were very upset and you were very
9  emotional a few minutes ago talking about the work
10 that was being done at the house and how filthy the
11 house was. And very emotional, I'm sure, about
12 Mr. Rothstein asking your daughter for sex.
13       I'm just trying to understand if these two
14 significant things occurred at or about the same
15 time and, in fact, if the request for sex came
16 before the clean up.
17    A. The problem that I noticed, it was at the
18 beginning about the problem with the carpet, that he
19 wouldn't pay for the carpet, that he wouldn't pay
20 for the cleaning, for any of the things. And I was
21 angry. And I was saying, How come he doesn't pay
22 for this? How come? How come? That's how I
23 started to notice that they were having problems,
24 she was having problems with that person, with that
25 man. And afterwards is when she told me about the

Page 49

1  thing about sex.
2     Q. Okay. How long afterwards? Right at the
3  same time when she was having these problems that,
4  He won't fix this, he won't fix this, he won't fix
5  that, and this horrible person asked me for sex?
6     A. First, she would say that to me. She
7  would tell me in conversation, you know, that
8  everything was happening like that. And this is
9  when I would come out and see the children. Then
10 she would tell me that he was charging her for
11 electricity, for water, more for rent, for
12 everything. Things that didn't make any sense to
13 me.
14       Every week or every month, I was supposed
15 to bring him more money and more money. And I'm
16 telling her, Listen -- sometimes I had to give her
17 so that man wouldn't be bugging her and for him to
18 leave her alone. Please, at least for a month.
19    Q. And then when did she tell you about him
20 asking for sex?
21    A. I'm thinking that it was somewhere between
22 three and five months after she moved in. I don't
23 want to say that this is exactly. I don't remember
24 any dates. I don't want to give you any dates
25 because I don't remember exactly, but it was

Page 50

1  somewhere between four or five months after she
2  moved in.
3     Q. Okay. When she told you that
4  Mr. Rothstein had asked her for sex, was there
5  anybody else present?
6     A. No.
7     Q. Do you know if she ever told Francisca or
8  Stewart about the request for sex?
9         MR. PAUL: Objection. Foundation.
10        THE WITNESS: I don't know. I don't know.
11 BY MR. FOLEY:
12    Q. Okay. Do you know if she ever told her
13 husband?
14    A. I don't know.
15    Q. Do you know a Mr. Oscar DeLeon who was a
16 coworker of Candy's?
17    A. No.
18    Q. Did Candy -- if I could have Exhibit 35,
19 please. And we'll go to the very end of that to the
20 sex form.
21        MR. PAUL: Are you done with that Exhibit?
22        MR. FOLEY: I am.
23        MR. PAUL: I'll take that back.
24 BY MR. FOLEY:
25    Q. This is a document that is signed on the

Page 51

Francisca Torres (Mother)                    Candy Torres vs. Allen Rothstein and Kyle Puntney

1 second page by Mr. Rothstein and by Candy.
2     Can you look at the second page? Do you
3 recognize Candy's signature? Just the second page
4 here. Page No. 464.
5     A. If I recognize the signatures?
6     Q. Yes.
7     A. I know that this one is hers.
8     Q. Okay. Now, I'm not going to read this
9 whole form, but the title of it is "Direct Consent
10 for Sexual Intercourse and/or Fellatio or
11 Cunnilingus." Fellatio means blow job, oral sex.
12 Cunnilingus means oral sex, man on a woman.
13     Did Candy ever tell you that Mr. Rothstein
14 had asked her to sign a document like this?
15     A. Yes.
16     Q. Did she ever show you this document?
17     A. No.
18     Q. When did she tell you that he had asked
19 her to sign this document?
20     A. Approximately about that time.
21     Q. What time?
22     A. When she told me that he was asking her
23 for it.
24     Q. Okay. So this document is dated on the
25 second page of November 23rd, 2018.

Page 52

1     A. No. Well, when she moved in. There
2 should be a date where Section 8 approved it. Well,
3 we used to call him "the owner" because we didn't
4 know anything about him. The date when he asked
5 her -- he told her that she had been approved and
6 that she could move in.
7     Q. Okay. Do you know if she moved in prior
8 to the time that she signed this lease agreement?
9 You can look at the first page of that.
10     THE INTERPRETER: I'm sorry. Can you
11 repeat?
12 BY MR. FOLEY:
13     Q. Do you know if she moved in prior to the
14 time that she signed this lease agreement?
15     MR. PAUL: Objection. Foundation.
16     THE WITNESS: No. I don't know. I just
17 don't know.
18     MR. FOLEY: Okay. Let's take a break.
19     (A short break was taken.)
20 BY MR. FOLEY:
21     Q. You're still under oath.
22     A. Yes.
23     Q. Okay. Did Candy -- I don't know if I
24 asked you this -- did she show you this document?
25     A. No.

Page 54

1     And so do you think it was four or five
2 months after that date, after November of '18 that
3 she first told you about this document and the
4 request for sex?
5     A. From the date when she moved in?
6     Q. Yes.
7     A. I'm thinking that it must have been
8 probably some five months, four months. And I
9 remember when I came out, that she would be crying
10 and she was depressed. She was stressed out. She
11 was complaining that she was losing her hair. She
12 was all depressed, letting herself go.
13     Q. Okay.
14     A. That's when I asked her, Honey, what's
15 going on? What's happening here?
16     Q. Okay.
17     A. And that's when she told me about the sex
18 thing. So I was in shock because I had never seen
19 such a thing before.
20     Q. Let me ask you this: We see the date on
21 that document. When was it that you recall that
22 Candy moved into the house?
23     A. As soon as the gentleman told her that
24 they had approved the application.
25     Q. Do you remember when that was?

