UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CANDY TORRES,

          Plaintiff,

v.

ALLAN ROTHSTEIN and KYLE PUNTNEY,

          Defendants.

Case No. 2:19-cv-00594-APG-EJY

**ORDER**

Presently before the Court are Defendant Allan Rothstein's ("Rothstein") Amended Motion to Strike or Quash Subpoenas and Protective Order (ECF No. 53) and Plaintiff's Motion for Order Directing Defendant Allan Rothstein to Set Date for Inspection and Copying Materials Pursuant to Discovery Agreement (ECF No. 71), which is construed as a Motion to Compel. After the Clerk's Office advised Rothstein that a separate document must be filed for each type of relief requested, Rothstein separated his Amended Motion to Strike or Quash Subpoenas and Protective Order from his Amended Motion for Protective Order.[1] Now ECF Nos. 53 and 55.

The Court has considered Plaintiff's Response to Rothstein's Amended Motion to Strike or Quash Subpoenas (ECF No. 56), and Rothstein's Reply in Support of Amended Motion to Strike or Quash Subpoenas (ECF No. 59). The Court is also in receipt of Plaintiff's Response to Amended Motion for Protective Order (ECF No. 58), and Rothstein's Reply in Support of Amended Motion for Protective Order. ECF No. 60. No opposition was filed in response to Plaintiff's Motion to Compel. The Court finds as follows.

**BACKGROUND**

Plaintiff Candy Torres alleges Defendant Puntney, her former landlord, and Rothstein, Puntney's property manager, violated the federal Fair Housing Act ("FHA") and related Nevada Revised Statutes. ECF No. 1. Torres and her five children, who were previously homeless, were approved for a Housing Choice Voucher ("HCV") by Las Vegas's public housing authority. *Id*. ¶

---

[1] Defendant Kyle Puntney ("Puntney") did not join either of Rothstein's Motions.

8.   An HCV voucher is subject to Housing and Urban Development ("HUD") regulations, a standardized housing assistance payments ("HAP") contract, and a HUD tenancy addendum to the lease.  *Id*. ¶¶ 11, 13-14.  The HAP contract not only requires the landlord to credit the tenant for the amount of her subsidy, but also forbids the owner from "discriminat[ing] against any person because of race, color, religion, sex, national origin, age, familial status or disability in connection with the lease" in accordance with applicable equal opportunity statutes, Executive Orders, and regulations."  *Id*. ¶ 17; *see also id*. ¶ 15.

Plaintiff claims Rothstein solicited her for sex, charged her unlawful fees and fines, and filed wrongful eviction notices against her that were dismissed only after Nevada Legal Services intervened on her behalf.  *Id*. ¶¶ 18, 26-29.  Plaintiff also claims Rothstein coerced her into signing an agreement titled "Direct Consent for Sexual Intercourse and/or Fellatio or Cunnilingus" as a prerequisite to move into the rental property.  *Id*. ¶¶ 23-25.

At present, Rothstein seeks to strike or quash document subpoenas addressed to three third parties.  ECF No. 53.  To that end, Rothstein asks the Court to issue a protective order barring the subpoenaed information from being disclosed.  ECF No. 55.  The first document subpoena served on June Rothstein, Rothstein's ex-wife, requests a "complete copy of any and all records regarding or concerning Allan Rothstein's real estate business, banking records, or tax records for the period since January 1, 2018."  ECF No. 56 at 8 (internal citation and quotation marks omitted).  The second document subpoena addressed to Mark Rothstein, Rothstein's son, seeks:

> for any trust for which Allan Rothstein . . . is the settlor, trustee[,] or beneficiary, including without limitation those trusts identified in Rothstein's deposition as the "Mexican Gold and Oil Exploration Trust" and the "Rothstein 1994 Trust":
>
> 1.   A complete copy of each trust agreement, and any amendments thereto.
> 2.   Any document, report[,] or accounting, dated, created, received, or transmitted at any time since January 1, 2017, reflecting the value of the assets held in the trust.
> 3.   Any document, report[,] or accounting, dated, created, received, or transmitted at any time since January 1, 2017, reflecting the transfer of assets held in the trust.
> 4.   Any bank statement, report[,] or accounting, dated, created, received, or transmitted at any time since January 1, 2017, reflecting the disbursement of funds from the trust.

