**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CANDY TORRES,

      Plaintiff

v.

ALLAN ROTHSTEIN and KYLE PUNTNEY,

      Defendants

Case No.: 2:19-cv-00594-APG-EJY

**Order Granting in Part Plaintiff's Motion for Partial Summary Judgment**

[ECF No. 68]

Plaintiff Candy Torres sues defendants Allan Rothstein and Kyle Puntney for discrimination and harassment.  Torres alleges that Rothstein sexually harassed her when she rented a home that Rothstein managed for Puntney, the property owner.  She alleges that Rothstein requested she perform a sexual act on him and that he conditioned her rental of the property on her signing a "Direct Consent for Sexual Intercourse" form.  Torres moves for partial summary judgment on the following claims and defenses: (1) Rothstein's violations of the federal Fair Housing Act (FHA) and the Nevada Fair Housing Law (FHL); (2) Puntney's vicarious liability for Rothstein's conduct; (3) Puntney's affirmative defense that he was unaware of Rothstein's actions; and (4) the defendants' affirmative defense of waiver.[1]

I deny Torres's motion for summary judgment on the sexual harassment claims and Puntney's vicarious liability because there are genuine disputes over material facts.  I grant Torres's motion as to Puntney's affirmative defense that he was unaware of Rothstein's conduct because that fact does not allow Puntney to escape vicarious liability if the fact finder determines

---

[1] Torres also initially moved for summary judgment on her Nevada Deceptive Trade Practices Act (NDTPA) claim and Puntney's vicarious liability for it. ECF No. 68 at 2.  However, she withdrew the request after I dismissed the NDTPA claim. ECF Nos. 74 at 9; 75 at 3.

that Rothstein acted within the scope of employment or was aided by the agency relationship.  I also grant Torres's motion for summary judgment on the defendants' affirmative defense of waiver, but only to the extent that the defense is based on Torres signing rental documents containing waiver and hold harmless language.[2]

## I.   **FACTUAL BACKGROUND**

The Southern Nevada Regional Housing Authority (SNRHA) approved Torres and her five children for a Section 8 housing choice voucher (HCV). ECF No. 68-2 at 39-40.  The HCV would subsidize a four-bedroom rental costing $1,550 or less per month. *Id.* at 40.  Rentals paid with HCV vouchers are subject to the Housing and Urban Development (HUD) regulations, a housing assistance payments (HAP) contract, and a HUD tenancy addendum to the lease. ECF No. 68-4 at 22.  The HAP contract requires the landlord to "not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract." *Id.* at 27.

Rothstein managed a house at 11893 Wedgebrook Street in Las Vegas (the Wedgebrook House) for the owner, Puntney. ECF No. 70-2 at 34.  Puntney signed a Property Management Agreement for the Wedgebrook House with RX Realty as the broker and Rothstein as the agent beginning in July 2010. *Id.*  Under the agreement, Rothstein was authorized to negotiate, prepare, and sign leases; collect rents, security deposits, and other charges; and manage the property and maintenance. *Id.* at 36-37.  Because Puntney lived out of state, he did not speak to his tenants directly and left Rothstein to handle responsibilities related to the home. ECF No. 68-2 at 138-

---

[2] Torres requests that if I do not grant all her requested relief, that I state any material facts not genuinely in dispute and treat those facts as established in the case under Federal Rule of Civil Procedure 56(g).  This decision is within my discretion. Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment.  Because I do not believe that stating undisputed facts here would expedite litigation, I decline to do so.

39.  Puntney did not give Rothstein guidance on managing the property aside from requesting he rent the property for 18-to-24-month leases. *Id.* at 142-45.  Rothstein managed the Wedgebrook House on Puntney's behalf during the time Torres leased it. ECF No. 68-3 at 4, 9, 16, 22.

The exact timeline of the following events is unclear from the record.  In September 2018, Torres found the listing for the Wedgebrook House online. ECF No. 68-2 at 6.  She contacted Rothstein about renting the property and he responded that he loved working with Section 8 clients and said he would be willing to work with her. *Id.* at 7-8.  She subsequently met Rothstein at his home and submitted a rental application per his request. *Id.* at 16.  Part of that application included a document indicating that Rothstein was the "agent representing" her. ECF No. 70-2 at 60.  She also provided three money orders totaling $785 to serve as the deposit to take the house off the market. ECF No. 68-2 at 54.

