UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CANDY TORRES, | Case No. 2:19-cv-00594-APG-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| ALLAN ROTHSTEIN and KYLE PUNTNEY, | |
| Defendants. | |

Pending before the Court is Defendant Allan Rothstein's Motion for Relief from Order. ECF No. 106. The Court has considered Defendant's Motion, Plaintiff's Response (ECF No. 120), and Defendant's Reply (ECF No. 122). Also before the Court is Plaintiff's Memorandum in Support of Award of Attorneys' Fees Pursuant to Court Order (the "Memorandum") (ECF No. 93) arising from the Court's Order granting, in part, Plaintiff's Motion for Sanctions, which included an Order to Show Cause (ECF No. 91 at 3-4).[1] After being granted an extension of time to do so, Defendant filed his Opposition to Plaintiff's Memorandum (ECF No. 107) and Response to the Court's OSC (ECF No. 114). Plaintiff filed a Reply in Support of her Memorandum. ECF No. 118.

**I.    RELEVANT BACKGROUND**

The facts underlying this dispute are familiar to the parties. Thus, the Court summarizes only the procedural background relevant to this Order.

On February 13, 2020, Defendant Allan Rothstein ("Defendant") filed a Motion to Quash and Protective Order regarding three subpoenas served by Plaintiff (ECF No. 52), which Defendant refiled on February 14 and February 24, 2020, respectively.[2] ECF Nos. 53 and 55. Approximately one month later, Defendant's then-counsel was allowed to withdraw from continued representation of Defendant. ECF No. 66.

---

[1] The Order to Show Cause is sometimes referred to herein as the "OSC."
[2] Defendant Kyle Puntney did not join either of Defendant's Motions.

1

Case 2:19-cv-00594-APG-EJY   Document 124   Filed 01/27/21   Page 2 of 14

On May 18, 2020, Plaintiff filed her Motion to Compel seeking an order requiring Defendant to provide dates, times, and locations for the inspection and copying of materials responsive to her Requests for Production 7, 8, and 9. ECF No. 71. In support of her Motion, Plaintiff explained that on October 18, 2019, Defendant agreed to make documents responsive to these requests available for inspection and copying if Plaintiff paid the costs of production. ECF No. 72 at 4. Plaintiff further explained that this arrangement was agreed to; however, neither Defendant nor his former counsel provided Plaintiff with a date on which she could inspect and copy documents. *Id*. No response to Plaintiff's Motion to Compel was filed by Defendant.

On July 6, 2020, the Court denied Defendant's Amended Motion to Strike or Quash Subpoenas and Amended Motion for Protective Order, and granted Plaintiff's Motion to Compel. ECF No. 81. The Order reopened discovery for the limited purpose of requiring Defendant to respond to Plaintiff's Requests for Production 7, 8, and 9, and allowing the subpoena recipients to respond to Plaintiff's subpoenas. *Id*. at 14. The Court also ordered Defendant to provide Plaintiff dates, times, and locations for the inspection and copying of documents responsive to her document requests no later than July 20, 2020. *Id*.

On November 6, 2020, Plaintiff filed a Motion for Sanctions because Defendant failed to comply with the Court's July 6, 2020 Order. ECF No. 89. Prior to filing her Motion, Plaintiff sent copies of the Court's July 6, 2020 Order to Defendant by mail and email on July 8 and July 9, 2020, sent a follow-up email reminding Defendant of his duty to produce responsive documents on July 19, 2020, and mailed a letter to Defendant on August 10, 2020 seeking a date and time for production of responsive documents. *Id*. at 5-6. Plaintiff's attorney submitted a declaration confirming that Defendant did not respond to any of these communications. ECF No. 89-1 ¶¶ 4-6. The legal assistant for Plaintiff's counsel also placed three calls to Defendant at the number he provided during his October 14, 2020 deposition. ECF No. 89 at 7 (internal citation omitted). Defendant disconnected the first call upon learning it was Plaintiff's counsel's office asking about the status of the document production; and, he did not answer two other calls. *Id*. (internal citations omitted). In light of the above, Plaintiff sought an order from the Court striking Defendant's Answer or barring Defendant from providing certain evidence from being presented or argued in any motion or at trial. *Id*. at 2,

7-8. As was true for Plaintiff's Motion to Compel, Defendant did not file a response to Plaintiff's Motion for Sanctions.