Page 53

1     Q. Did she tell you she had signed that
2 document?
3     A. No.
4     Q. Okay. She just told you that he had given
5 her a document like this?
6     A. Yes.
7     Q. Did your grandson, Luis, or anyone else
8 tell you about an incident where Candy threw a rock
9 at Armando Rivas' pickup truck windshield and broke
10 it?
11     A. Can you repeat the question, please?
12     Q. Did you ever hear about an incident at the
13 Wedgebrook house where Candy threw a rock into
14 Armando's windshield?
15     A. That if I ever heard -- ask me the
16 question. I can't concentrate now.
17     Q. Okay. Candy testified in deposition that
18 she -- when she was at the Wedgebrook house and
19 Armando's car was -- or truck was in the driveway,
20 she threw a rock into the windshield and broke it.
21     THE INTERPRETER: The name of the Brook --
22 the name of the street? Sorry.
23     MR. FOLEY: Wedgebrook.
24     THE INTERPRETER: Thank you.
25 ///

Page 55

Francisca Torres (Mother)                                                Candy Torres vs. Allen Rothstein and Kyle Puntney

1  MR. PAUL: Objection. Vague.

2  THE WITNESS: Believe me. I'm telling you

3  that if I had known how far this situation was going

4  to go, I would have written down dates, months,

5  times, years. That's why I'm answering to the best

6  of my ability. I can't give you an exact date

7  because then I would be lying to you.

8  BY MR. BARNABI:

9  Q.  Okay. But it's your understanding that

10  when she was at Mr. Rothstein's house on those -- at

11  those times, that the conversation between the both

12  of them was, I guess you could say, extremely

13  contentious?

14  MR. PAUL: Objection. Form.

15  THE WITNESS: I don't know. I don't know

16  because I wasn't there.

17  BY MR. BARNABI:

18  Q.  Okay. You previously testified that you

19  helped out Candy take care of her children because

20  you were requested to by CPS; is that correct?

21  A.  That's right.

22  Q.  And you also testified that you were aware

23  of multiple instances where either S.W.A.T. or the

24  police had been called out to the Wedgebrook

25  property; is that correct?

Page 68

1  BY MR. BARNABI:

2  Q.  Okay. About Candy, how would you describe

3  her? Is she, you know -- is she tough? Is she kind

4  of overly sensitive? Could you describe her, how

5  she is?

6  MR. PAUL: Objection. Form. Vague.

7  Foundation.

8  THE WITNESS: She is very tough. She

9  takes a lot.

10  MR. BARNABI: Okay. I'm done.

11  MR. FOLEY: Nothing further.

12  MR. PAUL: Okay. Off the record.

13  MADAM REPORTER: On the stenographic

14  record, would any party like a copy of the

15  transcript?

16  MR. FOLEY: I do.

17  MR. BARNABI: Same.

18  MR. PAUL: Do you have a card? I'll get

19  back to you.

20  (The deposition concluded at 12:53 p.m.)

21

22

23

24

25

Page 70

1  MR. PAUL: Objection. Misstates

2  testimony.

3  THE WITNESS: I know they came out, but I

4  didn't see them.

5  BY MR. BARNABI:

6  Q.  Okay. And you have -- well, strike that.

7  And Candy also has five children that she

8  cares for; is that correct?

9  A.  Yes.

10  Q.  Okay. So do you believe that because of

11  the involvement of CPS, the police, S.W.A.T., or

12  caring for five children, that she could also be

13  stressed from the -- from those different events?

14  MR. PAUL: Objection. Foundation. Form.

15  THE WITNESS: What is your exact question?

16  What is it that you want to know?

17  BY MR. BARNABI:

18  Q.  Do you believe that having the police

19  involved with Candy's home life, the S.W.A.T. being

20  called out to the Wedgebrook property, and caring

21  for five children could be stressful?

22  MR. PAUL: Same objections.

23  THE WITNESS: I don't know. You need to

24  ask her how she was feeling.

25  ///

Page 69

1  REPORTER'S CERTIFICATE

2  STATE OF NEVADA  )
                      ) ss.
3  COUNTY OF CLARK  )

4  I, Trina K. Sanchez, a duly certified

5  court reporter licensed in and for the State of
   Nevada, do hereby certify:

6  That I reported the taking of the
7  deposition of the witness, FRANCISCA TORRES, at the
   time and place aforesaid;

8  That prior to being examined, the witness
9  was by me duly sworn to testify to the truth, the
   whole truth, and nothing but the truth;

10  That I thereafter transcribed my shorthand
11  notes into typewriting and that the typewritten
    transcript of said deposition is a complete, true
    and accurate record of testimony provided by the
12  witness at said time to the best of my ability;

13  I further certify (1) that I am not a
    relative, employee of independent contractor of
14  counsel or of any of the parties; nor a relative,
    employee or independent contractor of the parties
15  involved in said action; nor a person financially
    interested in the action; nor do I have any other
16  relationship with any of the parties or with counsel
    of any of the parties involved in the action that
17  may reasonably cause my impartiality to be
    questioned; and (2) that transcript review pursuant
    to NRCP 30(e) was not requested.

18

19  IN WITNESS WHEREOF, I have hereunto set my
    hand in the County of Clark, State of Nevada, this
20  1st day of March, 2020.

21

22

23  TRINA K. SANCHEZ, RPR, CCR NO. 933

24

25

Page 71