*Id.* at 8-9 (internal citation omitted).  The subpoena also seeks "a complete copy of any net worth or financial statement reflecting Rothstein's net worth at any time since January 1, 2018, including any financial statement or disclosure submitted to any financial instruction [sic] for any purpose."  *Id.* at 9 (internal citation and quotation marks omitted).  The final document subpoena, directed to JP Morgan Chase Bank, reads:

> for each JP Morgan Chase account owned, held, assigned, or controlled (signing authority) by Allan Rothstein . . . – including but not limited to Account Number: *xxxxxx*2606 – a complete copy of the following records for the period since January 1, 2018:
> - Monthly statements for each account;
> - End of year statements for each account;
> - Checks written on each account;
> - Withdraws from each account; and,
> - Deposits in each account.

*Id.* (internal citation omitted).  Plaintiff's counsel submitted a declaration stating that Mark and June Rothstein did not object to the subpoenas.  ECF No. 56-1 at 1 ¶ 6.  Rothstein does not challenge these assertions, yet also maintains he filed the Amended Motion to Strike or Quash Subpoenas and Protective Order on Mark and June Rothstein's behalf.[2]  ECF No. 59 at 3 ¶ 2.  JP Morgan Chase Bank did not object to its subpoena.  Instead, the bank advised Plaintiff that it stopped processing its document production after receiving a copy of Rothstein's motion to quash.  ECF No. 56-1 at 104.

In her Motion to Compel, Plaintiff seeks an order requiring Rothstein to provide dates, times, and locations for the inspection and copying of materials responsive to Torres's requests for production numbers 7, 8, and 9, which state:

> 7.     Please produce any document reflecting the ownership, operation or management of the subject dwelling during the period since January 1, 2015.
> 8.     Please produce a complete copy of any tenant file maintained by any defendant regarding the rental of any dwelling in Nevada at any time since January 1, 2015.
> 9.     Please produce any document reflecting the identify of any person who rented or occupied a dwelling in Nevada owned, operated[,] or managed by any defendant at any time since January 1, 2015, including, for example:
> - Rent receipts,
> - Tenant rosters,
> - Tenant records,
> - Communications.

ECF No. 72-2 at 9-10.

---

[2]     Rothstein's counsel withdrew after filing the Amended Motion to Strike or Quash Subpoenas and Amended Motion for Protective Order.  ECF No. 66.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**I.      Rothstein's Amended Motion to Strike or Quash Subpoenas (ECF No. 53) is denied.**

      A.      *The subpoenas are procedurally valid.*

Fed. R. Civ. P. 45(b)(1) states that if a "subpoena requires that person's attendance," the issuing party must "tender[] the fees for 1 day's attendance and the mileage allowed by law."  Rule 45(d)(2)(A) clarifies this Rule when it states that "[a] person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial."  In *Union Pac. R.R. Co. v. Advance Polybag (Nevada), Inc.*, the District of Nevada affirmed that "Rule 45(b)(1) requires the tendering of fees for a subpoena requiring 'attendance,' . . . so courts generally do not apply that requirement to a subpoena seeking the production of documents."  Case No. 2:17-cv-02077-RFB-NJK, 2018 WL 4279212, at *2 (D. Nev. May 4, 2018) (internal citation omitted).