Later, Rothstein indicated that he required more money for the deposit, but Torres could not afford it. *Id.* at 57.  She therefore offered to clean and repair the house to make up the difference, which would also help ensure the Wedgebrook House would pass the HUD's housing quality standards. *Id.* at 13-14, 58.  Rothstein agreed to waive the cleaning fee and to reduce the balance Torres owed on the deposit. *Id.* at 58-59.  Torres then worked to fix up the house, and Rothstein allowed her to stay there without a lease during that time. *Id.* at 12-13; ECF No. 70-2 at 31-32.

Torres visited Rothstein's home multiple times to complete the necessary steps get her application approved and to go through the SNRHA approval process. ECF No. 70-2 at 16-18. Upon Rothstein's instruction, Torres typed up a document stating that she found the Wedgebrook House on the internet and that she chose Rothstein to represent her because "a friend recommended him" based on his experience helping SNRHA clients. ECF Nos. 68-5 at 64; 70-2

3

at 23.  Rothstein became involved in the SNRHA process directly, which included communicating to the SNRHA office on Torres's behalf when the office challenged her ability to rent the Wedgebrook House. ECF No. 68-5 at 56-62.  On November 17, after Torres fixed up the Wedgebrook House, SNRHA inspected and approved it. ECF No. 68-2 at 23.

At some point, Torres alleges that Rothstein demanded she give him a "hand job" in exchange for a lower deposit amount. *Id.* at 18-19.  Torres refused and she left Rothstein's house. *Id.* at 20.  Rothstein disputes that he propositioned Torres.  He alleges Torres is the one who offered to give him a "hand job" or "blow job" if he helped her get the Wedgebrook House. *Id.* at 100.  Torres decided to carry on with the leasing process despite her alleged experience with Rothstein because she believed she would lose her ability to use her HCV voucher on another property once the Wedgebrook House had been approved. *Id.* at 24-25.  She had also signed a lease for the partial month of November, which included a provision stating that if the lease contract was not completed, she would owe Rothstein $500. ECF No. 70-2 at 30.

Torres signed the final lease on November 23, 2018 at Rothstein's house. *Id.* at 82. Rothstein presented her with the lease and other required forms all together. ECF No. 68-2 at 95-96.  One document was a "Hold Harmless Agreement," which excused the owner and agent of the property from "any and all liability as to the location, physical and aesthetic condition, use, value, and conditions affecting the property." ECF No. 70-2 at 83.  Other documents included a smoke detector disclosure, an illegal activity form, and a Nevada real estate licensee form. ECF No. 68-5 at 2-22.

Included in this packet of forms was also a document entitled "Direct Consent for Sexual Intercourse and or Fellatio or Cunnilingus" (Direct Consent form). *Id.* at 23.  The form states that Torres "hereby and freely gives their total consent" to Rothstein "to engage in sexual

activities . . . with the understanding that sexual intercourse as defined by the State of Nevada will occur." *Id.* at 24.  It also states that Torres "does not currently have a boyfriend/girlfriend/parent who is larger, meaner, and more physically aggressive, owns firearms and/or is more possessive than the [Rothstein]." *Id.*

Rothstein testified at his deposition that when Torres questioned the form, he told her, "if [you] don't want to sign it, then I'm not interested in going any further with you." ECF No. 75-3 at 5.  Rothstein further testified that Torres "wasn't forced to sign the consent agreement" and he continually asserted that there was nothing wrong with presenting it to her. ECF No. 68-2 at 95-96, 102-12.  He explained that he wanted her to sign it because Torres had previously stated that she would "do anything" for Rothstein if he helped her get the house. *Id.* at 99.  "I was worried and scared that, you know, bad things may happen, and it has been happening a lot in the newspaper, all these people that come back 20 years later and say that person did something that wasn't nice." *Id.*  Torres signed the form, believing she had to in order to secure her lease on the Wedgebrook House. *Id.* at 41.

## II.   **ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A.  Fair Housing Act and Nevada Fair Housing Law

The FHA prohibits discrimination based on sex in the terms and conditions of the rental of a dwelling and in the making of discriminatory statements with respect to the rental of a dwelling. 42 U.S.C. §§ 3604(b)-(c).  When interpreting the FHA, courts analogize to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which prohibits employment discrimination. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997).  Although sexual harassment is not explicitly addressed in the FHA, "it is beyond question that sexual harassment is a form of discrimination." *Beliveau v. Caras*, 873 F. Supp. 1393, 1397 (C.D. Cal. 1995); *see also Noah v. Assor*, 379 F. Supp. 3d 1284, 1288–89 (S.D. Fla. 2019) (collecting cases); 24 C.F.R. § 100.600 (HUD promulgating regulations on sexual harassment as a form of discrimination).