On November 24, 2020, the Court granted Plaintiff's Motion for Sanctions in part. ECF No. 91 at 3. The Court denied Plaintiff's request to issue an order striking Defendant's Answer or precluding certain evidence and instead ordered Defendant to pay Plaintiff's reasonable attorneys' fees and costs incurred in preparing the Motion for Sanctions. *Id*. The Order also directed Defendant to show cause, by December 7, 2020, why the additional sanctions Plaintiff requested should not be granted. *Id*. The Court warned Defendant that "a failure to timely respond to the Order to Show Cause may result in additional sanctions including, but not limited to, the recommendation that Rothstein be precluded from presenting certain evidence in motion practice or at trial or striking Rothstein's [A]nswer from the record." *Id*. at 4.

On November 30, 2020, Plaintiff filed her Memorandum in Support of Attorneys' Fees as ordered by the Court. ECF No. 93.

On December 7, 2020, Defendant's new counsel filed his appearance together with a Motion to Extend Time to respond to the Court's OSC and Plaintiff's Memorandum in Support of Attorneys' Fees. ECF Nos. 98 and 99. The Court granted Defendant's Motion to Extend Time the next day. ECF No. 100.

On December 22, 2020, Defendant filed his Opposition to Plaintiff's Memorandum. ECF No. 107. On December 24, 2020, Defendant filed the instant Motion for Relief from the Court's Order (ECF No. 113), and his Response to the Court's OSC (ECF No. 114).

**II.    DISCUSSION**

    **A.    Defendant's Motion for Relief from Order (ECF No. 106) is denied.**

Defendant moves for relief from this Court's July 6, 2020 Order pursuant to Fed. R. Civ. P. 60(b)(1). *Id*. Rule 60(b)(1) provides that the Court may relieve a party or its legal representative from a final order based on "mistake, inadvertence, surprise, or excusable neglect." Excusable neglect may exist where a party's failure to comply with a deadline was negligent. *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

Courts in this Circuit rely on at least four "*Pioneer* factors" to assess whether neglect is excusable: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and, (4) whether the movant acted in good faith. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000), *citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Determining whether neglect is excusable is an equitable decision that takes account of all relevant circumstances surrounding the party's omission. *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.

In addition, a Rule 60(b)(1) motion "must show that the district court committed a specific error." *Straw v. Bowen*, 866 F.2d 1167, 1172 (9th Cir. 1989) (internal citation omitted); *see also Williams v. Las Vegas Metro Police Dept.*, Case No. 2:19-CV-01212-APG-EJY, 2020 WL 2045788, at *6 (D. Nev. Apr. 8, 2020) (finding a party did not establish a basis for Rule 60(b)(1) relief because he had "not demonstrated any error, the correction of which would have, or even may have, changed the outcome of this case."). Finally, a motion for relief is left to the discretion of the trial court. *Sch. Dist. No. 1J. Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

> *1.    Defendant does not argue that the Court committed a specific error.*

Despite the fact that a party "must show that the district court committed a specific error" in a Rule 60(b)(1) motion, Defendant fails to argue the Court erred in ruling on Plaintiff's Motion to Compel.[3] *Straw*, 866 F.2d at 1172. Defendant is "not entitled to relief under this section" based on this omission alone. *Id*. Nonetheless, the Court weighs the four *Pioneer* factors and finds Defendant's failure to produce responsive documents was not the result of excusable neglect.

> *2.    Defendant's justifications do not demonstrate that his failure to produce responsive documents was the result of excusable neglect.*

Defendant argues that he failed to comply with the Court's Order granting Plaintiff's Motion to Compel because: (1) he lacked counsel for nine months; (2) he has "numerous disabilities,"

---

[3] Defendant alleges that the "Court balanced the need for the information to be disclosed with the burden it would have on" Defendant "without any stated consideration for the burden the disclosure would have as to the privacy of non-parties." ECF No. 113 at 2. However, Defendant does not argue this was a specific error. And, Defendant offers no case law to suggest it is. The Court did not address the burden the disclosure would have on non-parties because none of the non-parties objected to Plaintiff's subpoenas. ECF No. 81 at 5-6. The Court also found Defendant lacked standing to object to the non-party subpoenas because his relevance and undue burden arguments did not establish a personal right or privilege with respect to the requested documents. *Id*. at 6.