Despite the clarity of the law, Rothstein maintains the subpoenas directed to Mark and June Rothstein are defective because neither individual was simultaneously served with witness and mileage fees pursuant to Rule 45.  ECF No. 53 at 7.  Rothstein argues the "subpoenas make no mention that Mark and June were not commanded to appear . . . .  Plaintiff's counsel could have mentioned that the subpoena could have been fulfilled by other means, which would improve their argument – but didn't."  ECF No. 59 at 7.  However, a subpoenaed party need not appear at the place of production or inspection unless commanded to appear for a deposition, hearing, or trial.  Fed. R. Civ. P. 45(d)(2)(A).  And, in this case, the second page of each subpoena states, in pertinent part, that no appearance is required.  ECF No. 53 at 25, 41.  While Rothstein cites to *CF & I Steel Corp. v. Mitsui & Co. Inc. (U.S.A.)*, 713 F.2d 494 (9th Cir. 1983), for the proposition that "Rule 45(c) requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena," Rothstein neglects to mention that the subpoenas in the *Mitsui* matter "required Movants to appear . . . in San Francisco for a deposition[.]"  *Id*. at 495.[3]  This

---

[3]      The Advisory Committee on Rules amended Fed. R. Civ. P. 45 more than five times since the *Mitsui* decision.  The section of the Rule to which the *Mitsui* decision cites no longer contains the language referenced therein.  And, the "Ninth Circuit has long made clear that Rule 45 requires that the payment be tendered simultaneously with the delivery

distinction is critical because Mark and June Rothstein are not required to appear for a deposition, hearing, or trial, and, therefore, Plaintiff did not have to simultaneously tender witness and mileage fees upon service.

> B.   *Rothstein lacks standing to strike or quash the third-party subpoenas.*

Turning to the substance of the subpoenas, "[i]t is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)." *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, Case No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011) (collecting cases). Rule 26(b)(1) defines relevance broadly and permits:

> [p]arties . . . to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The party moving to quash a subpoena bears the burden of showing why a discovery request should be denied. *Painters Joint Comm.*, 2011 WL 4573349, at *5 (internal citation omitted). "As a general rule, a party has no standing to seek to quash a subpoena issued to a non-party to the action. . . . Nonetheless, some courts have found that a party has standing to move to quash subpoenas where the party has some personal right or privilege in the documents sought." *Wells Fargo Bank, N.A. v. Iny*, Case No. 2:13-cv-01561-MMD-NJK, 2014 WL 1796216, at *1 (D. Nev. May 6, 2014) (internal citations and quotation marks omitted). However, objections based on relevance and undue burden on third parties do not constitute the objecting party's personal right or privilege "especially where the non-party . . . has not objected." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *4 (D. Nev. Jan. 9, 2007) (internal citation omitted).

Plaintiff argues that neither June nor Mark Rothstein objected to the subpoenas.   ECF No. 56-1 at 1 ¶ 6.  Rothstein does not refute this point; instead, he claims his counsel notified Plaintiff's

---

of the subpoena" only when a party subpoenas a non-party to appear.  *Aevoe Corp. v. AE Tech Co., Ltd.*, Case No. 2:12-cv-00053-GMN-NJK, 2013 WL 4714273, at *1 (D. Nev. Aug. 30, 2013), *citing Mitsui*, 713 F.2d at 496.

counsel of his representation of June and Mark Rothstein in this action, and that he filed the instant Amended Motion to Strike or Quash Subpoenas on their behalf.  ECF No. 59 at 3 ¶ 2.  It is unclear to the Court how this creates standing for Rothstein.  Further, JP Morgan Chase Bank has not objected to its subpoena, but, rather, advised Plaintiff's counsel that it stopped processing its document production after receiving a copy of Rothstein's motion to quash.[4]  ECF No. 56-1 at 104. Rothstein therefore lacks standing to contest the subpoenas because his objections based on relevance and undue burden on the non-parties do not establish his own personal right or privilege over the requested documents.  *G.K. Las Vegas Ltd. P'ship*, 2007 WL 119148, at *4.  The fact none of these third parties objected to the subpoenas further diminishes Rothstein's arguments in support of granting his motion to quash.  *Id*.[5]  Accordingly, Rothstein's Amended Motion to Strike or Quash Subpoenas is denied.