### i.  Sexual Harassment Discrimination

In line with employment discrimination cases, HUD identifies two forms of sexual harassment: quid pro quo and hostile environment. 24 C.F.R. § 100.600(a); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998) (Title VII).  Quid pro quo harassment is the "unwelcome request or demand to engage in conduct where submission . . ., either explicitly or implicitly, is made a condition related to" the rental of a dwelling or its terms and conditions. 24 C.F.R. § 100.600(a)(1); *Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010); *see also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (Title VII).  Hostile environment harassment is "unwelcome conduct that is sufficiently severe or pervasive as to interfere with" the "availability, sale, rental, or use or enjoyment of a dwelling" or "the terms, conditions, or privileges of the sale or rental." 24 C.F.R. § 100.600(a)(2).  A hostile environment claim involves the consideration of several factors including "the nature of the conduct, the context in

1    which the incident(s) occurred, the severity, scope, frequency, duration, and location of the

2    conduct, and the relationships of the persons involved." *Id.* § 100.600(a)(2)(i)(A).

3          Torres argues that Rothstein required her to sign the Direct Consent form in exchange for

4    being able to rent the property.  Torres acknowledges there is a material dispute about whether

5    Rothstein asked her for a "hand job," but she argues that the Direct Consent form, on its face,

6    constitutes a quid pro quo arrangement. ECF No. 68 at 4 n.1, 10.  Among other eyebrow-raising

7    provisions, the form asks Torres to "freely" give her "total consent" to engage in sexual activities

8    that "will occur" with Rothstein. ECF No. 68-5 at 24.  Torres points to Rothstein's deposition

9    testimony, where he agreed that he presented her with the Direct Consent form along with the

10   required rental forms. ECF No. 68-2 at 95-96.  When Torres questioned the consent form,

11   Rothstein testified that he told her: "if [you] don't want to sign it, then I'm not interested in

12   going any further with you." ECF No. 75-3 at 5.  Torres cites to the hostile environment

13   regulations but does not specifically argue how each of the elements is met.

14         Rothstein claims that he and Torres discussed a "possible future personal relationship"

15   during the leasing process and that he asked her to sign the Direct Consent form to protect

16   himself. ECF No. 73 at 3.  Rothstein, who responded to this motion pro se, did not attach or cite

17   to any supporting evidence in his opposition brief.  However, his unsworn statement is supported

18   by his deposition testimony (provided by Torres) where he explained he wanted Torres to sign

19   the form to protect himself from liability from her sexual advances. ECF No. 68-2 at 99.

20   Puntney argues that summary judgment should be denied because Torres was never denied

21   housing, she did not demonstrate that the request for sex had a connection to the lease, and that

22   Rothstein never used physical force on her. ECF No. 70 at 14.

23

Because this is Torres's summary judgment motion, I must view the facts in the light most favorable to Rothstein. Rothstein's explanation for the Direct Consent form creates a dispute of material facts. If Rothstein's version of events is correct, then the form was not an "unwelcome" request or demand under either form of sexual harassment. Additionally, there is a material factual dispute as to whether the rental was conditioned on Torres signing the form. Rothstein stated that he was "not interested in going further with" Torres if she did not sign the Direct Consent form. But his statement is ambiguous because he could have been referring to their purported possible personal relationship and not her ability to rent the Wedgebrook House. Additionally, I must look to the totality of circumstances in hostile environment claims and Torres has not provided me with sufficient evidence to ascertain the severity or pervasiveness of the environment. At minimum, I must consider context, which includes the disputed factual allegation that Rothstein asked Torres for a hand job. The material factual disputes therefore preclude summary judgment for the 42 U.S.C. § 3604(b) claim and the parallel FHL claim.[3]

### ii. Discriminatory Statements

The FHA makes it unlawful to "make, print, or publish . . . any notice, statement or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination" based on sex. 42 U.S.C. § 3604(c). This claim can be established by showing that the statement communicates discrimination in an "obvious or undeniable way" to an "ordinary reader," or that it is discriminatory "through proof of extrinsic circumstances

---

[3] As stated in my earlier order on the motion to dismiss, the FHL's prohibition on discriminatory practices mirrors the FHA and I predict that the Supreme Court of Nevada would look to federal decisions in deciding FHL claims. *Torres v. Rothstein*, No. 2-19-cv-00594-APG-EJY, 2020 WL 2559384, at *3 (D. Nev. May 20, 2020) (citing *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005); *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983)). Because the FHL mirrors the FHA, I deny summary judgment for the FHL claim based on the same material factual disputes I identified under the FHA.

demonstrating discriminatory intent." *Blomgren v. Ogle*, 850 F. Supp. 1427, 1439 (E.D. Wash. 1993) (citing *Housing Opportunities Made Equal v. Cincinnati Enquirer*, 731 F. Supp. 801, 804 (S.D. Ohio, 1990), *aff'd 943 F.2d 644* (6th Cir. 1991); *United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972)).  A plaintiff can demonstrate discrimination under this subsection by showing the statement contains sexual harassment. *See* 24 C.F.R. § 100.600(a) (applying the definitions for quid pro quo and hostile environment harassment to the entirety of 42 U.S.C. § 3604).