4

including, based on his counsel's observations, "early sta[g]e dementia" that cause him to work from home; and, (3) he was never provided service of either the Court's Motion to Compel or the Protective Order, which "would have provided him assurances that his documents would have been secured from inadvertent disclosure in violation of his privacy concerns for his clients." ECF No. 113 at 5-6 ¶¶ 17, 20, 24.  Each of these arguments fail.

Defendant's unexplained failure to secure new counsel during a nine-month period does not justify his noncompliance with the Court's Order to produce responsive documents.  Even though Defendant was proceeding *pro se*, he was not absolved of responsibility to comply with applicable rules and deadlines set by this Court.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). Further, Plaintiff explains that Defendant represented himself in the litigation prior to retaining his former counsel, and "worked cooperatively with plaintiff's counsel, including contributing to the preparation of the initial discovery plan and scheduling order." ECF No. 120 at 8 (internal citation omitted).

Defendant nevertheless contends, through a declaration of his now-counsel, that "[i]t appears" Defendant "thought" responding to Plaintiff's Motion to Compel was unnecessary because his Motion to Dismiss was granted in part two days after Plaintiff filed her Motion to Compel.  ECF No. 113 at 4-5 ¶ 13.  However, even if the Court assumes that Defendant mistakenly believed he did not have to respond to Plaintiff's Motion to Compel and that he did not access the Court's electronic filing, Plaintiff's counsel sent Defendant a copy of the Order to Defendant's email addresses at "allanindianoil@yahoo.com" and "allanindianoil1@gmail.com" on July 9, 2020, and to "allanindianoil@yahoo.com" on July 19, 2020, as confirmed by exhibits Plaintiff submitted to the

Court with her Motion for Sanctions.[4]  ECF Nos. 89-5 and 89-6.  Despite these emails, Defendant did not contact Plaintiff or make any effort to comply with the discovery order.[5]

Defendant's newly alleged "disabilities" also do not justify his noncompliance with the Court's July Order.  That is, after almost two years of litigation, and despite representation by counsel through the first year of this case, Defendant now claims that he "walks with an extreme hunch, so that he is nearly permanently bent forward at about 45 degrees.  He rides a wheelchair.  He has ED and he has dementia."  ECF No. 122 at 2.  In contrast, and notwithstanding these allegations, Defendant's infirmities are belied by the fact that his "disabilities have not prevented his continued real estate brokerage and property management activities"; indeed, his "website indicates that he had an active listing that was rented as recently as October 25th."  ECF No. 120 at 9, *citing* ECF Nos. 120-7 and 120-8.  Further, despite defense counsel's statement that Defendant "testified to [his disabilities] during his deposition," defense counsel does not argue that Defendant was unable to be deposed due to any incapacity. ECF No. 122 at 2. Moreover, while Defendant's counsel states that it "appears [Defendant is] suffering from early stage dementia," this problem seemed to have manifested itself just two months before the declaration was filed in late December 2020.  ECF No. 113 at 5 ¶ 17.

Further, even if Defendant was at home throughout the COVID-19 pandemic, as so many were and continue to be, and Plaintiff mailed a copy of the July 6, 2020 Order to Defendant's office, it is worth repeating that Plaintiff emailed the same Order to Defendant on two occasions. ECF Nos. 89-5 and 89-6.  There is simply no justification or logic supporting the contention that Defendant did not receive these emails, let alone, as described above, that he would receive the Court's Order

---

[4] On June 26, 2019, Defendant emailed his revisions to the proposed Discovery Plan and Scheduling Order to Plaintiff's counsel from his "allanindianoil@yahoo.com" email address. ECF No. 120-2 at 2. In his Motion to Withdraw as Counsel of Record, Defendant's former counsel provided "allanindianoil@yahoo.com" and "allanindianoil1@gmail.com" as Defendant's last known email addresses. ECF No. 65 at 3 ¶ 6. Defendant admitted in deposition that he uses both email addresses and that he "tr[ies] to look at the Yahoo email daily unless [he is] sick or very busy." ECF No. 89-4 at 6, 9.