## II.   Rothstein's Amended Motion for Protective Order (ECF No. 55) is denied.

"A party can . . . move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information."  *Id*. at *3 (internal citations omitted).  In turn, Rule 26(c) permits courts to issue a protective order upon a showing of good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  This "burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery."  *Wells Fargo Bank*, 2014 WL 1796216, at *3 (internal citation and quotation marks

---

[4]      Courts elsewhere have reached different conclusions on whether a defendant has a personal right or privilege in his banking records sufficient to invoke standing to move to quash a subpoena issued to his bank.  *Compare United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007) ("Typically, a party has no standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right.") (internal citations omitted) *with Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (movant retained a sufficient "personal right" in its bank records for standing). The Court has not found clear guidance from the Ninth Circuit on this issue.  However, even if Rothstein does have standing, the Court would not quash the subpoenas directed to his bank because his "privacy concerns can be mitigated by subjecting the banking records to a stipulated protective order that limits the use of documents and the people with access to them."  *Wells Fargo Bank*, 2014 WL 1796216, at *3 (internal citation omitted).  Indeed, the parties stipulated to a protective order (ECF No. 49), which the Court finds sufficient to allay Rothstein's privacy concerns.

[5]      Rothstein does not address whether the personal right or privilege exception applies to the third party subpoenas in his briefs.  The Court considers only well developed arguments presented and will not search for arguments that may be camouflaged in the briefing.  *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

omitted).   The moving party can satisfy its burden by showing that the discovery requested is irrelevant, overly broad, burdensome or oppressive.   *Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, Case No. 2:15-cv-1228-RFB-GWF, 2018 WL 10323384, at *1 (D. Nev. Apr. 20, 2018).   The law confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."   *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (internal citation and quotation marks omitted). Rothstein argues a protective order should issue barring the third-party subpoenas because they are irrelevant and unduly burdensome.[6]   ECF No. 55 at 8.   Rothstein's contentions are without merit.

    1.     The subpoenas seek relevant information.

    The FHA authorizes an award of punitive damages.   42 U.S.C. § 3613(c)(1).   And, "[a] defendant's financial condition is relevant to the pursuit of punitive damages."   *Allstate Ins. Co. v. Nassiri*, Case No. 2:08-CV-00369-PMP, 2011 WL 318101, at *3 (D. Nev. Jan. 21, 2011) (internal citation and quotation marks omitted).   However, "[t]he Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged." *E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 394 (E.D. Cal. 2009).   The majority approach holds "that a plaintiff is not required to make a *prima facie* showing of merit on its punitive damages claim before permitting discovery of a defendant's net worth."   *Searcy v. Esurance Ins. Co.*, Case No. 2:15-cv-00047-APG-NJK, 2015 WL 9216573, at *1 (D. Nev. Dec. 16, 2015).   The District of Nevada endorses this approach:

> Most courts do not require the plaintiff to make a prima facie showing of merit on its punitive damage claim before permitting discovery of a defendant's net worth. . . . Although only the defendant's current financial condition is relevant to the issue of punitive damages, the courts permit some retrospective discovery regarding the defendants' financial affairs.

*Allstate Ins. Co.*, 2011 WL 318101, at *3 (internal citation omitted); *see also id*. at *4 (collecting cases finding financial records over approximately the past two years are sufficient to establish a defendant's current net worth).   The subpoenas addressed to June Rothstein and JP Morgan Chase

---

[6]     Rothstein also contends the third-party subpoenas harass him and his family members, and are not calculated to further Plaintiff's claims.   ECF No. 55 at 8.   Defendant does not provide any legal analysis to support these contentions. Further, these allegations are sufficiently addressed in the sections of this Order discussing Rothstein's undue burden and relevance arguments, respectively.