Torres argues that the Direct Consent form violates subsection c because it is a statement that was presented to Torres in connection with executing her lease and that an ordinary listener would find its contents to amount to sexual harassment discrimination.  Neither defendant addresses this argument specifically.

The factual disputes identified in the previous sections preclude summary judgment here. The text of the Direct Consent form contains no direct reference to Torres's lease and there is a genuine issue of material fact as to whether Rothstein conditioned the ability to rent the Wedgebrook House on Torres signing the Direct Consent form.  Further, an ordinary reader would not necessarily find the form discriminatory if Rothstein's testimony that Torres propositioned him is true.  I therefore deny summary judgment of the FHA and FHL claims on this basis.

### B.  Vicarious Liability Under Federal and State Law

#### i.  *Federal Law*

It is "well established" that the FHA provides for vicarious liability as such an action is, "in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  The HUD regulations state that a "person is vicariously liable for a discriminatory housing practice by the person's agent or

1  employee, regardless of whether the person knew or should have known of the conduct that

2  resulted in a discriminatory housing practice, consistent with agency law." 24 C.F.R. § 100.7(b).

3  Vicarious liability under the FHA is governed by "the general common law of agency" rather

4  than any particular state's law. *Ellerth*, 524 U.S. at 745-55 (quoting *Community for Creative*

5  *Non–Violence v. Reid*, 490 U.S. 730, 740 (1989)).  Courts have looked to the Restatement

6  (Second) of Agency (Restatement) for guidance on agency principles. *Id.* at 755 (citing *Meritor*

7  *Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 72 (1986)).  A principal is vicariously liable when their

8  agent or employee acts within the scope of their employment or when they are aided by the

9  agency relationship in committing the act. *See* Final Rule, Quid Pro Quo and Hostile

10 Environment Harassment and Liability for Discriminatory Housing Practices Under the Fair

11 Housing Act, 81 FR 63054, 63072 (Sept. 14, 2016); Restatement §§ 219(1)-(2).

12      None of the parties dispute that Rothstein was Puntney's agent.  Both defendants admit

13 that Rothstein managed the Wedgebrook House on Puntney's behalf during the time Torres

14 leased it and that Rothstein acted as Puntney's agent in renting the Wedgebrook House to Torres.

15 ECF No. 68-3 at 4, 9, 16, 22.  The dispute is whether Puntney should be held liable for

16 Rothstein's alleged intentional torts based on that agency relationship.

17      Torres argues that Puntney should be held liable because Rothstein was acting within the

18 scope of the agency relationship by having Torres sign the Direct Consent form while she was

19 signing the lease documents for the Wedgebrook House.  Torres argues that even if there is a

20 dispute whether Rothstein was acting within the scope of employment, he was still aided by the

21 agency relationship because he was able to get her to sign the Direct Consent form because of his

22 role as property manager.

23

Puntney argues he should not be liable because Rothstein was acting as Torres's representative and agent at the time the alleged sexual comments were made.  He relies on the rental application Torres signed acknowledging that Rothstein would represent Torres and that Rothstein represented her before the SNRHA.  Puntney also argues that the request for sex was an unrelated folly that had nothing to do with the lease.

Because Torres has not met her burden for the underlying claims against Rothstein, Torres has also not met her burden that Puntney can be held vicariously liable for that conduct. Further, there are disputes whether Rothstein acted within the scope of employment or was aided by the agency relationship.  Although Rothstein gave Torres the Direct Consent form along with the other rental documents, there is a dispute as to whether he conditioned the rental agreement on her signing the form.  There is also a dispute as to the overall nature of Torres and Rothstein's various interactions and the timing of those interactions, which are relevant in assessing the context of Rothstein's behavior for agency purposes.  I therefore deny summary judgment on Puntney's liability for Rothstein's actions.

> ii.  *State Law*

While vicarious liability under the FHA is governed by federal common law and HUD regulations, FHL vicarious liability is governed by Nevada agency law.  In Nevada, an employer is not liable for their employee's intentional conduct if the employee's conduct was (a) "a truly independent venture," (b) "not committed in the course of the very task assigned to the employee," and (c) "not reasonably foreseeable." Nev. Rev. Stat. (NRS) § 41.745(1); *see also* *Wood v. Safeway, Inc*., 121 P.3d 1026, 1035 (Nev. 2005) (quoting *Prell Hotel Corp. v. Antonacci*, 469 P.2d 399, 400 (Nev. 1970)).