[5] It is curious that Defendant contends, also through counsel's declaration, that Defendant apparently received the Court's electronically filed Order granting, in part, his Motion to Dismiss, which was filed on May 20, 2020 when he was unrepresented, but somehow did not receive the Court's July 6, 2020 electronically filed Order granting Plaintiff's Motion to Compel that included the OSC. *Compare* ECF No. 113 at 4-5 ¶¶ 13-14 *and* ¶ 17.

regarding his Motion to Dismiss filed electronically, but not the Order on Plaintiff's Motion to Compel also filed electronically.[6]

Finally, with respect to the Protective Order that Defendant contends he never received, the Order plainly states that it was stipulated to by "Plaintiff Candy Torres and defendant Allan Rothstein." ECF No. 48 at 1. Thus, there is no doubt Defendant was aware of the Stipulation. As for Defendant's contention that his former counsel received a copy of the Protective Order before he withdrew three months later, but that somehow Defendant did not (ECF No. 113 at 10), this is pure argument and is unpersuasive.[7]

What the Court find persuasive is Plaintiff's argument that even if Defendant's "failure to respond to the Court's order was the result of his concern over third party privacy rights[,] . . . it was incumbent on Rothstein to express that concern to the Court in a timely manner rather than to disregard the Court's discovery order." ECF No. 120 at 8. "Ignoring the order of a Magistrate Judge—without even requesting an extension of time before the deadline passes . . . is not excusable neglect." *Local Ad Link, Inc. v. Adzzoo, LLC*, Case No. 2:09-cv-01564-GMN-LRL, 2010 WL 3636173, at *5 (D. Nev. Sept. 9, 2010).

The above demonstrates Defendant fails to demonstrate that his neglect was excusable under any of the *Pioneer* factors. *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. Plaintiff will be prejudiced if the Court were to set aside its July 6, 2020 Order granting Plaintiff's Motion for Sanctions that will potentially impact numerous subsequent orders. Plaintiff was diligent in seeking discovery from Defendant, to which Defendant agreed in October 2019, and then ignored for more than a year. Defendant was represented by counsel during approximately six months of this period of time. The Court cannot ignore these facts. As for Defendant's contention that "no scheduling order" was issued

---

[6] Importantly, a review of Defendant's filings shows that he does not deny he received the emails. Instead, he argues that "Plaintiff did not produce the email that proves [s]he emailed [the Court's July 6, 2020 Order] to ALLAN, at any time." ECF No. 122 at 4 ¶ 15. This is obviously incorrect. Defendant also does not deny that he disconnected the first call and ignored the following two calls he received from Plaintiff's counsel's legal assistant inquiring into the status of the document production as ordered by the Court.

[7] The Court notes that while defense counsel offers his observations, attorney argument is not evidence. *Hurley v. Student Loan Acquisition Auth. of Ariz., et al., (In re Hurley)*, 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (an attorney's argument is not evidence); *Exeter Bancorporation, Inc. v. Kemper Secs. Grp., Inc.*, 58 F.3d 1306, 1312 n. 5 (8th Cir. 1995) (statements of counsel are not evidence and do not create issues of fact), *citing United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977 (1994).

in this matter, he is again wrong. ECF No. 113 at 9. The Court entered a Scheduling Order on July 24, 2019 (ECF No. 16), which it later amended on November 1, 2019, setting February 24, 2020 as the discovery cut off date. ECF No. 40. On March 26, 2020, Defendant's former counsel filed a proposed Second Amended Stipulated Discovery Plan and Scheduling Order (ECF No. 64), which the Court granted in part by extending the deadline to file dispositive motions and the joint pretrial order, but denied the extension of "all other deadlines." ECF No. 67. February 24, 2020 has been the operative discovery cutoff date in this action since November 2019. "Discovery closed almost a year ago on February 24, 2020," which was more than four months after Defendant agreed to produce documents responsive to Plaintiff's requests. ECF No. 120 at 11 (internal citations omitted).[8] All in all, reversing the outcome of Court Orders will necessarily delay proceedings and may require consideration of a new scheduling order that could lead to additional motion practice.

Further, the length of Defendant's delay weighs against a finding of excusable neglect. Defendant attempts to characterize the length of delay as "minimal," claiming that "potentially nothing would have happened toward trial," even if he provided the discovery sought, because of "severe COVID restrictions" in place. ECF No. 113 at 8. However, Defendant agreed to produce responsive documents to Plaintiff's Requests for Productions on October 18, 2019 (ECF No. 72 at 4), and the Court granted Plaintiff's Motion to Compel these requests on July 6, 2020 (ECF No. 81). As of today's date, more than a year and three months after Defendant agreed to produce the responsive documents, he has made no documents available to Plaintiff for inspection or copying. ECF No. 120 at 9. Defendant's justifications for this prolonged delay are simply unpersuasive.