1   Bank request financial information spanning the previous two years, which are sufficient to establish

2   Rothstein's net worth.  ECF No. 56 at 8-9.  Thus, these subpoenas do not seek information beyond

3   that which is necessary to establish Rothstein's net worth.

4         Rothstein argues Plaintiff cannot establish a *prima facie* case for punitive damages because

5   she waived any claims she may have had against him by signing the lease and hold harmless

6   agreements.  ECF No. 55 at 13.[7]  This argument is meritless.  As a preliminary matter, Plaintiff did

7   not waive any claims for punitive damages by signing the lease and hold harmless agreements.

8   "[G]eneral clauses exempting the defendant from all liability for negligence will not be construed to

9   include intentional or reckless misconduct, or extreme and unusual kinds of negligence, unless such

10  intention clearly appears."  Restatement (Second) of Torts § 496B, cmt. d (1965).  Applying this

11  principle to the contract provisions at bar, it is evident the general lease and hold harmless

12  agreements cannot cover intentional torts committed by the owner or property manager against the

13  tenant.

14        In addition, the cited portions of the agreements do not make clear whether Plaintiff waived

15  any claims she may have arising out of the terms of the rental, as opposed to the physical conditions

16  of or accidents on the premises.  Under Nevada law, where a contract term is ambiguous, as here,

17  the provision is "construed most strongly against the authoring party."  *Mullis v. Nev. Nat. Bank*,

18  654 P.2d 533, 535 (Nev. 1982) (internal citation omitted).  As Plaintiff correctly states, Rothstein

19  drafted the lease and hold harmless agreements, "and reading the contract to preclude Torres from

20  bringing claims of intentional discrimination against Rothstein would be a harsh and unreasonable

---

[7]  The relevant portions of the lease agreement and hold harmless agreements state, respectively:  "TENANTS WAIVE ALL RIGHTS, AND HOLD OWNER & PROPERTY MANAGER HARMLESS FOR ALL INJURIES OR ACCIDENTS OCCURING ON OR NEAR PREMISES," and

    7.    Buyer/Tenant agrees to hold Broker, Agent, and any employee, officer or other agent of Broker who may be involved in the transaction ("Indemnitees"), harmless for any and all liability as to the location, physical, and aesthetic condition, use, value and conditions affecting the property, and to release Indemnitees from liability for same.  Buyer/Tenant further agrees to hold Indemnitees harmless for the cost of any defense which may result from the transaction.

    8.    Buyer/Tenant understands the nature of this Agreement is a hold harmless agreement and release of liability.

*Id*. at 78, 80.

result disfavored by the law."  ECF No. 58 at 20, *citing Dickenson v. State, Dept. of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994) ("[a]n interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract") (internal citation omitted).  Based on the foregoing, the Court finds the lease and hold harmless agreements ambiguous and interprets the provisions in Plaintiff's favor.

Moreover, Plaintiff is entitled to seek discovery of Rothstein's net worth without first evidencing a *prima facie* punitive damages claim.  Contrary to Nevada law, here, Plaintiff seeks punitive damages under the FHA only (ECF No. 1 at 13 ¶ 3), a fact Rothstein does not contest.  ECF No. 55 at 4 ¶ 13 (the FHA is "the only statute by which Plaintiff is seeking punitive damages").  An award of punitive damages under the FHA is governed by federal law.  *Burnett v. Grattan*, 468 U.S. 42, 55 n.18 (1984) (when a federal statute provides a remedy, the scope of the remedy is interpreted in accordance with federal law).

Rothstein's citations to cases from federal district courts other than the District of Nevada holding that "information related to punitive damages is not automatically discoverable" is neither binding nor compelling.  ECF No. 60 at 6-9.  Three of the cited cases discuss choice of law issues between state statutes and the federal rules setting forth pleading requirements for punitive damages claims.  *Wilson v. Gillis Advertising, Co.*, 145 F.R.D. 578 (N.D. Ala. 1993); *State of Wis. Inv. Bd. v. Plantation Square Assocs., Ltd.*, 761 F. Supp. 1569 (S.D. Fla. 1991); *Davis v. Ross*, 107 F.R.D. 326 (S.D.N.Y 1985).[8]  Again, Plaintiff brings her punitive damages claim under the federal FHA only.  ECF No. 1 at 13 ¶ 3.  Therefore, there is no conflicting state law regarding punitive damages that the Court must reconcile before permitting discovery.