Torres argues that Rothstein was assigned to locate tenants and arrange for the rental of the Wedgebrook House so the tort arose "in the course of the very task assigned."  Puntney argues this was an improper sexual folly and that the action was not foreseeable.

Again, because Torres has not met her burden for the underlying FHL claim, she also has not met it for Puntney's vicarious liability for it.  Additionally, there are factual disputes whether the Direct Consent form was an independent venture or performed as part of Rothstein's task of having Torres lease the Wedgebrook House.  Therefore, I deny summary judgment for Puntney's vicarious liability for the FHL claim.

     *iii. Affirmative Defense of Lack of Knowledge or Authorization of Agent*

Puntney's 18th affirmative defense states: "Mr. Puntney was not aware of and did not authorize any of Mr. Rothstein's actions alleged in Plaintiff's Complaint." ECF Nos. 34 at 4; 44 at 9.  Torres moves for summary judgment on this defense as vicarious liability may be imposed regardless of knowledge or authorization.  Puntney does respond to this argument.

The HUD regulations state that a person can be held vicariously liable for their agent "regardless of whether the person knew or should have known of the conduct." 24 C.F.R. § 100.7(b).  As discussed above, if the fact finder determines that Rothstein acted within the scope of his employment or that he was aided by the agency relationship, then Puntney can be held vicariously liable notwithstanding knowledge or authorization.  I therefore grant summary judgment in favor of Torres on Puntney's 18th Affirmative Defense.

## C.  Affirmative Defense of Waiver

Puntney and Rothstein both have asserted the affirmative defense of waiver. ECF Nos. 27 at 4; 86 at 3.  Torres argues that the defense of waiver cannot be based on the liability release forms she signed because they violate NRS § 18A.220(1)(d).  Torres signed a document stating

12

1  that she waived and released the landlord and agents from liability arising from her "use of the

2  facility regardless of cause." ECF No. 68 at 16.  Nevada law renders a rental agreement

3  provision void as contrary to public policy if it exculpates or limits the liability of a landlord for

4  their own acts or omissions. NRS §§ 18A.220(1)(d), (2).  Puntney responds that his waiver

5  defense is not based on the liability release form but instead on Torres's general inaction in

6  alerting him or others about Rothstein's conduct.  Rothstein does not respond to this argument.

7        Because Puntney is not relying on the release form for his waiver defense, the motion for

8  summary judgment is denied as moot as to Puntney.  It is unclear whether Rothstein intends to

9  rely on the liability release form for his waiver defense.  Torres's concern about the waiver

10 defense appears to have come from an argument Rothstein's previous attorney made in the

11 context of a motion in front of Magistrate Judge Youchah. ECF No. 55 at 13 (arguing that

12 Rothstein should not have to disclose his wealth for punitive damages).  That argument appeared

13 to rely on different documents Torres signed, which stated that Torres waived her right to hold

14 the property manager and owner liable for "all injuries or accidents occurring on or near

15 premises" and would hold them harmless for "any and all liability at to the location, physical and

16 aesthetic condition, use, value and conditions affecting the property." *Id.*

17       I agree with Judge Youchah's analysis on that issue that the waiver defense on this basis

18 is meritless. ECF No. 81 at 8.  These documents do not serve as a waiver of Torres's claims.  The

19 sexual harassment claims do not "arise" out of the "use of the facility" nor did they occur on or

20 near the premises.  To the extent that there is ambiguity as to the application of these provisions,

21 I must construe them "most strongly against the authoring party." *Mullis v. Nev. Nat. Bank*, 654

22 P.2d 533, 535 (Nev. 1982) (internal citation omitted).  Therefore, Rothstein cannot use the

23 affirmative defense of waiver based on these liability release documents to avoid liability for

13

Torres's claims.  To the extent Rothstein planned to rely on that defense, I grant summary judgment in Torres's favor on the affirmative defense of waiver.  However, this does not preclude a waiver defense that is based on something other than the liability release form.

### III.  CONCLUSION

I THEREFORE ORDER that plaintiff Candy Torres's motion for summary judgment **(ECF No. 68) is GRANTED in part.**  I grant the motion as to defendant Kyle Puntney's affirmative defense based on lack of knowledge or authorization.  I also grant the motion as to defendant Allan Rothstein's affirmative defense of waiver to the extent that it is based on a liability release form.  The motion is denied in all other respects.

DATED this 26th day of December, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

14