Defendant also fails to demonstrate that he acted in good faith. Defendant's one-paragraph argument on this issue contends that a "lack of familiarity with CM/ECF may be a poor excuse but it doesn't show bad faith." ECF No. 113 at 10, *citing Lemoge*, 587 F.3d at 1197 (finding no bad faith where "errors resulted from negligence and carelessness, not from deviousness or willfulness."). Defendant's argument fails because he has not demonstrated that his noncompliance

---

[8] Defendant also argues that Plaintiff's misdemeanor conviction in the Eighth Judicial District Court has done "as much or more to prejudice her than the 4 months that [Defendant] has not received nor complied with [the Court's July 6, 2020] Order." ECF No. 113 at 8. This argument is not well taken. Plaintiff's conviction in state court has no bearing on whether Defendant demonstrates excusable neglect for his failure to produce responsive documents as ordered by this Court.

was due to mere negligence or carelessness. Defendant's arguments ignore his continued failure to produce responsive documents as he promised to do even after the Court granted Plaintiff's Motion to Compel and he retained new counsel.

Defendant has not established excusable neglect such that the Court will relieve him from the Court's July 6, 2020 Order to Show Cause. However, having timely responded to the OSC (ECF No. 114), the Court will grant Defendant one, and only one, opportunity to make all documents responsive to Plaintiff's Requests for Production 7, 8, and 9 available to Plaintiff. As stated below, failure to comply with the Court's Order shall result in a recommendation to strike Defendant's Answer or issue a ruling prohibiting the introduction of certain evidence by Defendant.

**B.     Plaintiff's Memorandum in Support of Attorneys' Fees (ECF No. 93) is granted**.

Pursuant to the Court's Order on her Motion for Sanctions, Plaintiff filed a Memorandum seeking $4,670 in attorneys' fees and no costs.[9] ECF No. 93 at 1. A court considering the award of reasonable attorneys' fees assesses the "prevailing market rates" in the District of Nevada, comparing rates charged by "lawyers of reasonably comparable skill, experience and reputation" to those rates requested by the party before the Court. *Soule v. P.F. Chang's China Bistro, Inc.*, Case No. 2:18-cv-02239-GMN-GWF, 2019 WL 3416667, at *1 (D. Nev. July 26, 2019) (internal citation omitted). This is a two step process. The first step requires the Court to "calculate the lodestar amount" by multiplying the number of hours reasonably expended on the motion at issue "by a reasonable hourly rate." *Id*. (internal citations omitted). The second step requires the Court to consider adjusting the lodestar upward or downward, something done "only on rare and exceptional occasions, . . . using a multiplier based on factors not subsumed in the initial calculation of the lodestar." *Id*. (internal brackets and citation omitted). The burden is on the plaintiff to establish that the fees she seeks are reasonable. *Id*. (internal citation omitted).

Plaintiff asks the Court to find hourly rates of $500 for Mr. Christopher Brancart and Mrs. Elizabeth Brancart reasonable. ECF No. 93 at 3. Plaintiff also asks the Court to find an hourly rate of $110 for Mr. Spencer Campbell, a legal assistant at Plaintiff's law firm, reasonable. ECF No. 93-

---

[9] Plaintiff states that she "does not seek an award of costs as they were de minimis with respect to this motion." ECF No. 93 at 5 (internal citation omitted).