Plaintiff also argues that the subpoenaed documents concerning Rothstein's trusts are relevant for impeachment purposes and to determine Rothstein's net worth for her punitive damages claim.  ECF No. 58 at 17-18.  Specifically, Plaintiff argues "Rothstein's treatment of other tenants is necessary to refute his defenses:  That he never engaged in harassment, that he never had tenants

---

[8]     The exception is *Rupe v. Fourman*, where the Southern District of Ohio found "discovery on punitive damages unnecessary at this point in the litigation," although the plaintiff had alleged violations of federal civil rights and fair housing laws and Ohio law.  532 F. Supp. 344, 350-51 (S.D. Ohio 1981).

1    or prospective tenants come to his personal home, that he did not charge unlawful or excessive fees,

2    among others." *Id*. at 18.

3          In contrast, Rothstein claims the subpoenaed documents are irrelevant to identifying other

4    dwellings he rented during the relevant period because "no rental agreements were requested in the

5    name of the trusts." ECF No. 60 at 10 (internal citation omitted). This argument is without merit

6    because the subpoenas request, *inter alia*, "[a] complete copy of each trust agreement" and "[a]ny

7    document, report[,] or accounting, dated, created, received, or transmitted at any time since January

8    1, 2017, reflecting the value" and "transfer of assets held in the trust." ECF No. 56 at 8-9 (internal

9    citation omitted). Even if the subpoenas do not specifically request rental agreements in the trusts'

10   name, it is clear such rental agreements are covered in Plaintiff's document requests. In addition,

11   this information is relevant to determining Rothstein's net worth for Plaintiff's punitive damages

12   claim. *Chudacoff v. Univ. Med. Ctr.*, Case No. 2:08-cv-00863-RCJ, 2013 WL 438112, at *4 (D.

13   Nev. Feb. 1, 2013) (citing *S. Cal. Hous. Rights Ctr.*, 2006 WL 4122148, at *3).

14         Finally, Rothstein implies that these documents are not as critical to this case as Plaintiff

15   suggests because she requested these documents in the first round of written discovery "several

16   months ago." ECF No. 60 at 10. However, Rothstein refused to provide net worth information

17   during discovery, standing on discovery objections through a meet and confer between the parties.

18   ECF No. 58-1 at 125, 146.

19         In sum, Rothstein's arguments regarding relevancy do not carry the day. Relevance is a

20   broad concept and must be considered alongside proportionality of the requested information to the

21   needs of the case. *Strohmeyer v. Belanger*, Case No. 3:14-cv-00661-RCJ-WGC, 2019 WL 4060894,

22   at *4 (D. Nev. Aug. 28, 2019). The Court has examined the proportionality of the subpoenaed

23   information in light of six factors: "the importance of the issues at stake in the action, the amount

24   in controversy, the parties' relative access to relevant information, the parties' resources, the

25   importance of the discovery in resolving the issues, and whether the burden or expense of the

26   proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Considering the above,

27   the undersigned not only finds the information sought through Plaintiff's third-party subpoenas

28   relevant to this dispute, but also proportional to the needs of the case.

2.    *Rothstein fails to show that the third-party subpoenas are unduly burdensome.*

"A party claiming undue burden or expense ordinarily has far better information – perhaps the only information – with respect to that part of the determination."  Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes (2015).  "As a result, it has long been clear that a party claiming that discovery imposes an undue burden must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.  . . . Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient."  *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (internal citations and quotation marks omitted).  For example, "boilerplate objections such as 'overly burdensome and harassing' are improper."  *Caesars Ent. Operating Co., Inc. v. Emarker, LLC*, Case No. 2:15-cv-02214-JAD-VCF, 2016 WL 8732305, at *2 (D. Nev. July 1, 2016) (internal citation and quotation marks omitted).