1 ¶ 14. To that end, Mr. and Mrs. Brancart submitted declarations stating that they have obtained court ordered fee awards of "$450 per hour for work performed in 2017-19 in the Southern District of Indiana," "$450 per hour for work performed in 2016-17 in the Southern District of Indiana" in a separate matter, and "500 per hour for work performed in 2014-16 in the Southern District of California." *Id*. at 4; ECF No. 93-2 at 4. Although these citations do not necessarily support an award of $500 an hour for Mr. and Mrs. Brancart's work in the District of Nevada, Plaintiff cites caselaw demonstrating that this District "recently found that $500 per hour is in the upper range of reasonable hourly rates for experienced practitioners in Las Vegas in the District of Nevada." ECF No. 93 at 2, *citing in part Perrong v. Sperian Energy Corp.*, Case No. 2:19-cv-00115-RFB-EJY, 2020 WL 2996063, at *3 (D. Nev. June 4, 2020) ("the upper range of prevailing rates in this District . . . is $500 an hour"), *Boca Park Marketplace Syndications Grp., LLC v. Ross Dress for Less, Inc.*, Case No. 2:16-cv-01197-RFB-BNW, 2020 WL 2892586, at *3 (D. Nev. May 31, 2020) (awarding partners hourly rate of $750 in commercial lease dispute), *Telasia, Inc. v. EZ Supply, Inc.*, Case No. 2:14-cv-00399-MMD-GWF, 2015 WL 2095874, at *3 (D. Nev. May 5, 2015) (finding hourly rate of $500 for partner appropriate given his experience and the "Court's knowledge of the customary rates charged in this community for similar legal services"). Plaintiff also provides authority from the District of Nevada showing that "[h]ourly rates awarded for work by legal assistants or paralegals . . . range from $75 to $125." *Id*. at 3, *citing LHF Prods., Inc. v. Kabala*, Case No. 2:16-cv-0208-JAD-NJK, 2019 WL 7403960, at *8 (D. Nev. Dec. 31, 2019) ("the reasonable hourly rate for paralegals in this district is between $75 and $125"), *Bd. of Trs. as Trs. of Nat'l Roofing Indus. Pension Fund v. Von Noorda*, Case No. 2:16-cv-00170-JAD-CWH, 2017 WL 9401152, at *2 (D. Nev. Dec. 4, 2017) (finding a $100 hourly rate to be reasonable for "paralegals or legal assistants . . . for this forum"). These citations support an award of $500 an hour for Mr. and Mrs. Brancart's work, and $110 an hour for Mr. Campbell's work on the Motion for Sanctions, respectively.

The Court also finds Mr. and Mrs. Brancart's experience commensurate with an award of $500 an hour in attorneys' fees. Plaintiff explains that both Mr. and Mrs. Brancart have "practiced for over 30 years," specialized in "federal Fair Housing Act litigation for the past 25+ years," and charge a usual hourly rate of "$650 per hour." *Id*. Mr. Brancart graduated with honors from the

University of Texas School of Law 36 years ago, clerked for the Chief Justice for the Main Supreme Judicial Court, and worked as a staff attorney and later as a supervising attorney at the Legal Services Program in Pomona, California.  ECF No. 93-1 ¶ 2.  Mr. Brancart further states he has "resolved hundreds of fair housing cases resulting in favorable settlement agreements and consent decrees," "tried 16 fair housing cases on behalf of plaintiffs," "volunteer[s] between three and five hours per week advising and training fair housing groups and attorneys . . . on how to investigate or litigate fair housing cases," "lectured on fair housing topics" at prominent law schools and at bar events, "conducted trainings for federal and state agencies on fair housing laws, litigation[,] and investigation," and been "recognized as a 'Civil Rights Hero' by the California Department of Fair Employment and Housing for [his] work in fair housing" in February 2009.  *Id*. ¶¶ 4-7, 9.  Mrs. Brancart graduated from the University of California, Boalt Hall School of Law 36 years ago, clerked for the Chief Justice of the Main Supreme Judicial Court, and worked as an associate at Latham & Watkins before going into private practice with her husband.  ECF No. 93-2 ¶¶ 2-3.  Mrs. Brancart provides the Court with a lengthy list of cases in which she served as lead counsel in favor of plaintiff-appellants under the federal Fair Housing Act before the Ninth Circuit and the Supreme Court.  *Id*. ¶¶ 4-5.  Mrs. Brancart has lectured on fair housing law and litigation for advocates and lawyers in California, "served as a judge for the Stanford Law School moot court competition," and authored the first chapter of the Rutter Group publication California Fair Housing and Public Accommodations "covering the California Fair Employment and Housing Act's fair housing provisions."  *Id*. ¶ 6.  Both Mr. and Mrs. Brancart represent that the "Law Foundation of Silicon Valley awarded [their firm] the Honorable Robert F. Peckham Award for Outstanding Public Interest Litigation" in 2004.  ECF No. 93-1 ¶ 9; ECF No. 93-2 ¶ 7.

The Court also finds an hourly rate of $110 for Mr. Campbell is reasonable.  ECF No. 93-1 ¶ 14.  Mr. Brancart's declaration explains that "Mr. Campbell has [worked as a legal assistant at his and Mrs. Brancart's] office since August 2019 after receiving his B.A. from Pomona College in May 2019.  He assists the attorneys in [Brancart & Brancart] with investigation, communicating with clients, co-counsel and, in this case, with Mr. Rothstein, and preparing and assembling documents for filing with the courts."  *Id*.