Rothstein fails to support his undue burden argument with specific facts and instead raises a generalized privacy concern over his financial information.  ECF No. 60 at 5.  In doing so, Rothstein cites to a Ninth Circuit decision for the proposition that "financial information, which is confidential, satisfies the 'good cause' standard of the Federal Rules of Civil Procedure 26(c), to justify documents' exclusion from evidence and warrant a protective order."  *Id.*, *citing Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).  This argument is unpersuasive.

Although *Foltz* recognizes that financial information may constitute protected information, the court found the objecting party "failed to meet the burden imposed by Rule 26(c) of making a 'particular showing' of good cause, nor has it alleged '*specific* prejudice or harm now.'"  *Id.* (internal citation omitted) (emphasis in original).  Rothstein similarly complains of a general intrusion on his privacy interest, which is insufficient to demonstrate specific harm or prejudice that would result from discovery.  ECF No. 60 at 5.  Moreover, the court in *Foltz* did not prohibit discovery into a defendant's financial information altogether but remanded the issue to the district court with instructions to make a relevance determination, acknowledging that "[a]ny . . . financial information . . . can be protected by placing the Private Intervenors under the same use and disclosure restrictions

contained in the original protective order." 331 F.3d at 1134.  Here, the parties have an operative protective order in place.  ECF No. 49.

Rothstein's failure to identify specific harm or prejudice, together with the operative protective order that should protect Rothstein from his general concerns, renders his unduly burdensome argument insufficient to warrant quashing the subpoenas at issue.

### III.    Plaintiff's Motion to Compel (ECF No. 71) is granted.

Fed. R. Civ. P. 37(a)(1) requires that a motion to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer" with the non-responsive party. *See also* United States District Court for the District of Nevada Local Rule 26-6(c). Here, Plaintiff explains:

> Rothstein agreed to make available responsive materials [to Plaintiff's requests for production numbers 7, 8, and 9] for inspection and copying by Torres, but only if Torres bore the expense of the production.  Rothstein agreed to this compromise in writing, reaffirmed the agreement in writing, and has never repudiated that agreement.  But neither [defense counsel] nor Rothstein provided Torres with a date on which to conduct that inspection and copying.

ECF No. 72 at 4.  Rothstein, apparently recognizing his prior position, did not file an opposition to Plaintiff's Motion to Compel.  The Court treats this as consent to the Court granting Plaintiff's Motion.  LR 7-2(d); *Renfrow v. Redwood Fire and Cas. Ins. Co.*, Case No. 2:12-cv-00632-MMD-VCF, 2013 WL 2369803, at *3 (D. Nev. May 29, 2013).

### IV.    Sanctions are unwarranted.

Rothstein argues sanctions should be imposed on Plaintiff's attorney for two reasons.  First, Rothstein asks the Court to impose Rule 45(d)(1) sanctions on Plaintiff's counsel because the third-party subpoenas are irrelevant and subject their recipients to undue burden and expense.  ECF No. 53 at 10-11.  Second, Rothstein requests "appropriate sanctions" because Plaintiff's counsel purportedly sent *ex parte* communications to Mark and June Rothstein, whom former defense counsel alleges he represents, and instructed them to comply with the subpoenas.[9]  ECF No. 59 at 12.  Both of these contentions are meritless.

---

[9]    On February 14, 2020, Plaintiff's counsel sent Mark and June Rothstein each a letter informing stating they could "elect to deliver copies of responsive records to the Nevada Legal Services office in Las Vegas" or "produce

1    Rothstein's request for Rule 45 sanctions is denied because he fails to show that the third-

2    party subpoenas place an undue burden on their recipients as discussed above.  Further, Rothstein's

3    request for sanctions is denied because his former attorney fails to show that Plaintiff's counsel

4    mailed *ex parte* communications to Mark and June Rothstein.  Defense counsel states:

5        As described in the prior Declaration I submitted, I contacted Mr. Brancart's office
         and informed them [sic] that I intended to file a motion to quash or strike the
6        subpoenas on behalf of Mark Rothstein and June Rothstein.  When I made that
         initial contact it was to Spencer Campbell, a staff member of Mr. Brancart's firm.
7        Mr. Brancart and his office, specifically, Spencer Campbell, knew I was
         representing Mark Rothstein . . . and June Rothstein . . . .  Notwithstanding Mr.
8        Brancart had sent to Mark and June correspondences on February 14, 2020.

9    ECF No. 59 at 3 ¶ 2.  However, the previous declaration to which Rothstein's former defense counsel

10   refers makes no mention of this discussion topic:

11       On February 13, 2020, a little after 1 p.m., I contacted Christopher Brancart's
         office, who has acted as lead counsel for the Plaintiff.  I was told by a staff member
12       of Mr. Brancart's office, [sic] that Mr. Brancart was at a conference today, which
         would also be continued to tomorrow.  I believed explained [sic] the concerns with
13       the subpoenas and mentioned that they were [not] accompanied by witness fees and
         sought irrelevant information.  I also mentioned that I would send an email to Mr.
14       Brancart more specifically discussing the issues.

15   ECF No. 53 at 3 ¶ 2.

16       Finally, the first time Rothstein requests sanctions on the basis of opposing counsel's

17   purported *ex parte* communications is in his Reply in Support of Amended Motion to Strike or Quash

18   Subpoenas.  ECF No. 59 at 12.  Arguments made for the first time on reply need not be considered

19   by the Court.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

20                                          **ORDER**

21       IT IS HEREBY ORDERED that Allan Rothstein's Amended Motion to Strike or Quash

22   Subpoenas (ECF No. 53) is DENIED.

23       IT IS FURTHER ORDERED that Allan Rothstein's Amended Motion for Protective Order

24   (ECF No. 55) is DENIED.

25       IT IS FURTHER ORDERED that Plaintiff's Motion to Compel (ECF No. 71) is GRANTED.

26

27

28   records directly to [the Nevada Legal Services] office via email attaching documents or via delivery by Fedex" after the
     subpoenas were issued.  ECF No. 56-1 at 107-08.

1    IT IS FURTHER ORDERED that discovery is reopened in this matter for the limited

2  purposes of allowing Mark Rothstein, June Rothstein, and JP Morgan Chase Bank to respond to

3  Plaintiff's subpoenas, and allowing Allan Rothstein to respond to Plaintiff's Requests for Production

4  numbers 7, 8, and 9.

5    IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this Order on Mark

6  Rothstein, June Rothstein, and JP Morgan Chase Bank within seven (7) calendar days from the date

7  of this Order.

8    IT IS FURTHER ORDERED that Mark Rothstein shall produce the requested documents

9  dated, created, received, or transmitted at any time from January 1, 2018 up to and including

10  February 1, 2020.

11    IT IS FURTHER ORDERED that June Rothstein and JP Morgan Chase Bank shall produce

12  the requested documents as originally requested.

13    IT IS FURTHER ORDERED that Mark Rothstein, June Rothstein, and JP Morgan Chase

14  Bank shall produce the requested documents to Nevada Legal Services within thirty (30) calendar

15  days from the date of this Order.

16    IT IS FURTHER ORDERED that Allan Rothstein shall provide Plaintiff with dates, times,

17  and locations for the inspection and copying of materials responsive to Plaintiff's requests for

18  production numbers 7, 8, and 9 within fourteen (14) calendar days from the date of this Order.

19    DATED THIS 6th day of July, 2020.

20

21

22  ELAYNA J. YOUCHAH
    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

14