With respect to the amount of time spent on the Motion for Sanctions (ECF No. 89) for which fees and costs were awarded (ECF No. 91), Plaintiff submitted billing records summarizing Mr. Brancart's 0.8 hours of time "reviewing and revising" the Motion for Sanctions, Mrs. Brancart's 8.1 hours of time "preparing" the Motion, and Mr. Campbell's 2.0 hours "draft[ing] . . . declarations and compil[ing] . . . relevant exhibits." ECF No. 93 at 3; *see also* ECF No. 93-1 at 7 (detailed billing records for work performed by Brancart & Brancart on the Motion for Sanctions). Plaintiff's Motion for Sanctions included eleven pages of text and a total of 73 pages with all exhibits. ECF No. 89. The Court finds the total number of hours spent on this Motion is reasonable.

Defendant does not contest the reasonableness of Plaintiff's calculation of attorneys' fees; the experience of Mr. Brancart, Mrs. Brancart, or Mr. Campbell; or, the amount of time these individuals spent preparing the Motion for Sanctions. Rather, Defendant's sole arguments opposing an award of attorneys' fees are that (1) "the attorneys [at] Brancart & Brancart do not submit their fee agreement," and (2) that this law firm appears to have been "hired by Legal Aid and perhaps not directly by the Plaintiff." ECF No. 107 at 9. As Plaintiff correctly points out, "Local Rule 54-14(a)(3)(G) requires the submission of information as to whether the fee is fixed or contingent. It does not require submission of a copy of the fee agreement." ECF No. 118 at 8. Plaintiff's counsel also submitted a declaration stating that "Brancart & Brancart has a retainer agreement with Candy Torres to represent her in this matter and was not retained by Nevada Legal Services." *Id.* at 9 (internal citation omitted). Accordingly, Defendant's arguments are without merit.

Considering the above, the Court awards Plaintiff $4,670 in attorneys' fees at $500 an hour for Mr. and Mrs. Brancart and at $110 per hour for Mr. Campbell.

**C.  Additional sanctions are not imposed if, and only if, Plaintiff timely complies with the Court's July 6, 2020 Order**.

The Court advised Defendant that failing to respond to the OSC "may result in additional sanctions including, but not limited to, the recommendation that … [he] be precluded from presenting certain evidence in motion practice or at trial or striking … [his] answer from the record." ECF No. 91 at 4. Defendant's current counsel made his appearance on the day the response to the OSC was due and timely filed his response to the OSC. ECF No. 114.

Although additional sanctions could be imposed on Defendant for his continued failure to produce the responsive documents as ordered by this Court, the Court grants Defendant one final opportunity to provide Plaintiff with dates, times, and locations for the inspection and copying of materials responsive to her Requests for Production 7, 8, and 9.  The dates, times, and locations must be provided within seven (7) calendar days of this Order, and the dates and times must be within fourteen (14) calendar days of this Order.  If Defendant fails to provide either date and time required, the Court shall recommend Defendant be precluded from presenting certain evidence in motion practice or at trial, and/or that Defendant's Answer be stricken from the record.

**III.    ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Relief from Order (ECF No. 106) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Memorandum in Support of Award of Attorneys' Fees Pursuant to Court Order (ECF No. 93) is GRANTED in the amount of $4,670.

IT IS FURTHER ORDERED that Defendant **shall** make payment to Plaintiff within **thirty (30) court days** of this Order unless an objection is filed, in which case the due date for payment shall be set by the Court upon ruling on the objection.

IT IS FURTHER ORDERED that Defendant **shall** provide dates, times, and locations for the inspection and copying of materials responsive to Plaintiff's Requests for Production 7, 8, and 9 within **seven (7) calendar days** following the date of this Order.

IT IS FURTHER ORDERED that the dates, times, and locations for the inspection and copying of the materials responsive to Plaintiff's Requests for Production 7, 8, and 9 to be provided by Defendant **shall** be no later than **fourteen (14) calendar days** following the date of this Order.

IT IS FURTHER ORDERED that Defendant's failure to timely produce responsive documents in accordance with this Order **shall** result in sanctions including, but not limited to, the recommendation that Defendant be precluded from presenting certain evidence in motion practice or at trial, and/or that Defendant's Answer be stricken from the record.

DATED THIS 27th day of January, 2021.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE